## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

John Doe,

        Plaintiff,

    v.

Crystal Moreland,

        Defendant.

Civil Action No. 18-cv-0800-TJK

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CRYSTAL MORELAND'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

WILLIAMS & CONNOLLY LLP
Kevin Hardy (DC Bar No. 473941)
Gloria Maier (DC Bar No. 1012208)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
khardy@wc.com
gmaier@wc.com

*Attorneys for Crystal Moreland*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

LEGAL STANDARD...........................................................................................................7

ARGUMENT .......................................................................................................................7

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION .....................8

      A.     The Statements Attributed to Ms. Moreland Are Not Actionable. .........................9

           1.     The primary statement about which Plaintiff complains is not a verifiably false statement of fact. ...........................................................9

           2.     The remaining statements attributed to Ms. Moreland are not actionable. .............................................................................................12

      B.     The Statements Are Protected by the Qualified "Common Interest" Privilege. ..........................................................................................................17

           1.     Ms. Moreland and HSUS share a common interest....................................18

           2.     Plaintiff does not allege malice by Ms. Moreland that would defeat the qualified privilege. ..........................................................................21

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE LIGHT ......................22

      A.     The False Light Claim Has the Same Flaws as the Defamation Claim. ...............23

      B.     The False Light Claim Must Fail Because Plaintiff Alleges No "Publicity."........................................................................................................23

CONCLUSION....................................................................................................................25

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Alade v. Borg-Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655 (D.D.C. 1998) ..............18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................7

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) .........................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................7

*Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216 (D.D.C. 2004) ..................................................12

*Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134 (D.N.H. 2005)................................................20

*Caudle v. Thomason*, 942 F. Supp. 635 (D.D.C. 1996) ...........................................................12, 17

*Coles v. Wash. Free Weekly, Inc.*, 881 F. Supp. 26 (D.D.C. 1995), *aff'd*, 88 F.3d
     1278 (D.C. Cir. 1996) ...................................................................................7, 13, 15

*\*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C.) .......................................... *passim*

*Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28 (D.D.C. 2011), *aff'd*, 483 F.
     App'x 576 (D.C. Cir. 2012) (per curiam) .......................................................12

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) ................................................................20

*\*Farah v. Esquire Mag.*, 736 F.3d 528 (D.C. Cir. 2013) ........................................................2, 9, 13

*Fleming v. AT & T Info. Servs., Inc.*, 878 F.2d 1472 (D.C. Cir. 1989)........................................13

*Hampton v. Comey*, No. 14-CV-1607 (ABJ), 2016 WL 471277 (D.D.C. Feb. 8,
     2016), *aff'd*, No. 16-5058, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016) (per
     curiam) ...........................................................................................................24

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65 (D.C. Cir. 2015)................................................2

*Hustler Magazine v. Falwell,* 485 U.S. 46 (1988) .........................................................................9

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................................................9, 10

*Moldea v. N.Y. Times Co.,* 22 F.3d 310 (D.C. Cir. 1994) ..............................................................9

*Novecon, Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556 (D.C. Cir. 1999)..............................8

*Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin,* 418 U.S.
     264 (1974) ..........................................................................................................9

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) ............................................................10, 11, 16

*Saha v. Lehman*, 537 F. Supp. 2d 122 (D.D.C.), *aff'd*, No. 08-7047, 2008 WL 4726053 (D.C. Cir. July 31, 2008)...................................................................................22, 23

*Smith v. Clinton*, No. 17-5133, 2018 WL 1473544 (D.C. Cir. Mar. 27, 2018) (per curiam) ...........................................................................................................................13, 15, 23

*Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1 (D.D.C. 2001) ........................................22

*Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404 (D.D.C. 2008)............................................22

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011) .........................4

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) .............................................10, 16

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ......................................23, 24

## STATE CASES

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013)........................................................12, 15, 23

*Bean v. Gutierrez*, 980 A.2d 1090 (D.C. 2009) ............................................................24, 25

*Blodgett v. Univ. Club*, 930 A.2d 210 (D.C. 2007)..................................................................18, 23

*Cruey v. Gannett Co.*, 76 Cal. Rptr. 2d 670 (Cal. Ct. App. 1998)................................................20

*Doe No. 1 v. Burke*, 91 A.3d 1031 (D.C. 2014)...............................................................................9

*Elliott v. Healthcare Corp.*, 629 A.2d 6 (D.C. 1993) ............................................................18, 20

*Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580 (D.C. 2000)........................................7, 10

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)................................................................ *passim*

*Johnson v. Johnson Publ'g Co.*, 271 A.2d 696 (D.C.1970) ...........................................................13

*Lester v. Powers*, 596 A.2d 65 (Me. 1991)............................................................................ *passim*

*Levant v. Whitley*, 755 A.2d 1036 (D.C. 2000)..............................................................................14

*Miller v. Servicemaster by Rees*, 851 P.2d 143 (Ariz. Ct. App. 1992) ........................................20

*Millstein v. Henske*, 722 A.2d 850 (D.C. 1999)...............................................................8, 18, 19

*Mosrie v. Trussell*, 467 A.2d 475 (D.C. 1983) .......................................................................19, 21

*Moss v. Stockard*, 580 A.2d 1011 (D.C. 1990) ...........................................................................21

*Myers v. Plan Takoma, Inc.*, 472 A.2d 44 (D.C. 1983) (per curiam) ................................... *passim*

*\*Vickers v. Abbott Labs.*, 719 N.E.2d 1101 (Ill. App. Ct. 1999) .............................................19, 20

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................7, 10

Restatement (Second) of Torts, Chapter 25, Topic 3, Title A ......................................................18

Restatement (Second) of Torts § 581 A.........................................................................................13

Restatement (Second) of Torts § 652D cmt. a...............................................................................24

Restatement (Second) of Torts § 652G...........................................................................................23

Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* §
    9.2.2.A (2016)............................................................................................................................20

**INTRODUCTION**

This action arises out of the termination of an employee—the Plaintiff[1]—for his

workplace conduct.  Although the Complaint is replete with criticisms of his employer's

handling of the investigation into his behavior and his ultimate termination, Plaintiff is not suing

his employer for wrongful termination.  Instead, he has filed this lawsuit for defamation and false

light invasion of privacy against one of the women who complained to human resources about

his inappropriate workplace behavior.

As alleged in the Complaint, Defendant Crystal Moreland complained about Plaintiff's

behavior in a private meeting with a member of the human resources ("HR") department.  As

Plaintiff concedes, Ms. Moreland did not accuse him of any sexual misconduct during this

meeting.  Rather, according to the Complaint, she merely complained that his conduct—

including repeated requests to "go for a walk" together, repeated offers to drive her home, and

repeated lunch and dinner invitations—made her feel "uncomfortable and intimidated."  The

statements that form the basis of Plaintiff's claims were relayed to Plaintiff by members of the

HR department purporting to summarize Ms. Moreland's complaints from the meeting so that

Plaintiff would have an opportunity to respond in the course of the HR investigation.  Even

accepting as true the allegation that Ms. Moreland made these statements, Plaintiff's allegations

are insufficient to state a claim for either defamation or false light.

The Complaint fails to state a claim for defamation for two independently sufficient

reasons.  First, Plaintiff does not plausibly allege that the statements purportedly made by Ms.

---

[1]       Plaintiff sought and received leave to file this lawsuit anonymously as "John Doe" from
the Superior Court of the District of Columbia, where this case was originally filed.
Contemporaneous with the filing of this Motion to Dismiss, Defendant Crystal Moreland is filing
a Motion to Preclude Plaintiff's Use of a Pseudonym.

Moreland are both false and defamatory—essential elements of any defamation claim.  Second,

Ms. Moreland's communications to the HR department of her employer about workplace

conduct were protected by the "common interest" privilege under D.C. law, which protects

statements made between persons with a common interest in sharing the information.  This

privilege is meant to encourage the exchange of information in certain contexts—including

internal investigations by an employer into potential workplace misconduct—by providing added

protection from the risk of defamation accusations.

Plaintiff's false light claim also must fail.  First, this claim suffers from the same

infirmities as Plaintiff's defamation claim:  the statements that Plaintiff complains of are neither

false nor highly offensive, and they were privileged.  Second, Plaintiff does not, and cannot,

allege any "publicity" of Ms. Moreland's statements, as is required to state a claim for this tort.

Rather, her communications were complaints made in private to a single member of her

employer's human resources staff.  The Complaint merits dismissal.

## BACKGROUND

Ms. Moreland and Plaintiff were colleagues in the Washington, D.C. office of the

Humane Society of the United States ("HSUS") between February 13, 2017, and November 8,

2017.  Compl. ¶¶ 6, 7, 10.[2]  Ms. Moreland was employed by HSUS as an assistant to the

organization's CEO, Wayne Pacelle.  *Id.* ¶ 7.  In February 2017, Plaintiff began working as a

Policy Analyst for the organization's lobbying affiliate, the Humane Society Legislative Fund

("HSLF").  *Id.* ¶¶ 6, 15.

---

[2]     As is required at the motion to dismiss stage, this background statement accepts the facts
pleaded in the Complaint as true, *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C.
Cir. 2015), and is limited to the facts alleged in the complaint and "documents attached thereto or
incorporated therein," *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013).

As a result of their professional duties and the fact that HSUS and HSLF share office space, Ms. Moreland and Plaintiff had work-related interactions beginning in late February 2017. *Id.* ¶¶ 10-12. The Complaint describes several of these interactions, and admits that in the course of these interactions, Plaintiff (1) asked Ms. Moreland to go for walks together on multiple occasions, (2) more than once offered to drive Ms. Moreland home, (3) offered to buy Ms. Moreland lunch and once had dinner with her outside the office, and (4) engaged in personal conversations with her.

In April 2017, Plaintiff and Ms. Moreland had a long conversation in which they discussed both personal and professional matters. *See id.* ¶ 14. On Plaintiff's birthday (April 14), Plaintiff "offered to buy . . . lunch" for several members of the office, including Ms. Moreland. *Id.* ¶ 21. Ms. Moreland ate this lunch in her office, rather than with the rest of the group. *Id.* On April 30, Plaintiff asked Ms. Moreland to go for a walk with her dog. *Id.* ¶ 26. On May 7, Plaintiff again texted Ms. Moreland about going for a walk. *Id.* ¶ 27. Ms. Moreland responded by telling him that she had been in a car accident and asking for a "'rain check.'" *Id.* Plaintiff "asked if there was anything he could do to help" her. *Id.* Ms. Moreland declined his offer for assistance and thus did not go on a walk with Plaintiff in May 2017. *See id.* ¶¶ 27-28.

On June 1, 2017, Plaintiff entered Ms. Moreland's office to "confide[ ]" in her that "his mother was dying." *Id.* ¶ 31. At around 8:00 p.m. that evening, Plaintiff texted Ms. Moreland to offer to drive her home, "so they would have more time to discuss his mother's impending death." *Id.* Ms. Moreland did not respond to his text until after 11:00 p.m. and did not take him up on his offer for a ride home. *Id.* After Plaintiff's mother passed away, on June 17, Plaintiff again texted Ms. Moreland to ask her to go on a walk with him. *Id.* ¶ 33. Ms. Moreland did not respond to the text. *Id.*

3

In late June 2017, the week that Plaintiff returned to the HSUS office after his bereavement leave, Ms. Moreland agreed to have a quick dinner with Plaintiff at a restaurant next to the office that lasted for approximately 45 minutes. *Id.* ¶¶ 34-36. That same evening, Plaintiff both texted and emailed Ms. Moreland, including to "offer[ ] to give her a ride home in order to continue their conversation." *Id.* ¶ 36.

In late September 2017, Ms. Moreland met with Ms. Ursula Norbert of the HSUS Human Resources ("HR") department about Plaintiff's workplace conduct. *See id.* ¶ 49. Approximately two weeks later, on October 12, Ms. Norbert contacted Plaintiff about Ms. Moreland's complaints. *Id.* At that time, Ms. Norbert informed Plaintiff that Moreland had "alleged that [Plaintiff] had told Moreland that he trusted her more than he trusted Mr. Pacelle." *Id.* Plaintiff alleges that he "disputed Moreland's allegation—i.e., her claim that six months ago, he supposedly had said that he didn't completely trust the CEO." *Id.* ¶ 51. Plaintiff asked Ms. Norbert for Ms. Moreland's complaints in writing. *Id.* ¶ 49.

Thereafter, another member of HSUS's HR department, Ms. Jill Little, sent him an email on October 13. *Id.* ¶ 52; *see* Exhibit 1.[3] The Complaint quotes directly from this email and the statements therein form the basis of Plaintiff's defamation and false light claims. *See* Compl. ¶¶ 52-65. Ms. Little's email does not purport to provide verbatim quotations from Ms. Moreland—

---

[3]     On a motion to dismiss, the Court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). In light of Plaintiff's current anonymous status, his name and other identifying information has been redacted from Exhibit 1.

rather, the email presents the HR department's summary of information provided by Ms.

Moreland.  In relevant part, this email states:

> First, I want to emphasize, that there has been no determination
> made that you violated any policy or engaged in harassment—the
> purpose of yesterday's meeting was to inform you of the
> complaint.  This was simply the first step in the investigatory
> process.  Crystal's complaint alleges that the following incidents
> have occurred over the course of the past seven months and that
> they have made her feel very uncomfortable and intimidated:
>
> - You asked her if she had slept with Wayne;
> - You have repeatedly asked her to lunch and dinner;
> - When she did agree to go to dinner with you once, you
>   became upset with her because she could only stay for 90
>   minutes;
> - You have repeatedly asked if you could drive her home;
> - You asked her why she was in the hospital;
> - You followed her around the office (to the breakroom,
>   restroom, and in the hallways) after she returned from the
>   hospital;
> - You texted her and asked if you could bring food to her
>   house and asked who was looking after her; you then sent
>   her another text stating that you had dropped food off in her
>   lobby (no food was there);
> - You texted her multiple times asking her to go for a walk;
> - You texted her on the night of Ryan Ososki's happy hour
>   while she was drinking a glass of wine that Tracie gave her
>   stating "since you're drinking now, do you want me to
>   drive you home?"  Crystal said that she looked around the
>   room, but that you were nowhere in sight; and
> - Most recently (in September), you made a reference to an
>   incident that happened to a friend of hers earlier this
>   summer that she had not shared with you or anyone else at
>   the HSUS;
>
> *If true*, this behavior would violate The HSUS's Policy Against
> Sexual and Other Types of Harassment.

Ex. 1; *see also* Compl. ¶¶ 52-65.

Plaintiff's Complaint addresses each of the "incidents" identified in Ms. Little's email,

Ex. 1, as well as the statement that these incidents "'made [Ms. Moreland] feel very

uncomfortable and intimidated,'" *see* Compl. ¶¶ 53-65.  Although authored by Ms. Little, Plaintiff attributes all of these statements to Ms. Moreland and then characterizes some but not all of the statements as "false."  *Compare id.* ¶ 63 (describing as "false" the statement that Plaintiff "'asked [Ms. Moreland] if she had slept with [Mr. Pacelle],'" *with id.* ¶ 62 (noting that the statement that Plaintiff "'repeatedly asked if [he] could drive [Ms. Moreland] home'" simply "fails to mention all relevant evidence and context").

Prior to Plaintiff's termination, HSUS gave Plaintiff the opportunity to provide all of his texts and emails with Ms. Moreland to the HR department.  *See* Ex. 1; Compl. ¶ 67.  Plaintiff did so, and thus provided the HR department with all of his communications with Ms. Moreland that he contends provide additional context for Ms. Moreland's statements.  Compl. ¶¶ 66-67, 69-70. According to Plaintiff, these emails and texts support his view that Ms. Moreland had herself initiated the conversation about going for a walk together, had "offered to take him out many times," and that he had "spurned Moreland's many romantic advances."  *Id.* ¶¶ 54, 60, 62.

HSUS conducted an investigation into Plaintiff's workplace conduct that was led by an attorney from HSUS's Office of General Counsel.  *Id.* ¶¶ 68-71.  Although Plaintiff complains that HSUS did not "let [him] know how he could clear his name" or "provide [him] with any opportunity to address the allegations," Plaintiff also notes that he was represented by an attorney during this period.  *Id.* ¶¶ 72, 75.  On November 8, 2017, Plaintiff's employment was terminated by HSUS.  *Id.* ¶ 75.  Plaintiff alleges that he was terminated as a result of Ms. Moreland's complaints.  *Id.* ¶ 76.  Plaintiff does not allege that Ms. Moreland communicated her complaints about his behavior to anyone other than the HSUS HR department.  *See id.* ¶¶ 49, 71.

## LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(6) is warranted where the complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In the First Amendment area, "perhaps more than any other, the early sifting of groundless allegations from meritorious claims made possible by a Rule 12(b)(6) motion is an altogether appropriate and necessary judicial function." *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 50 (D.C. 1983) (per curiam); *see also Coles v. Wash. Free Weekly, Inc.*, 881 F. Supp. 26, 30 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996) ("Given the threat to the first amendment posed by nonmeritorious defamation actions, it is particularly appropriate for courts to scrutinize such actions at an early stage of the proceedings to determine whether dismissal is warranted.").

## ARGUMENT

Plaintiff's defamation claim should be dismissed for two independent reasons. The first is that it fails to identify any statement by Ms. Moreland that is both false and defamatory of the Plaintiff. At the heart of Plaintiff's Complaint is his assertion that he could not possibly have made Ms. Moreland feel uncomfortable at work. But Ms. Moreland's alleged complaint that his behavior made her feel uncomfortable is an inherently "subjective view," rather than an "objectively verifiable fact[ ]," and as such, it cannot be the basis for a defamation claim. *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000). This is particularly true

7

since none of the specific statements describing incidents that allegedly caused Ms. Moreland to feel this way is itself actionable.  These alleged statements—recited in the email from Ms. Little—are not actionable because they are concededly true or substantially true, do not contain objectively verifiable facts, and/or are not reasonably capable of defamatory meaning.  They cannot support a defamation claim.

Second, even if Ms. Moreland made a false and defamatory statement concerning the Plaintiff, he concedes that she only did so in connection with making a report to her employer's HR department.  The law *encourages* employees to communicate with their employers about workplace conduct and thus protects such communications with a qualified privilege that can only be overcome by a showing of malice.  *See Millstein v. Henske*, 722 A.2d 850, 856 (D.C. 1999).  "District of Columbia law makes it very difficult for a plaintiff to overcome a qualified privilege," *Novecon, Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 567 (D.C. Cir. 1999), and here the Plaintiff has not even tried.  The Complaint contains no factual allegations that, if proven true, would suffice to overcome the privilege.  Plaintiff's defamation claim should be dismissed for this reason as well.

And last, Plaintiff's false light claim must fail for the same reasons as his defamation claim, and also because Plaintiff has not alleged that Ms. Moreland "publicized" her complaints beyond her private communications with HR.

## I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION

Plaintiff's defamation claim is facially insufficient.  A defamation plaintiff must establish "'(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the

8

plaintiff special harm.'" *Doe No. 1 v. Burke*, 91 A.3d 1031, 1044 (D.C. 2014).  The facts alleged

by Plaintiff demonstrate that Ms. Moreland's purported statements were not "false and

defamatory," and also establish that Ms. Moreland made these statements in a privileged context.

> **A.     The Statements Attributed to Ms. Moreland Are Not Actionable.**

Plaintiff's Complaint purports to offer a blow-by-blow account of his interactions with

Ms. Moreland, and beginning in paragraph 54, it takes issue with the various statements made in

Ms. Little's email and which Plaintiff attributes to Ms. Moreland.  Even assuming for purposes

of this motion that Ms. Moreland made all of the statements that Plaintiff attributes to her, they

are not actionable under D.C. law because they are concededly true, not provably false (*i.e.*, Ms.

Moreland's subjective feelings), not defamatory, or all of the above.

> **1.     The primary statement about which Plaintiff complains is not a verifiably false statement of fact.**

The primary statement that Plaintiff complains of—that Ms. Moreland felt

"uncomfortable and intimidated" as a result of Plaintiff's behavior—is not factually verifiable,

and thus is not actionable.  The First Amendment protects statements "that cannot 'reasonably

[be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain Journal Co.*,

497 U.S. 1, 20 (1990) (alteration in original) (quoting *Hustler Magazine v. Falwell,* 485 U.S. 46,

50 (1988)).  "Where a defendant's statement 'cannot be construed as representations of fact,'

there can be no defamation." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013)

(quoting *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin*, 418 U.S. 264,

284 (1974)).  "In other words, a defendant cannot be held liable unless the alleged defamatory

statement or implied premise is 'verifiable.'" *Farah*, 736 F.3d at 534-35 (quoting *Moldea v. N.Y.

Times Co.,* 22 F.3d 310, 317 (D.C. Cir. 1994)).  "Where a statement is so imprecise or subjective

that it is not capable of being proved true or false, it is not actionable in defamation." *Id.*; *see*

9

*Ollman v. Evans*, 750 F.2d 970, 981-82 (D.C. Cir. 1984) ("An obvious potential for quashing or muting First Amendment activity looms large when juries attempt to assess the truth of a statement that admits of no method of verification.").  "Verifiability is . . . a critical threshold question at the Rule 12(b)(6) stage."  *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001).

"Determining whether an utterance is fact or opinion requires viewing the 'totality of the circumstances' with four specific factors in mind: '(1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared.'"  *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 147 (D.D.C.) (quoting *Milkovich*, 497 U.S. at 9), *appeal dismissed*, No. 17-7164, 2017 WL 6553388 (D.C. Cir. Dec. 8, 2017).  "Although a statement of opinion can be actionable where it implies 'a provably false fact, or rel[ies] upon stated facts that are provably false,' 'if it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.'"  *Deripaska*, 282 F. Supp. 3d at 141 (alteration in original) (citations mitted) (quoting *Guilford Transp.*, 760 A.2d at 597); *see also Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 47 (D.C. 1983) ("Even where it appears that the words, in context, are merely a statement of opinion, the court must also determine whether the opinion could be said to imply undisclosed defamatory facts.").

In *Lester v. Powers*, the Supreme Judicial Court of Maine applied a substantially similar standard to that of the District of Columbia, and concluded that statements describing how a student felt "uncomfortable" and "intimidated" as a result of a professor's conduct were "subjective impressions" and were not actionable.  596 A.2d 65, 67, 71 & n. 9 (Me. 1991) (noting that Maine's standard "comports with the decisions of other jurisdictions") (citing, inter

10

alia, *Ollman*, 750 F.2d at 978-84). In *Lester*, a student submitted a letter as part of a professor's tenure review that stated: "'But as an ex-member of the college committee on sexual harassment, I know that a student should not ever be made to feel uncomfortable or intimidated in her/his learning on account of gender or sexual orientation, and I sadly feel this was definitely the case for me.'" *Id.* at 67. The court held that the letter "expresses her personal observations, and thus is a statement of opinion rather than of fact. It conveys her subjective evaluation that . . . his manner was offensive, insensitive, and occasionally intimidating; these are not statements of fact but rather her personal observations." *Id.* at 71.

So too here. As in *Lester*, Ms. Little's statement that certain incidents "made [Ms. Moreland] feel very uncomfortable and intimidated," Ex. 1; Compl. ¶¶ 53, 64, is fundamentally an expression of a subjective view. Assuming for purposes of this motion that "very uncomfortable and intimidated" is the specific language used by Ms. Moreland (and not just Ms. Little), Ms. Moreland's personal feelings about her interactions with Plaintiff are unverifiable, and are statements of a subjective, personal opinion. *See Deripaska*, 282 F. Supp. 3d at 141; *Lester*, 596 A.2d at 71. And in context, the statement does not imply any undisclosed defamatory facts. *See id.*; *Myers*, 472 A.2d at 47. Rather, Ms. Little's email identifies the "incidents" that contributed to the feeling of discomfort, and no additional undisclosed incidents are implied. *See* Ex. 1.

The Complaint suggests that the friendly tone of certain of Ms. Moreland's emails is evidence that she could not have felt uncomfortable. *See* Compl. ¶¶ 40, 64 (juxtaposing "uncomfortable" language with email exchange in which, after Plaintiff emailed Ms. Moreland and said "someone should invent a machine that would 'clone' their mutual friend and Moreland," Ms. Moreland replied "You are so sweet! You and [a colleague] are one might

11

machine of your own! We're damn lucky to have you both!  See you tomorrow my friend!").

While Plaintiff may have had a different perception of these interactions,[4] Ms. Moreland's

perception and feelings about these interactions—many of which Plaintiff concedes to have

taken place, *see* Compl. ¶¶ 26, 27, 33 (repeated requests to go for walks), *id.* ¶¶ 31, 36 (repeated

offers for a ride home)—simply are not "susceptible to proof of their truth or falsity."  *Myers*,

472 A.2d at 47; *Lester* 596 A.2d at 71.

> ## 2.     The remaining statements attributed to Ms. Moreland are not actionable.

The remaining statements attributed to Ms. Moreland are not actionable because they are

concededly true, not factually verifiable, not defamatory, or are a combination of the above.[5]

Statements that Plaintiff concedes to be true or substantially true are not actionable.

"'Truth is an absolute defense to [a] defamation claim.'"  *Edmond v. Am. Educ. Servs.*, 823 F.

Supp. 2d 28, 35 (D.D.C. 2011) (alteration in original), *aff'd*, 483 F. App'x 576 (D.C. Cir. 2012)

(per curiam).  Statements are "substantially true" where "the 'gist' of the statement is true or . . .

the statement is substantially true, as it would be understood by its intended audience."  *Benic v.*

*Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004); *see also Armstrong v. Thompson*, 80

---

[4]     *See, e.g.*, *Howard Univ. v. Best*, 484 A.2d 958, 981 & n.26 (D.C. 1984) ("There is evidence that men and women have different perceptions of what behavior is harmless or innocent as opposed to that which is offensive.") (citing Comment, Sexual Harassment Claims of Abusive Work Environment Under Title VII, 97 Harv. L. Rev. 1449 (1984)).

[5]     The Complaint does not clearly specify which of the dozen statements discussed in Paragraphs 49 to 65 are alleged to be defamatory.  Instead, his defamation claim merely states that "Moreland made false and defamatory statements to HSUS and HSLF concerning Doe." Compl. ¶ 79.  In order to plead defamation, a plaintiff must "allege specific defamatory comments," by "'plead[ing] the time, place, content, speaker, and listener of the alleged defamatory matter.'"  *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996) (alteration in original) (quoting *Howard Univ.*, 484 A.2d at 988-89).  In light of Plaintiff's failure to specify which of the dozen statements are allegedly defamatory, Ms. Moreland has addressed all identified statements herein.

A.3d 177, 183 (D.C. 2013) (quoting Restatement (Second) of Torts § 581 A (Am. Law Inst.

1977)) ("Slight inaccuracies of expression are immaterial provided that the defamatory charge is

true in substance").  "It is an inescapable conclusion" that several of the statements identified in

the Complaint are not actionable "because Plaintiff has admitted [their] truth." *Coles v. Wash.

Free Weekly, Inc.*, 881 F. Supp. 26, 31 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996)

(concluding that statement that plaintiff "holds down a full-time job at the Federal

Communications Commission" was not actionable despite potential "negative implication"

because plaintiff had admitted to being a full-time lawyer for the FCC).

Similarly, if a disputed statement is not "'reasonably capable of defamatory meaning,'" it

is not actionable.  *Farah*, 736 F.3d at 534-35 (D.C. Cir. 2013) (noting that the defamatory

meaning inquiry is another "threshold . . . question[ ] of law for the court to decide").  "The D.C.

Court of Appeals has established a high standard for judging a statement slanderous." *Fleming

v. AT & T Info. Servs., Inc.*, 878 F.2d 1472, 1475 (D.C. Cir. 1989).  Although "'[a] statement is

defamatory if it tends to injure plaintiff in his trade, profession or community standing, or lower

him in the estimation of the community,'" *Smith v. Clinton*, No. 17-5133, 2018 WL 1473544, at

*4 (D.C. Cir. Mar. 27, 2018) (per curiam), the statement must also "be more than unpleasant or

offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous,'"

*Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984) (quoting *Johnson v. Johnson Publ'g Co.*,

271 A.2d 696, 697 (D.C.1970)).  *See also Deripaska*, 282 F. Supp. 3d at 146 ("Defamation is not

made up of hints and suggestions and it cannot be merely unpleasant or offensive.").

In *Howard University v. Best*, the D.C. Court of Appeals held that an internal report was

not defamatory despite stating that "the present chairman [of a Howard University department] is

actively opposed to the present administration" and that her "lack of cooperation" has caused

others to handle activities that should have been performed by her department. 484 A.2d at 988. Although the department chair was terminated after the publication of the report, the *Howard University* court concluded that the report did not make her "appear 'odious, infamous, or ridiculous.'" *Id.* at 989. Similarly, in *Levant v. Whitley*, the D.C. Court of Appeals concluded that a letter informing the plaintiff that she was being expelled from her role as an officer and member of an organization "d[id] not rise to the level of defamation" despite its accusation that the plaintiff' "attitude, . . . combativeness, confrontational nature and actions, and . . . total disrespect" were "bringing shame" to the organization. 755 A.2d 1036, 1039-40, 1046 (D.C. 2000).

Applying these basic principles of defamation law, none of the remaining statements discussed in the Complaint, *see* ¶¶ 49, 54-63, 65, is actionable:

- The statement that Plaintiff "had told Moreland that he trusted her more than he trusted Mr. Pacelle," Compl. ¶ 49, is akin to the statement that the Howard University department head was "'actively opposed to the present administration.'" *Howard Univ.*, 484 A.2d at 988. Neither statement is defamatory.

- The statement that Plaintiff "'repeatedly asked [Ms. Moreland] to lunch and dinner,'" Compl. ¶ 54, while allegedly "false," *id.*, is substantially true. Plaintiff concedes that he offered to buy and did buy Ms. Moreland lunch on his birthday, *id.* ¶ 21, and that after his mother had passed away and he had asked Ms. Moreland to go for a walk together, they did have dinner together outside the office, *id.* ¶¶ 33, 35-36. This statement also fails to rise to the level of defamatory, as it does not cast Plaintiff in a light that is more than "merely unpleasant or offensive." *Deripaska*, 282 F. Supp. 3d at 149.

- Plaintiff does not meaningfully dispute the truth of the statement that he "'repeatedly asked if [he] could drive [Ms. Moreland] home,'" Compl. ¶ 62, as his allegations concede that on multiple occasions he offered to do just that. *See id.* ¶¶ 31 ("he texted her to offer her a ride home"), ¶ 36 ("Doe then texted her and offered to give her a ride home"). While Plaintiff disputes that he texted Ms. Moreland to offer to drive her home on the night of a particular office happy hour, *see* Compl. ¶ 55, the gist of this statement—that he, on more than one occasion, offered her rides home—is admittedly true. Because the Complaint admits the substantial truth of these statements, they cannot support a claim for defamation. *See Coles*, 881 F. Supp. at 31.

- Similarly, Plaintiff admits the truth of the statement that he "'texted her multiple times asking her to go for a walk.'" Compl. ¶ 60; *see id.* ¶ 26, 27, 33 (identifying three separate requests by Plaintiff via text to go on a walk together).

- Plaintiff quibbles with the statement that he "'texted her and asked if [he] could bring food to her house and asked who was looking after her; [he] then sent her another text stating that [he] had dropped food off in her lobby (no food was there).'" Ex. 1, *see* Compl. ¶¶ 56, 58. While Plaintiff alleges that he never texted her to say that he had dropped off food, *id.* ¶ 56, he concedes that after Ms. Moreland's car accident he "was naturally very concerned and offered to bring her food or otherwise help, which she declined," *id.* ¶ 58. As the gist is substantially true, this statement cannot support a claim for defamation. *See Armstrong*, 80 A.3d at 183. And even if false, the statement that he told her that he dropped food off but no food was there would not lower Plaintiff in the estimation of the community. *See Smith*, 2018 WL 1473544 at *4.

- Plaintiff does not allege that the statement that Plaintiff "'asked her why she was in the hospital,'" *id.* ¶ 59, is false—rather, he notes that Ms. Moreland had told him that she had been in a car accident, and that he was "naturally very concerned," *id.* ¶ 58.  Relatedly, Plaintiff denies that he "'followed [Ms. Moreland] around the office (to the breakroom, restroom, and in the hallways) after she returned from the hospital,'" *id.* ¶ 57, but Ms. Moreland's subjective impression of Plaintiff's behavior after her hospitalization is not factually verifiable.  Rather, it is her personal opinion, *see Deripaska*, 282 F. Supp. 3d at 141; *Lester*, 596 A.2d and 71, and it "admits of no method of verification," *Ollman*, 750 F.2d at 981-82.  In any event, it is hardly defamatory to say that Plaintiff was so concerned Ms. Moreland after her hospitalization that he followed her around the office.  *See Howard Univ.*, 484 A.2d at 989.

- Similarly, while Plaintiff denies being "upset" by the brevity of their dinner outing, *see* Compl. ¶ 61, Ms. Moreland's subjective impression of Plaintiff's reaction is not susceptible to proof.  *Myers*, 472 A.2d at 47.  And Plaintiff does not meaningfully contradict the substantial truth of the other statements about the dinner outing—he quibbles with the length of the dinner (45 versus 90 minutes), and the statement that Ms. Moreland "agreed" to dinner (he contends that she initiated dinner)—but to the extent that these are minor inaccuracies, the gist is substantially true and the allegedly inaccurate details about the dinner are not even arguably "defamatory."  *See Weyrich*, 235 F.3d at 627 ("We emphasize again that, to be actionable, the story must be materially false.  If the author has merely hyperbolized, provided colorful rhetorical description of appellant's anger, that will not suffice.").

16

- Plaintiff does not allege that the statement that he "'made a reference to an incident that happened to a friend of hers earlier this summer that she had not shared with [him] or anyone else at the HSUS'" is false. *Id.* ¶ 65. Instead, Plaintiff notes that he "did not know what this might refer to or what exactly was being alleged." *Id.* Statements that are not even allegedly false and are merely vague "hints or suggestions" are not actionable as defamation. *See Deripaska*, 282 F. Supp. 3d at 149.

- Finally, the statement that Plaintiff "'asked [Ms. Moreland] if she had slept with [Mr. Pacelle],'" Compl. ¶ 63, is not defamatory of the Plaintiff. At most, it shows that he asked Ms. Moreland an inappropriate personal question, but it does not make Plaintiff appear "'odious, infamous, or ridiculous,'" *Howard Univ.*, 484 A.2d at 989; *Deripaska*, 282 F. Supp. 3d at 149, as is required to support a claim for defamation.

In sum, the statements at issue merely describe a pattern of requests to take meals, walks, or drives together, and that Plaintiff took an active interest in Ms. Moreland after she was injured in a car accident—all of which Ms. Little described as having made Ms. Moreland feel uncomfortable. *See* Compl. ¶¶ 53-65. Much of the workplace conduct described in these statements at issue is admittedly true, and none of these statements is "more than unpleasant or offensive" or makes Plaintiff appear "'odious, infamous, or ridiculous.'" *Howard Univ.*, 484 A.2d at 989. As such, Plaintiff's defamation claim requires dismissal.

### B. The Statements Are Protected by the Qualified "Common Interest" Privilege.

Plaintiff's defamation claim also fails for a second, separate and independent reason—because all of the statements attributed to Ms. Moreland are protected by the "common interest" privilege, which protects "statements in which a communicator has a common interest with a listener." *Caudle v. Thomason*, 942 F. Supp. 635, 639 (D.D.C. 1996). "The privilege is an

important one, because '[i]f [its] protection were not given, true information that should be given or received would not be communicated because of fear of the persons capable of giving it that they would be held liable in an action of defamation if their statements were untrue.'" *Millstein v. Henske*, 722 A.2d 850, 856 (D.C. 1999) (alterations in original) (quoting Restatement (Second) of Torts, Ch. 25, Topic 3, Tit. A Scope Note (Am. Law. Inst. 1977)).  Although a plaintiff may defeat the privilege by showing that the statement was made with "express malice or malice in fact," the plaintiff has not alleged any express malice or malice in fact by Ms. Moreland (nor could he).  *Blodgett v. Univ. Club*, 930 A.2d 210, 223-24 (D.C. 2007) (internal quotation marks omitted).  Even accepting Plaintiff's allegations as true, the common interest privilege applies as a matter of law.  *See Alade v. Borg-Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655, 656 (D.D.C. 1998) ("Where the facts relating to publication are undisputed, the question of whether or not a statement is privileged is one of law for the court.").

### 1.     Ms. Moreland and HSUS share a common interest.

Ms. Moreland's statements in a private meeting to her employer's HR department about another employee's conduct fall squarely within the "common interest" privilege.  "To come within the protection of the common interest privilege, the statement must have been (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Blodgett*, 930 A.2d at 223-24 (internal quotation marks omitted).

Courts in the District of Columbia routinely apply the common interest privilege to protect communications in the employment context where the subject of the communication relates to the workplace or workplace duties.  In *Elliott v. Healthcare Corp.*, the D.C. Court of Appeals held that the common interest privilege protected statements made in a meeting between

the plaintiff (an employee), his manager, and a consultant for the employer who identified

complaints with plaintiff's work, after which meeting the plaintiff was discharged. 629 A.2d 6, 9

(D.C. 1993); *see also Mosrie v. Trussell*, 467 A.2d 475, 477-80 (D.C. 1983) (concluding

qualified privilege protected defendant police captain's statements to his superior about plaintiff

police officer's misconduct, and noting the "inescapable conclusion," based on the plaintiff's

demotion, that the investigatory board had "found substance to the allegations" made by the

defendant); *Millstein*, 722 A.2d at 856 (holding that statements in work performance evaluation

were protected by common interest privilege); *Alade*, 28 F. Supp. 2d at 656-57 (two managers

who communicated to other employees about the plaintiffs' discharge for violating company's

sexual harassment policy were protected by the common interest privilege in connection with

their "duty to enforce their employer's sexual harassment policy").

        The application of the privilege to this context is not unique to the District of Columbia.

As a multitude of jurisdictions have recognized, the common interest privilege protects

communications from an employee to her employer about harassment in the workplace because

employers and employees both have an interest in ensuring appropriate workplace conduct and

stopping harassing behavior in the workplace.  *See Vickers v. Abbott Labs.*, 719 N.E.2d 1101,

1109 (Ill. App. Ct. 1999).  As stated in *Vickers*:

>        A recent United States Supreme Court decision governing sexual
> harassment in the workplace has made clear that there is a
> compelling interest in ridding workplaces of sexual harassment, and
> specifically an obligation of employers to "'take all steps necessary
> to prevent sexual harassment from occurring'" and "'to establish a
> complaint procedure designed to encourage victims of harassment
> to come forward.'"   The qualified privilege in the defamation
> context promotes this social policy and provides protection for the
> victims, witnesses and investigators of sexual harassment.  If no
> privilege existed, then victims of harassment and companies with a
> goal of preventing harassment would be "handcuffed" by a fear of
> defamation liability.

19

*Id.* (citations omitted) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 806 (1998)); *see also Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 143 (D.N.H. 2005) (holding that qualified privilege protects employees' reports to management of sexual harassment by their co-workers, "given the complaining employees' interest in preventing further abuse and the employer's responsibility under federal law to do the same"); *Miller v. Servicemaster by Rees*, 851 P.2d 143, 145 (Ariz. Ct. App. 1992) (employee's statements about allegedly harassing conduct was "for the benefit of protecting her from unwanted harassment, real or perceived, and are conditionally protected"); *Cruey v. Gannett Co.*, 76 Cal. Rptr. 2d 670, 677-78 (Cal. Ct. App. 1998) (holding that "complaints to employers about workplace harassment should be privileged"); Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 9.2.2.A, at 9-20 (2016) ("communications between employees about the conduct of a co-employee or a former employee . . . will usually be protected without careful scrutiny by the courts").

Here, the common interest privilege applies to Ms. Moreland's statements to HSUS's HR department. Both Ms. Moreland and the HR department have a shared interest in identifying and mitigating problems in the workplace, including workplace conduct that could be considered harassing. *See Elliott,* 629 A.2d at 9; *Vickers*, 719 N.E.2d at 1109. After Ms. Moreland identified incidents to the HSUS HR department involving Plaintiff that had, in Ms. Little's words, made Ms. Moreland feel uncomfortable, the HR department conducted an investigation and provided Plaintiff with an opportunity to respond. *See* Ex. 1; Compl. ¶¶ 66-71. As there is (and could be) no allegation that Ms. Moreland's statements were made outside of this context—Ms. Moreland's meeting with Ms. Norbert and the subsequent HR investigation—the common interest privilege applies.

### 2. Plaintiff does not allege malice by Ms. Moreland that would defeat the qualified privilege.

Plaintiff does not plausibly allege that Ms. Moreland acted with malice, such that her bad faith would negate the qualified common interest privilege.  Where the court determines that the common interest privilege is applicable, "the defendant will be presumed to have been actuated by pure motives in its publication," and "[i]n order to rebut this presumption, express malice or malice in fact must be shown by the plaintiff."  *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (brackets and internal quotation marks omitted).  "Malice, in the context of a qualified privilege . . . is 'the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will.'"  *Moss*, 580 A.2d at 1025.  "[C]onduct amounting to ordinary negligence" is insufficient to overcome the privilege, *id.*, and "the fact that [the defendant] feels resentment and indignation towards the plaintiff and enjoys defaming him will *not* forfeit the privilege so long as the primary purpose is to further the interest which is entitled to protection," *Mosrie*, 467 A.2d at 477-78.

Here, all the Complaint contains is the conclusory allegation that Ms. Moreland "acted with negligence and/or intentionally" when making her statements to the HSUS HR department.  The Complaint contains no allegations that, if proven true, would suffice to overcome the privilege.  Plaintiff's allegation of negligence is plainly insufficient.  *Moss*, 580 A.2d at 1025.  So too is the allegation that her statements were "intentional."[6]  Notably absent from the

---

[6]     At most, the Complaint's allegation that Plaintiff had "spurned" Ms. Moreland's "romantic advances," Compl. ¶ 62, suggests that Ms. Moreland may have resented Plaintiff, however the Complaint's allegations do not support an inference that Ms. Moreland's primary purpose in discussing Plaintiff's workplace conduct with the HSUS HR department was anything other than furthering the shared interest of ensuring appropriate workplace conduct at HSUS.  *See Mosrie v. Trussell*, 467 A.2d 475, 477-78 (D.C. 1983).

Complaint is any allegation that Ms. Moreland acted with conscious indifference or reckless disregard—a standard Plaintiff cannot possibly meet (or even plead) given the subjective nature of the statements attributed to Ms. Moreland.  While Plaintiff may disagree that his workplace conduct should have made Ms. Moreland feel uncomfortable and intimidated, she is entitled to her own feelings, and the law protects her right to share those feelings with her employer.

For this reason, even if Plaintiff had identified a statement made by Ms. Moreland that was false and defamatory (and he has not), his Complaint should nevertheless be dismissed.  *See Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404, 409 (D.D.C. 2008) (granting employer's motion to dismiss former employee's defamation complaint because plaintiff did not "allege that the challenged statement was malicious or that publication was beyond the normal, expected scope and therefore . . . she has not overcome the presumptive qualified privilege"); *Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 10 (D.D.C. 2001) (concluding that plaintiff "failed to allege any facts to support a claim of malice" and concluding that qualified privilege applied on motion for judgment on the pleadings).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE LIGHT

Plaintiff's false light invasion of privacy claim suffers from the same defects as his defamation claim, and must fail for the additional and independent reason that the Complaint alleges no facts supporting an inference that Ms. Moreland publicized her complaints about Plaintiff's behavior beyond the private confines of the HR department.  Plaintiff fails to plausibly allege the required elements of the false light claim:  "(1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be highly offensive to a reasonable person."  *Saha v. Lehman*, 537 F. Supp. 2d 122, 127 (D.D.C.), *aff'd*, No. 08-7047, 2008 WL 4726053 (D.C. Cir. July 31, 2008).

### A.   The False Light Claim Has the Same Flaws as the Defamation Claim.

The same flaws that doom Plaintiff's defamation claim—the statements are not objectively verifiable, are admittedly true, or are not highly offensive, and are protected by the common interest privilege—also doom Plaintiff's false light claim.   "[W]here the plaintiff rests both his defamation and false light claims on the same allegations . . . the claims will be analyzed in the same manner." *Blodgett*, 930 A.2d at 223.  The substantial truth defense "applies equally" to false light claims, *White v. Fraternal Order of Police*, 909 F.2d 512, 526 (D.C. Cir. 1990), and an action for false light cannot be maintained where the statement at issue is not verifiable, *Armstrong v. Thompson*, 80 A.3d 177, 187-89 (D.C. 2013).  The fourth element of the false light tort differs from the elements of defamation slightly, and requires the court to "satisfy itself that the statement does not arguably place [the plaintiff] in a highly offensive false light in addition to finding the statements are not capable of defamatory meaning." *Smith*, 2018 WL 1473544 at *5 (alteration in original) (internal quotation marks omitted).   "In addition, the same privileges applicable to libel claims may be invoked to defend false light claims." *White*, 909 F.2d at 518 (citing, inter alia, Restatement (Second) of Torts § 652G).

Here, the analysis of the false light element of falsity and application of the common interest privilege are identical to the defamation analysis set forth above.  *See supra*, Part I.  And the workplace conduct attributed to Plaintiff—largely, repeated requests for meals, walks and drives—is not "highly offensive to a reasonable person." *Saha*, 537 F. Supp. 2d at 127.  As a result, Plaintiff's factual allegations are insufficient to plausibly satisfy the second and fourth elements of the false light tort.

### B.   The False Light Claim Must Fail Because Plaintiff Alleges No "Publicity."

Apart from the defects described above that apply equally to the defamation and false light claims, the false light claim requires dismissal because Plaintiff has alleged no facts that

support an inference that Ms. Moreland publicized her complaints about Plaintiff.  Instead, the

Complaint merely describes private conversations between Ms. Moreland and the HSUS HR

department.

"The false light invasion of privacy action differs from an action for defamation because

a defamation tort redresses damage to reputation while a false light privacy tort redresses mental

distress from having been exposed to public view."  *White*, 909 F.2d at 518.  Thus, unlike the

"publication" element of defamation, the "publicity" element of false light "requires that the

matter is made public, by communicating it to the public at large, or to so many persons that the

matter must be regarded as *substantially certain to become one of public knowledge.*"  *Bean v.*

*Gutierrez*, 980 A.2d 1090, 1095 (D.C. 2009) (internal quotation marks omitted).  In *Bean v.*

*Gutierrez*, the D.C. Court of Appeals held that a private communication between two people was

insufficient to satisfy the "publicity" element of the false light claim.  *Id.* ("'[I]t is not an

invasion of the right of privacy, within the rule stated in this Section, to communicate a fact

concerning the plaintiff's private life to a single person or even to a small group of persons.'"

(quoting Restatement (Second) of Torts § 652D cmt. a)); *see also Hampton v. Comey*, No. 14-

CV-1607 (ABJ), 2016 WL 471277, at *23 (D.D.C. Feb. 8, 2016), *aff'd*, No. 16-5058, 2016 WL

6238558 (D.C. Cir. Sept. 8, 2016) (per curiam) (concluding that plaintiff failed to state a

plausible claim for false light invasion of privacy where plaintiff failed to allege that "defendants

communicated the facts of their investigation or plaintiff's arrest and conviction to anyone, let

alone to 'the public at large.'").

The Complaint alleges that Ms. Moreland met with a member of the HSUS HR

department about Plaintiff's workplace conduct, Compl. ¶ 49, and that Ms. Moreland's

complaints were then provided in writing to Plaintiff by a member of the HR department, *id.* ¶¶

52-53.  In connection with the investigation that followed, Plaintiff alleges that "[o]n information and belief, Moreland was interviewed a number of times by the organization."  *Id.* ¶ 71.  But the Complaint does not identify any public statements by Ms. Moreland about Plaintiff—only private statements made during an internal HSUS investigation.  Because Ms. Moreland did not "communicat[e] . . . to the public at large, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge*," Plaintiff fails to state a claim for false light.  *Bean*, 980 A.2d at 1095.

## CONCLUSION

For the foregoing reasons, Ms. Moreland's motion should be granted.

Dated: April 16, 2018

Respectfully submitted,

/s/   Kevin Hardy
Kevin Hardy (DC Bar No. 473941)
Gloria Maier (DC Bar No. 1012208)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
khardy@wc.com
gmaier@wc.com

*Attorneys for Crystal Moreland*

25

## **CERTIFICATE OF SERVICE**

I certify that on April 16, 2018, I caused a copy of the foregoing to be sent by ECF and

first class mail to counsel for Plaintiff:

Diane A. Seltzer Torre, Esq.
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
dseltzer@seltzerlawfirm.com

/s/ Kevin Hardy
Kevin Hardy