IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY THOMAS, JR., <br><br> Plaintiff, <br> v. <br><br> CRYSTAL MORELAND, <br><br> Defendant. | Civil Action No. 18-cv-0800-TJK |

**DEFENDANT'S RULE 37 MOTION FOR SANCTION OF DISMISSAL**

On March 5, 2021, Plaintiff Jeffrey Thomas, Jr. appeared for his reopened deposition but refused to answer any questions on five of the six topics about which this court ordered him to provide testimony. Disregarding this Court's January 26, 2021 Order, Thomas unilaterally decided that the questions he was asked were not "relevant" and on that basis refused to answer those questions for the *second* time. Thomas's pattern of refusal to cooperate in the discovery process and his disregard for the Court's lawful Orders is incompatible with the continued prosecution of his claims. Since Plaintiff does not wish to participate in discovery, his case should come to an end. Defendant Crystal Moreland respectfully moves for sanctions for Thomas's violation of the Court's January 26, 2021 Order, including dismissal of this action and an award of reasonable expenses caused by Thomas's conduct.

**I.     FACTUAL BACKGROUND**

On January 26, 2021, this Court ordered Thomas to provide testimony on six topics (Topics 3–8) raised in Moreland's motion to compel:

> *Topic 3*: "What Plaintiff discussed on a phone call with HSUS CEO Pacelle";
>
> *Topic 4*: "The identity of an 'anonymous donor' who Thomas proposed would fund his salary at two potential post-termination jobs";

> *Topic 5*: "The accuracy of statements about Thomas's donations to HSUS" prior to his employment in 2017 "in an e-mail Moreland received";
>
> *Topic 6*: "Whether 'Jeff's Potential Volunteer-Employment' proposal Thomas sent to Pacelle (subsequently forwarded to Moreland) contained accurate statements about Thomas's relationships with HSUS senior leadership";
>
> *Topic 7*: "The accuracy of a text message Thomas produced in discovery" that demonstrated large monetary donations to HSUS consistent with the proposed donation-for-employment agreement; and
>
> *Topic 8*: "Thomas's role in setting his own salary at HSLF."

Sealed Mot. to Compel 2 (Oct. 23, 2020), ECF No. 46; Sealed Order 1 (Jan. 26, 2021), ECF No. 68. The Court ordered Thomas to provide testimony on Topics 3 and 5–8 "as they relate to formation, negotiation, or execution of any donation-for-employment arrangement" and on Topic 4 "to the extent that Thomas was seeking self-funded employment at other organizations." Sealed Order 1.

Defendant Moreland properly noticed Thomas's second deposition. *See* Ex. A (Am. Notice of Dep.). On February 23, 2021, Thomas moved for a protective order limiting the time for his reopened deposition, and following a telephonic status conference with the parties, the Court ordered that Moreland would have two hours to depose Thomas. The final date and time of the deposition were selected in consultation with Plaintiff's counsel late on February 23, 2021, and a final deposition notice was transmitted to Plaintiff's counsel. On March 3, 2021, Defendant's counsel emailed Plaintiff directly (copying his counsel) with a copy of his final deposition notice and this Court's Sealed Order to confirm that he had received these materials.

On March 5, 2021, Thomas and his counsel appeared for his deposition.[1] Thomas announced on the record that he would only answer questions about his post-termination self-funded employment offers (Topic 4). *See* Ex. B 9:21–10:21; 20:16–22:3 (Thomas 2d Dep.).[2] Thomas refused to answer questions on any of the other topics, which related to the donation-for-employment arrangement that Plaintiff had, himself, in January 2017 proposed to HSUS as an arrangement in which his donations to the organization would offset his entire salary. *See* Sealed Ex. 19 to Mot. to Compel, ECF No. 46-20.

These questions included:

*Topic 3* (formation/negotiation of donation-for-employment arrangement):

- "In June 2016, you had a telephone call with Wayne Pacelle to discuss potential donations to the Humane Society; correct?" *Id.* at 9:21–11:9.

*Topic 5* (formation/negotiation of donation-for-employment arrangement):

- "In October 2016, you sent a check to the Humane Society; correct?" *Id.* at 12:3–18.

*Topic 6* (formation/negotiation of donation-for-employment arrangement):

- "You donated at least $350,000 to HSUS or its affiliates in 2016; correct?" *Id.* at 12:19–13:16.

- "How much in total did you donate to HSUS in 2016?" *Id.* at 13:17–14:7.

- "Before January 2017, you and Wayne Pacelle had discussed your potential to make large donations to HSUS or its affiliates; correct?" *Id.* at 14:8–22.

- "Before January 2017, you and Paul Shapiro had discussed your potential to make large donations to HSUS or its affiliates; correct?" *Id.* at 15:1–6.

---

[1] The deposition occurred before the Court granted Thomas's counsel's motion to withdraw as counsel. *See* Min. Order (Mar. 8, 2021).

[2] Defendant's counsel attempted to ask Thomas follow-up questions about other post-termination employment to understand if any of those positions were formally or informally subject to an offer of self-funding, but Thomas refused to answer foundational questions on this topic as well. *See* Ex. B at 22:4–11.

- "Before January 2017, Wayne Pacelle had accepted large donations from you; correct?" *Id.* at 15:7–16:2.

- "Before January 2017, Paul Shapiro had accepted large donations from you; is that correct?" *Id.* at 16:3–5.

*Topic 7* (execution of donation-for-employment arrangement):

- "In 2017 prior to your termination, you donated more than $50,000 to HSUS or its affiliate organizations?" *Id.* at 17:18–21.

- "How much did you donate to HSUS and its affiliated organizations in 2017 prior to your termination?" *Id.* at 17:22–18:22.

- "In May 2017, did you make a stock transfer from the [Burke] Thomas brokerage account to HSUS?" *Id.* at 19:1–4.

- "Is the [Burke] Thomas brokerage account your account?" *Id.* at 19:5–7.

*Topic 8* (formation/negotiation of donation-for-employment arrangement):

- "In 2017, you accepted an offer of employment with HSLF with a $35,000 per year salary; correct?" *Id.* at 16:13–17:14.

- "At HSLF, you directed the amount of salary that you would receive; correct?" *Id.* at 17:15–17.

Thomas also refused to answer other closely related questions about the formation, negotiation, and execution of a donation-for-employment arrangement, all of which sought to elicit testimony relevant to his alleged lost-wages damages—specifically whether Thomas had made donations and had received a salary consistent with the arrangement that he had proposed to HSUS, and whether his donations ceased when his employment ended. Thomas refused to answer:

- "You were terminated from HSLF in November 2017; is that correct?" *Id.* at 19:8–10.

- "After your termination from HSLF, did you stop donating money to HSUS and its affiliates?" *Id.* at 19:11–22.

- "When was your last donation to HSUS or any of its affiliate organizations?" *Id.* at 20:1–15.

4

Thomas flatly refused to answer nearly every question at his deposition, with responses such as:

- "I refuse to be harassed and answer all these irrelevant questions, which is in violation of the Court's order." *Id.* at 15:4–6;

- "Should I put this on a tape recorder? . . . I refuse to answer irrelevant questions." *Id.* at 15:9–16.

- "If you want to keep on asking irrelevant questions in violation of the court order, then—you're an attorney, you go ahead and do that, but I'm not going to answer them." *Id.* at 17:4–7.

- "Please don't—don't patronize me. No. I'm not answering that question." *Id.* at 17:13–14.

- "I would request for the third or fourth time that you quit badgering me and harassing me with these irrelevant . . . questions." *Id.* at 20:3–6 & errata sheet.

- "I'm sure you'll try to ask more irrelevant questions, which I won't answer." *Id.* at 22:2–3.

Thomas's counsel was present at the deposition, but she gave Thomas no instruction supporting his refusal to answer any of these questions.

## II. LEGAL STANDARD

"Individual parties cannot be allowed to ignore court orders without suffering consequences if the judicial system is to continue functioning." *Green v. John Chatillon & Sons*, 188 F.R.D. 422, 425 (M.D.N.C.1998), *aff'd*, 165 F.3d 18 (4th Cir. 1998). "A district court may order sanctions . . . for misconduct either pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, which authorizes a court to assess a sanction for violation of a discovery order, or pursuant to the court's inherent power to 'protect [its] integrity and prevent abuses of the judicial process.'" *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)). The sanction of dismissal, "the most severe in the spectrum of sanctions provided by statute or rule[,] must be available to the district court in appropriate

cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Under Rule 37(b), "[s]anctions can include (but are not limited to) directing that matters addressed by the order violated be taken as established, prohibiting the disobedient party from introducing evidence, striking pleadings, staying the action pending obedience, dismissing the action, entering default judgment, or holding the disobedient party in contempt." *Parsi v. Daioleslam*, 778 F.3d 116, 128 (D.C. Cir. 2015) (citing Rule 37(b)(2)(A)). "[D]ismissal under Rule 37 [must] be based on willfulness or at least gross negligence." *Weisberg v. Webster*, 749 F.2d 864, 871 (D.C. Cir. 1984). In addition to the case-related sanctions described above, under Rule 37 "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also Parsi*, 778 F.3d at 129–30 (affirming order that disobedient party pay for part of the expenses related to "redepositions and for the cost of preparing the corresponding sections of [movant's] sanctions motion" under Rule 37).

Courts also have inherent power to determine a fitting sanction for conduct that abuses judicial proceedings, including assessing attorney's fees or dismissing a case, upon a finding of bad-faith litigation misconduct by clear and convincing evidence. *Parsi*, 778 F.3d at 131; *Shepard*, 62 F.3d at 1476–78.

### III. ARGUMENT

Thomas violated the Court's January 26, 2021 Order and acted in bad faith, warranting sanctions under Rule 37 and the Court's inherent authority. Dismissal of this case and an award

6

of reasonable expenses are just and appropriate.

  **A.**  **Thomas Violated the Court's Order.**

On January 26, 2021, this Court ordered Thomas to provide testimony on six topics. *See* Sealed Order at 1 (Jan. 26, 2021); *see also* Sealed Tr. (Jan. 26, 2021). At his deposition, Thomas violated the Order when he refused to answer questions about five of those topics. *See supra* part I. Thomas's violation of the Court's Order is clear on the face of his deposition transcript. Ex. B; *see Shepard*, 62 F.3d at 1472 (requiring a preliminary finding by "clear and convincing evidence . . . that the abusive behavior occurred" before awarding punitive sanctions under inherent authority).

Thomas seems to argue that unless Moreland has proof that the proposal document that he sent to HSUS's CEO outlining his donation-for-employment arrangement was *signed*, he may ignore the Court's Order to provide testimony on this topic. *See id.* at 16:6–12, 20:1–15. But a signature is not the *sine qua non* of an agreement, and Moreland need not take Thomas's word that no agreement existed. To the contrary, the existence of a written proposal outlining a donation-for-employment agreement, followed by documentary evidence that Thomas and Pacelle followed the terms of that agreement—HSLF employing Thomas at his requested salary of $35,000 per year, and Thomas donating more than $50,000 during the course of that employment—demonstrates the agreement's existence. *See, e.g.*, Sealed Ex. 19 to Mot. to Compel, ECF No. 46-20. Thomas's deposition was reopened to develop evidence about this agreement, as it relates to Thomas's alleged damages, and Thomas's refusal to answer questions about it violated the Court's Order.

  **B.**  **Thomas Acted in Bad Faith.**

"A party demonstrates 'bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 243 (D.D.C.

7

2005) (quoting *Alexander v. F.B.I.*, 186 F.R.D. 6, 11 (D.D.C. 1998) and *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).  Thomas's conduct was more than merely negligent or even willful, *see Weisberg*, 749 F.2d at 871 (requiring more than negligent conduct for Rule 37 sanction of dismissal)—Thomas acted in "flagrant bad faith." *Nat'l Hockey League*, 427 U.S. at 643.

Thomas's refusal to provide testimony on the topics that the Court ordered "hamper[ed the] enforcement of" that Order. *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d at 243.  He did so brazenly and without justification. *See Taylor v. Oak Forest Health & Rehab., LLC*, 302 F.R.D. 390, 393–95 (M.D.N.C. 2014) (ordering sanction of dismissal under Rule 37 for discovery abuse, including refusal to answer questions at a deposition), *aff'd*, 590 F. App'x 254 (4th Cir. 2015) (per curiam); *id.* at 394 ("Stonewalling in discovery supports a finding of bad faith.").  His lawyer was present for the deposition, and she did not instruct him not to answer any question; indeed, with one exception counsel did not so much as object to the form of any question Thomas was asked. Accordingly, he had no reason to believe that these refusals were legally justified.  Thomas testified that the only thing he had done to prepare for his reopened deposition was to prepare a written statement to read on the record articulating his refusal to answer questions.  Ex. B 9:4–6; *id* at 10:3–21 (Plaintiff reading prepared statement onto record).  Defendant's counsel had sent him a copy of the January 26, 2021 Order before his deposition, and the text of Thomas's prepared statement references the Order.  There can be no doubt that Thomas received, read, and understood the Order that he subsequently violated. *See Taylor*, 302 F.R.D. at 394 (sanction of dismissal supported where "defense counsel reminded [plaintiff] of the terms of the Order compelling her to answer questions at the deposition many times and even showed her a copy of it . . . so it is clear that she had full knowledge of the terms of the Order").  In fact, he flaunted his awareness of the Court's Order at the same time that he violated it.

8

### C. Dismissal Is Warranted.

Dismissal of this action is an appropriate sanction for Thomas's bad faith conduct. *See Weisberg*, 749 F.2d at 872; *see also Sims v. Kelly*, No. CV 10-5294-AG MLG, 2012 WL 5342365, at *4 (C.D. Cal. Aug. 7, 2012) (recommending dismissal of complaint with prejudice as sanction for Plaintiff's refusal to answer questions at reopened deposition), *report and recommendation adopted*, No. CV 10-5294-AG MLG, 2012 WL 5342310 (C.D. Cal. Oct. 29, 2012); *Taylor*, 302 F.R.D. at 392 (dismissing complaint with prejudice as sanction where plaintiff, *inter alia*, "refused to answer many, many questions and repeatedly argued with counsel" at a reopened deposition); *id.* at 394 ("Presumably, [plaintiff] does not want her alleged damages to be reduced by the defendants' right to a set-off, subrogation or credit for those payments. That, however, is not an excuse for refusing to answer questions in the face of a court order. It also prejudices the defendants, as (1) they cannot determine the amount of supportable damages, (2) they cannot determine the full amount of set-off, subrogation or credit they are entitled to for payments already made, and (3) they cannot determine the claimed equitable harm to [plaintiff]").

Dismissal is warranted because there is no reason to believe that a lesser sanction could "sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Shepherd*, 62 F.3d at 1472. As to deterrence, Thomas openly violated the Court's discovery order while he was also subject to an Order to Show Cause for why he should not be held in civil contempt *for violating another Court Order*—the Protective Order in this case. *See* Min. Order (Jan. 21, 2021). Plaintiff's conduct demonstrates a pattern of disregard for Orders of this Court and disrespect for this Court's authority, and the threat of civil contempt clearly does not motivate Plaintiff to obey the Court's orders. In other words, lesser sanctions will not deter Thomas's continued conduct. Furthermore, even if Thomas were to "faithfully comply with all future discovery orders entered by the District Court in this case," permitting his past conduct to go

9

unsanctioned would permit "other parties to other lawsuits"—including possibly Thomas in a future lawsuit—to "feel freer than . . . Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *Nat'l Hockey League*, 427 U.S. at 643.

Dismissal is also warranted because a lesser sanction will not adequately punish Thomas's wrongful conduct. Thomas has always known that he has no lost wages or other actual damages to recover—he paid his own salary at HSLF and offered to do so at other jobs post-termination. If he had answered the questions truthfully under oath, the evidence would have shown that he has no such damages. If the sanction for his refusal to comply with the Court's Order is that he can no longer plead damages, it is no true loss; he will be in no worse position as to damages, while having gained a benefit by avoiding having to submit to the Court's authority and provide truthful testimony under oath. Dismissal of this lawsuit is appropriate for the same reasons the D.C. Circuit observed in *Weisberg*:

> If the most that can be put at risk by recalcitrant behavior is dismissal of the disputed claim, the recalcitrant party will often have an incentive to test the court. His obstreperousness may result in some compromise on the disputed claim, which works to his benefit. If he is unlucky and suffers a limited dismissal, he only loses what he would have lost anyway—the particular point at issue. Limited dismissal may present him with nothing to lose and something to gain.

749 F.2d at 872. Accordingly, in light of "Plaintiff's failure to cooperate at the rescheduled deposition or comply with the Court's order to do so," it is clear that "[s]anctions other than dismissal would be unavailing, would not rectify the prejudice Defendant[ has] suffered in defending against this action for more than two years, and would not deter misconduct by Plaintiff in the future." *Sims*, 2012 WL 5342365, at *4. In fact, any lesser sanction will *reward* Thomas by giving him precisely what he desires: additional time on this legal platform from which to lob personal attacks—unrelated to the claims or defenses in this case—on Moreland and other

nonparty individuals associated with HSUS.

In the event that the Court concludes that dismissal is not warranted, Moreland respectfully moves the Court to issue an order directing that Thomas may not recover any monetary damages in this case. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii). Thomas should not be permitted to seek damages while refusing to allow discovery into the existence and/or amount of any actual loss. However, for the reasons noted above, such an order would be merely remedial; it would not adequately punish Thomas's violation of the Court's Order or sufficiently deter future conduct. *See Nat'l Hockey League*, 427 U.S. at 643; *Weisberg*, 749 F.2d at 872.

### D. An Award of Reasonable Expenses Is Also Warranted.

In addition to all other sanctions, Thomas should be ordered to "pay the reasonable expenses, including attorney's fees, caused by" his violation of the Court's Order under Rule 37(b)(2)(C), including all expenses related to (1) his reopened deposition and (2) this motion for sanctions. *See Parsi*, 778 F.3d at 130 (affirming district court's award of expenses under Rule 37 for "redepositions" and "the cost of preparing the corresponding sections of [the] sanctions motion").[3]

Thomas's refusal to answer questions on five topics covered by the Court's Order was not substantially justified, and an award of sanctions is just. "A party is 'substantially justified' in opposing discovery or disobeying an order 'if there is a "genuine dispute," or "if reasonable people could differ as to the appropriateness of the contested action."'" *Parsi*, 778 F.3d at 127 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Order clearly identified the questions that Thomas was required to answer; there can be no confusion about which topics the Order covered.

---

[3] Moreland also may be awarded attorney's fees under the Court's inherent power because Thomas acted in bad faith. *See Parsi*, 778 F.3d at 131; *see also supra* part III.B.

Many of the deposition questions at the reopened deposition were copied in whole or in part from the original deposition transcript and were specifically the subject of Moreland's motion to compel and this Court's Order. Thomas came to his deposition with a prepared statement outlining his refusal to answer questions before he had heard any of them; he had already made up his mind to violate the Court's Order before he arrived. And Thomas's counsel, who was present, did not instruct him not to answer any question. Any reasonable person would have answered the questions in the reopened deposition.

Thomas's conduct was not substantially justified, and an award of reasonable expenses, including attorney's fees, to be determined by the Court, is just and appropriate. *See Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 382 (D.D.C. 2013) ("A district court has broad discretion in determining the size of an expenses award under Rule 37.").

## IV. CONCLUSION

For the foregoing reasons, Moreland respectfully moves the Court for sanctions for Thomas's violation of the Court's January 26, 2021 Order. Pursuant to Rule 37 and the Court's inherent power, this case should be dismissed, and Thomas should pay all reasonable expenses caused by this violation.

Date: March 16, 2021

Respectfully submitted,

/s/ Anna Hrom

Gloria Maier (D.C. Bar No. 1012208)
Anna Hrom (D.C. Bar No. 1657785)
Carl Metz (D.C. Bar No. 490633)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
gmaier@wc.com

12

ahrom@wc.com
cmetz@wc.com

*Counsel for Crystal Moreland*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2021, I caused a copy of the foregoing to be sent to Plaintiff via email (jeffburkethomas@gmail.com) and by U.S. Mail to his last known address, 301 Virginia St. Unit 1514, Richmond, VA 23219.

/s/ Anna Hrom
*Counsel for Crystal Moreland*