UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY THOMAS, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 18-cv-0800 (TJK/RMM) |
| CRYSTAL MORELAND, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

This is a defamation action that was removed from the D.C. Superior Court. As a sanction for Plaintiff Jeffrey Thomas Jr.'s ("Mr. Thomas") violation of the Court's Order compelling him to answer deposition questions about the damages he seeks in this case, the Court ordered Mr. Thomas to pay the reasonable expenses that Defendant Crystal Moreland ("Ms. Moreland") incurred as a result of Mr. Thomas's failure to provide discovery. Ms. Moreland's Supplemental Motion for Award of Fees and Expenses against Mr. Thomas is pending before the Court and was referred to the undersigned for a report and recommendation. *See* Mot., ECF No. 93; June 6, 2021 Referral Dkt. Entry. Ms. Moreland seeks $18,135.00 in attorney's fees and $1,530.20 in expenses. Having considered the relevant legal authorities and the parties' briefs,[1] the undersigned recommends that the Court GRANT-IN-PART Ms.

---

[1] Mot. for Sanctions, ECF No. 80; Mot.; Pl.'s Response to Def.'s Suppl. Mot. for Award of Fees and Expenses ("Response"), ECF No. 94; Def.'s Notice of Suppl. Authority ("Notice of Suppl. Authority"), ECF No. 96. Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is asterisked (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

Moreland's Motion and award Ms. Moreland $13,299.00 in attorney's fees and $1,530.20 in expenses, for a total award of $14,829.20.

## BACKGROUND

### I. Factual Background

Mr. Thomas brought this defamation suit against Ms. Moreland after Ms. Moreland filed a workplace complaint against him and Mr. Thomas was subsequently terminated. *See generally* Compl. ECF No. 1-1; Am. Compl., ECF No. 22. Mr. Thomas worked for the Humane Society Legislative Fund ("HSLF") and Ms. Moreland worked for the Humane Society of the United States ("HSUS"). *See* Am. Compl. ¶¶ 5–6. Although they are distinct employers, HSLF is the lobbying affiliate of HSUS, and the two entities share an office space and HR department. *See id.* ¶¶ 8–9. Before his termination, Mr. Thomas and Ms. Moreland became friends through their professional work relationship. *See id.* ¶ 9. Mr. Thomas alleges, however, that Ms. Moreland's demeanor toward him took a sudden turn after he declined a mutual co-worker's romantic advances. *See id.* ¶¶ 48–50. This change in behavior escalated when Ms. Moreland eventually filed complaints against Mr. Thomas with the HR department in late September and October 2017, accusing him of engaging in inappropriate workplace behavior and making her feel uncomfortable. *See id.* ¶¶ 51–52, 58–59. When the HR department notified Mr. Thomas of Ms. Moreland's complaints, he denied her allegations and provided emails, text messages, and his work laptop to refute her claims. *See id.* ¶¶ 52–54, 76–77, 81–82. Nevertheless, following an investigation by HSUS's Office of General Counsel, HSUS terminated Mr. Thomas on November 8, 2017. *See id.* ¶¶ 80, 90. Mr. Thomas maintains he was terminated because of false complains that Ms. Moreland filed with the HR department and therefore claims she defamed him. *See id.* ¶¶ 91, 94.

## II. Procedural Background

On March 9, 2018, Mr. Thomas filed a complaint against Ms. Moreland in the Superior Court for the District of Columbia. *See* Compl. Ms. Moreland removed the case to this Court on April 9, 2018 based on diversity jurisdiction. *See* Notice of Removal at 1, ECF No. 1. Mr. Thomas subsequently filed an amended complaint. *See* Am. Compl.

On January 26, 2021, the Court granted Ms. Moreland's motion to compel testimony and ordered Mr. Thomas to sit for a second deposition to answer questions that he had previously refused to answer. *See* Sealed Order, ECF No. 68; *see also* Thomas Mot. to Compel, ECF No. 45; Moreland Mot. to Compel, ECF No. 46. The unanswered questions included inquiries about the damages he seeks, his history of donations to HSUS, his salary at HSUS, and his history of donations to and salary at other past or present employers. *See* Sealed Order. At the second deposition, Mr. Thomas again refused to answer these questions. *See* Mot. for Sanctions at 1, 7. As a result, Ms. Moreland filed a motion for Rule 37 sanctions and asked the Court for attorney's fees and to dismiss this case as a sanction for Mr. Thomas's violation of the Court's order. *See id.*

The Court conducted a hearing and orally granted Ms. Moreland's motion for sanctions on April 16, 2021. *See* Apr. 16, 2021 Min. Entry; Apr. 16, 2021 Transcript ("Tr.") at 5:19, ECF No. 92. The Court declined to dismiss the case and instead prohibited Mr. Thomas from "seek[ing] monetary damages in this case for loss of wages related to his employment at HSUS or wages that may have been earned after his termination." Tr. at 6:22–7:1. The Court also ordered Mr. Thomas to "pay the reasonable expenses caused by his failure to provide discovery, including [Ms. Moreland]'s attorneys' fees for the reopened deposition, the motion for sanctions, and the [April 16, 2021 motion] hearing." *Id.* at 7:2–5.

3

Ms. Moreland subsequently filed the instant motion, in which she seeks to recover $18,135.00 in attorney's fees and $1,530.20 in expenses. *See* Mot. at 1. In response, Mr. Thomas argues that he followed the Court's Order to the best of his abilities and should not have been sanctioned for his inadvertent violation and challenges the reasonableness of the fee request. *See* Response at 2–3. Ms. Moreland also filed a Notice of Supplemental Authority to support her argument that the requested fees are reasonable. *See* Notice of Suppl. Authority. This matter is ripe for review.

## LEGAL STANDARD

If a court determines that a party "is entitled to an award of fees, [it] must, in an exercise of its 'traditional equitable discretion,' determine the appropriate amount." *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 69 (D.D.C. 2019) (quoting *Fenster v. Brown*, 617 F.2d 740, 742 (D.C. Cir. 1979)); *see also Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 475 (D.D.C. 1984) ("The reasonableness of the fees requested by the [plaintiff] is a 'judgment call' which only the [c]ourt can make."). "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Flynn v. Dick Corp.*, 624 F. Supp. 2d 125, 130 (D.D.C. 2009) (quoting *Bd. of Trs. of Hotel and Rest. Employees Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

Although courts regard the lodestar as the presumptively reasonable fee amount, a court may increase or decrease the lodestar in certain rare and exceptional cases. *See Flynn*, 624 F. Supp. 2d at 130 (citing *Bd. of Trs. of Hotel and Rest. Employees Loc.*, 136 F. 3d at 801). In these exceptional cases, the party proposing the adjustment bears the burden of demonstrating that an adjustment is warranted. *See Jones v. Local 4B, Graphic Arts Int'l Union, AFL-CIO*, 595 F.

4

Supp. 792, 794 (D.D.C. 1984). However, the Supreme Court has emphasized that "the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

## DISCUSSION

Mr. Thomas does not dispute that Ms. Moreland is entitled to attorney's fees, costs, and expenses. *See* Response at 3. The parties' dispute instead concerns the reasonableness of (1) the attorney's fees claimed by Ms. Moreland, both because of her counsel's (A) claimed hourly rate and (B) total hours billed; and (2) the expenses she claims. Each issue is addressed in turn. *See id.* at 4–14.

### I. Whether the Fees Sought By Defendant Are "Reasonable Attorney's Fees"

Ms. Moreland seeks attorney's fees of $18,135.00, based on 39 total hours billed at a rate of $465.00 per hour. *See* Ex. A, ECF No. 93-2. "The fee applicant bears the burden of demonstrating that the claimed rate and number of hours are reasonable." *Dorsey v. Jacobson Holman, PLLC*, 851 F. Supp. 2d 13, 18 (D.D.C. 2012), *aff'd*, No. 12-7031, 2012 WL 3244092 (D.C. Cir. Aug. 7, 2012) (internal citation omitted).

#### A. *Reasonable Hourly Rate*

When determining the reasonableness of the hourly rates requested, courts look to "(1) 'the attorneys' billing practices'; (2) 'the attorneys' skills, experience, and reputation'; and (3) 'the prevailing market rates in the relevant community.'" *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015) (quoting *Covington v. Dist. of Columbia*, 57 F.3d

5

1101, 1107 (D.C. Cir. 1995)).  The parties' dispute regarding reasonable attorney's fees centers on whether the LSI Laffey Matrix is the best representation of the prevailing market rates for this case and whether Ms. Moreland's counsel's experience justifies her requested hourly rate of $465.

                1.  Prevailing Market Rates in the Relevant Community

"Determining the prevailing market rate is 'inherently difficult.'" *Eley v. Dist. of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Blum v. Stetson*, 465 U.S. 886, 895 n.11 (1984)); *Reed v. Dist. of Columbia*, 843 F.3d 517, 521 (D.C. Cir. 2016).  Nevertheless, courts must "'fix[] the prevailing hourly rate in each particular case with a fair degree of accuracy.'" *Eley*, 793 F.3d at 100 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982)).  To that end, the "fee applicant must 'produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n.11) (emphasis in original).  Fee applicants may submit fee matrices as evidence of the prevailing market rates. *See Salazar ex rel. Salazar*, 809 F.3d at 62; *Reed*, 843 F.3d at 521; *see also Wimbish v. Dist. of Columbia*, 251 F. Supp. 3d 187, 191–92 (D.D.C. 2017).  "The most commonly used fee matrix is the '*Laffey* Matrix.'" *Eley*, 793 F.3d at 100; *see also Salazar ex rel. Salazar*, 809 F.3d at 62. There are two variants of the Laffey Matrix:

> (1) the USAO Laffey Matrix, which is maintained by the United States Attorney's Office for the District of Columbia and adjusts the rates set forth in the original *Laffey* matrix to 'account for inflation by using the Consumer Price Index of the Bureau of Labor Statistics'; and (2) the Legal Services Index (LSI) *Laffey* Matrix, which 'uses the Legal Services Index of the Bureau of Labor Statistics to adjust for inflation.'

*Reed*, 843 F.3d at 521 (quoting *Eley*, 793 F.3d at 101).

Ms. Moreland requests that her attorney, Anna Hrom, be compensated at an hourly rate of $465, derived from the LSI Laffey Matrix, which courts have used to calculate attorney's fees in complex federal litigation in the District of Columbia. *See* Mot. at 4–5; *see also Salazar ex rel. Salazar*, 809 F.3d at 64–65 (affirming district court's conclusion that LSI Laffey Matrix rates more accurately reflected the D.C. legal market than USAO Laffey Matrix rates); LSI Laffey Matrix, http://www.laffeymatrix.com/see.html (last visited Mar. 4, 2022). Ms. Moreland argues that the LSI Laffey Matrix is the appropriate metric for determining the prevailing community rate because this litigation is complex, as it "is an adversarial litigation in federal court that has resulted in multiple rounds of motions practice." Mot. at 5 (citing *U.F. v. Dist. of Columbia*, No. 19-cv-2164, 2020 WL 4673418, at *4 (D.D.C. Aug. 12, 2020)). In addition, Ms. Hrom states that as an attorney at Williams & Connolly LLP's Washington, D.C. office she "practices complex civil litigation—precisely the 'market' represented by the Laffey Matrix." Mot. at 5; Decl. of Anna J. Hrom ¶ 4 ("Hrom Decl."), ECF No. 93-1.

Mr. Thomas contends that the LSI Laffey Matrix is not appropriate because this case is not complex. *See* Response at 4–6. He describes this case as "a one[-]count defamation claim originally brought in D.C. Superior Court and removed to this Court by Defendant only because of the requested monetary damages." *Id* at 6. Mr. Thomas also compares this case's complexity with cases involving fee awards for administrative proceedings involving the Individuals with Disabilities Act ("IDEA") and asks the Court to follow precedent in which courts have concluded that IDEA cases are not complex. *See id.* at 5–6 (citing *Eley*, 793 F.3d at 100; *Reed*, 843 F.3d at 528–29 (Tatel, J., concurring)).

The history of this case demonstrates its complexity. This litigation has been highly adversarial, involving extensive motion practice, including motions to dismiss, to compel, and

7

for a protective order. The parties have conducted discovery and the case has been pending for more than two years. This breadth of motion practice and discovery comports with other cases that courts have deemed complex. *See, e.g.*, *Spanski Enters. v. Telewizja Polska S.A.*, 278 F. Supp. 3d 210, 219 (D.D.C. 2017) (finding the litigation complex because it involved complicated and extensive discovery and multiple filings "over a period of years"); *cf. also Reed*, 843 F.3d at 525 (noting that litigation without extensive discovery is not complex); *Snead v. Dist. of Columbia*, 139 F. Supp. 3d 375, 380 (D.D.C. 2015) (noting that cases without formal discovery, lengthy argument, extended motion practice, and multiple hearings are not complex).

The IDEA cases on which Mr. Thomas relies are inapposite. The D.C. Circuit has not decided whether IDEA cases generally are sufficiently complex to warrant hourly rates under either variant of the Laffey Matrix, and district judges have reached conflicting conclusions. *Compare Gaston v. Dist. of Columbia*, No. 14-cv-1249-TSC-DAR, 2015 WL 5029328, at *6 (D.D.C. Aug. 26, 2015) (finding, without specifying which variant applied, the underlying administrative proceedings sufficiently complex to warrant *Laffey* rates), *report and recommendation adopted*, No. 14-cv-1249-TSC-DAR, 2015 WL 5332111 (D.D.C. Sept. 10, 2015), *and DL v. Dist. of Columbia*, 267 F. Supp. 3d 55, 71 (D.D.C. 2017) (finding the litigation sufficiently complex to warrant use of the USAO *Laffey* Matrix), *with Cox v. Dist. of Columbia*, 264 F. Supp. 3d 131, 147 (D.D.C. 2017) (finding the plaintiffs' IDEA case insufficiently complex to warrant full USAO *Laffey* Matrix rates); *see also Reed*, 843 F.3d at 525 (acknowledging "the possibility that future fee applicants may be able to demonstrate that IDEA cases are 'complex federal litigation' to which the Laffey Matrix presumptively applies"). However, the complexity of IDEA cases is beside the point because Mr. Thomas has not demonstrated that IDEA cases are substantially similar to the instant litigation. For example,

8

IDEA cases generally lack extensive discovery and pre-trial exchanges, and IDEA fee awards often compensate attorneys for proceedings conducted before an administrative tribunal. *See Reed*, 843 F.3d at 525–27; *DL v. District of Columbia*, 924 F.3d 585, 594 (D.C. Cir. 2019). This case's procedural history is more analogous to employment discrimination cases, which have been treated as complex litigation warranting Laffey rates. *See Robinson v. District of Columbia*, 341 F. Supp. 3d 97, 116 (D.D.C. 2018) ("In this Circuit, Title VII cases are sufficiently complex to merit USAO Matrix rates.") (citations omitted).

Mr. Thomas also argues that LSI Laffey Matrix rates should not apply because the USAO Laffey Matrix is the Circuit's preferred and more recently updated Laffey Matrix. *See* Response at 4–5. Both variants of the LSI Laffey Matrix have been applied to complex cases. *See, e.g.*, *Robinson*, 341 F. Supp. 3d at 115 ("Courts in this district customarily apply the USAO Matrix in determining the reasonable amount for attorneys' fees in complex federal litigation"); *Salazar ex rel. Salazar*, 809 F.3d at 65 (affirming the district court's choice to apply the LSI Laffey Matrix over the USAO's). However, the U.S. Attorney's Office is presently updating the USAO Laffey matrix to better reflect current market rates in the wake of *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019), where the court criticized the USAO Laffey Matrix for failing to "survey[] the relevant population" and "canvass[] the relevant type of lawyer." *DL*, 924 F.3d at 592; *see also* USAO Laffey Matrix at n.7, https://www.justice.gov/file/1461316/download (last visited Mar. 4, 2022). Thus, the undersigned looks to the LSI Laffey Matrix to determine the prevailing market rate in this case.

The undersigned declines to deviate from the LSI Laffey Matrix in favor of rates advertised by the Minc Law Firm, which Mr. Thomas invokes as an apparent defamation litigation specialist firm. "Once 'a fee applicant' has met the preliminary burden of 'justifying

9

the reasonableness of the rates,' those rates are 'presumed to be . . . reasonable' unless and until the [opposing party] offers 'equally specific countervailing evidence' supporting another rate." *DL*, 924 F.3d at 591 (citing *Covington*, 57 F.3d at 1107, 1109). As the fee applicant's specific evidence must be from the relevant community, the countervailing evidence must also be from the relevant community. *Donnell*, 682 F.2d at 251. However, because Minc Law's office is in Ohio,[2] its estimated rates are inapposite here. *See Donnell*, 682 F.2d at 251. In sum, the undersigned concludes that Ms. Hrom should be compensated at rates set using the LSI Laffey Matrix.

2. Attorney Experience

Having established that this litigation is sufficiently complex to warrant LSI Laffey Matrix rates, the undersigned must assess Ms. Hrom's skills and experience to determine which category of the LSI Laffey Matrix should govern Ms. Hrom's compensation. *See generally* Hrom Decl. In her declaration, Ms. Hrom avers that she graduated from law school in 2015 and has "been out of law school for more than 4 but fewer than 7 years." *Id.* ¶ 11. Thus, she seeks compensation at $465 per hour, the relevant years' rate for attorneys who have been out of law school between four and seven years. *See* LSI Laffey Matrix.

Mr. Thomas argues that Ms. Hrom does not qualify for the 4–7 Years category because she clerked for two years following her law school graduation. *See* Response at 7. Outside the context of the Laffey Matrix, the Supreme Court has excluded time spent as a judicial law clerk when calculating an individual's years as a practicing attorney. *See Blum*, 465 U.S. at 890 n.4 (finding that in litigation that began in December 1978, three attorneys all had 1.5 years of experience for purposes of the reasonable attorneys' fees, despite having graduated in different

---

[2] *See* Minc Law, https://www.minclaw.com (last visited Mar. 4, 2022).

10

years: 1975 (clerked for two years), 1976 (clerked for one year), and 1977 (did not clerk)). Therefore, the undersigned agrees that the two years of clerking (2017–2019) reflected on Ms. Hrom's firm biography[3] should be excluded from the years-out-of-law-school calculation.

Mr. Thomas also asserts that only the years Ms. Hrom actively practiced law should be included when determining the appropriate matrix category, and that her receipt of a Ph.D. in 2018 further reduces the length of her experience. The record does not clearly indicate whether Ms. Hrom practiced law between 2015 and 2017, and Mr. Thomas's apparent assumption that she was a full-time Ph.D. student with no legal practice is speculative. However, that gap in the record does not preclude awarding fees at the requested rate. Although one could interpret the notes to the matrix as suggesting that the years-out-of-law-school category is meant to capture years spent 'in practice,'[4] the undersigned has found no precedent interpreting the notes to require that courts exclude years in which a law school graduate is not actively practicing law. *See* Laffey Matrix at n.\* (noting that "'4-7' applies to attorneys in their 4th, 5th, 6th, and 7th years of practice."). Thus, even assuming that Ms. Hrom was a full time Ph.D. student between 2015 and 2017, the undersigned finds no basis to exclude those two years when assessing the applicable matrix category.

In sum, even excluding two years for clerkships, Ms. Hrom had been out of law school for at least four years when the instant motion was filed. Thus, the undersigned recommends that this Court find Ms. Hrom's reasonable hourly rate is $465.[5]

---

[3] *See* Williams & Connolly, Anna Hrom, https://www.wc.com/Attorneys/Anna-J-Hrom.

[4] Alternatively, the note may simply be intended to clarify that a year may be counted as soon as it begins.

[5] In her declaration, Ms. Hrom also notes that her hourly rate at Williams & Connolly LLP is customarily much higher than those reflected in the LSI Laffey Matrix. *See id.* ¶ 12. "[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that th[e] rate is

11

### B. *Reasonable Hours*

Having arrived at a reasonable rate for Ms. Hrom's work, the Court must next determine the hours reasonably expended. A fee applicant "has the burden of establishing the reasonableness of its fee request [with] '[s]upporting documentation [that] must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (internal citations omitted) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989)). To satisfy this burden, the fee applicant should provide supporting documents, "includ[ing] contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work." *Dorsey*, 851 F. Supp. 2d at 18 (quoting *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989)). These records must provide enough detail "that permits the district court to make an independent determination whether or not the hours claimed are justified." *Id.* (citing *Cobell v. Norton*, 231 F. Supp. 2d 295, 306 (D.D.C. 2002) (internal quotations omitted)).

This Court already determined that Ms. Moreland was entitled to fees as a sanction under Federal Rule of Civil Procedure 37, due to Mr. Thomas's failure to comply with an earlier Order compelling his testimony at a second deposition. Rule 37(b)(2)(C) states that "the court must order the disobedient party. . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey an order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Ms. Moreland

---

'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 895–96). However, Ms. Moreland does not seek a fee award that exceeds the LSI Laffey Matrix rates.

accordingly seeks fees for "the reasonable expenses caused by [Mr. Thomas's] failure to provide discovery, including [Ms. Moreland's] attorney's fees for the reopened deposition, the motion for sanctions, and the hearing" on the motion held on April 16, 2021, as ordered by the Court. Tr. at 7:2–5. Ms. Hrom's declaration includes time logs reflecting the number of hours expended on all these tasks. *See* Hrom Decl., Ex. A. Mr. Thomas disputes certain time entries that he considers unreasonable or for which he claims Ms. Moreland is not entitled to recover fees. *See* Response at 9–13.

1. <u>Defendant's Billed Hours for the Second Deposition, the Motion for Sanctions, and the April 16 Hearing are Reasonable and Eligible for Recovery, in Part.</u>

Mr. Thomas argues that Ms. Hrom is not entitled to all hours billed to prepare for the second deposition, to write the motion for sanctions, and to appear at the April 16 Hearing. Upon review of Ms. Hrom's declaration, the undersigned believes most—but not all—of Ms. Hrom's billed hours for the second deposition, motion for sanctions, and April 16 Hearing were reasonable and eligible for recovery.

First, Mr. Thomas asserts that Federal Rule of Civil Procedure 37(b)(2)(C) precludes Ms. Hrom from claiming "any time spent before the contemptuous action . . . as it predated Plaintiff's violation and could not have been caused by his later (inadvertent) disobedience." Response at 10.[6] The undersigned is inclined to agree. The Court's Order imposing sanctions, and so entitling Ms. Moreland to attorney's fees, was premised on Mr. Thomas's failure to comply with

---

[6] In further support, Mr. Thomas cites *Unbelievable, Inc. v. N.L.R.B.*, 118 F.3d 795 (D.C. Cir. 1997), and *Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016) to argue that the American Rule, which requires each side to bear its own legal expenses, bars Ms. Hrom from recovering the 10.4 hours spent preparing for the second deposition. But in both *Unbelievable* and *Prunty*, the parties sought fees on statutory grounds, whereas Ms. Moreland pursued fees pursuant to Rule 37. Thus, the American Rule does not apply in this context.

13

the Court's earlier Order compelling him to answer Ms. Moreland's questions during depositions. Thus while Mr. Thomas must "pay the reasonable expenses caused by his failure to provide discovery, including defendant's attorneys' fees for the reopened deposition," Tr. 7:2–4, he had not disobeyed the Court's order compelling discovery until the March 5, 2021 deposition, and the Court could not have compelled sanctions consistent with Rule 37 before then. In Rule 37 cases, "[a] near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded." *Cobell v. Babbitt*, 188 F.R.D. 122, 127 (D.D.C. 1999). This requirement suggests that time expended before the contemptuous act is not reimbursable. Ms. Hrom's declaration logs 10.4 hours billed in preparation for the second deposition and 3.4 hours on the deposition day. *See* Hrom Decl., Ex. A. Because Mr. Thomas's March 5, 2021 violation was not the but-for cause of the 10.4 hours Ms. Hrom spent preparing for the second deposition, the undersigned suggests a reduction to Ms. Hrom's proposed award. *See Fonville v. Dist. of Columbia*, 38 F. Supp. 3d 1, 17–19 (D.D.C. 2014) (reducing requested fee awards because the fees and expenses sought did not arise out of the Rule 37 violation that the Court sanctioned). For attorney's fees associated with the reopened deposition, the undersigned recommends that the Court allow Ms. Hrom to recover for the 3.4 hours billed on March 5, 2021.

Next, Mr. Thomas argues that Ms. Hrom should not be able to recover for the 4.5 hours billed in preparation for the April 16 Hearing. Ms. Hrom declares that she spent nine hours preparing to argue an Order to Show Cause and the Motion for Sanctions at the April 16 Hearing, but cut the preparation time in half to account for the amount reasonably spent on the Motion for Sanctions. *See* Hrom Decl. ¶ 8; Mot. at 4. Mr. Thomas challenges this number because "billing for half-time is not reasonable and is disproved by the available evidence."

14

Response at 10. Per Mr. Thomas's calculations based on the hearing transcript, 11.8% of the April 16 Hearing related to the Motion for Sanctions, so Ms. Hrom is only entitled to 9.0 hours x 11.8%, or 1.06 hours. *See id.* at 11.

Although Ms. Hrom's 4.5 hours were not *exact*, 4.5 hours is a reasonable amount of time to claim here. The time expended preparing to argue the sanctions motion at the hearing arose out of Mr. Thomas's Rule 37 violation, making this time recoverable. Further, "[a]n issue that required little preparation might consume a significant portion of the [hearing], while many hours could be spent preparing for a line of questioning that is quickly resolved." *Borum v. Brentwood Vill., LLC*, No. 16-cv-1723, 2020 WL 5291982, at *6 (D.D.C. Sept. 4, 2020). Ms. Hrom could not have anticipated how long it would take to dispose of the motion for sanctions at the hearing. And similar amounts of time preparing for and attending hearings have been approved by courts in this district. *See, e.g.*, *Mafa v. Clean House, Inc.*, No. 12-cv-0040, 2012 WL 1450181, at *2 (D.D.C. Apr. 26, 2012) (finding that 3.5 hours spent preparing for and attending an evidentiary hearing was reasonable). Although a billing record that segregated the time spent on the Order to Show Cause and the Motion for Sanctions would have been helpful, the undersigned recommends that the Court find the requested 4.5 hours reasonable.

Finally, Mr. Thomas asserts that Ms. Hrom cannot recover for the 20.7 hours billed to draft the motion for sanctions and reply brief. Mr. Thomas intimates that two and a half full workdays was an unreasonable amount of time to spend on the motion for sanctions. *See* Response at 11. Citing *Sierra Club v. E.P.A.*, 769 F.2d 796 (D.C. Cir. 1985), Mr. Thomas also argues that because Ms. Moreland was not successful on the portion of her motion for sanctions related to dismissal, the related hours should be excluded from the 20.7 hours billed. *See* Response at 11–12. He further quotes *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 168 (2nd

15

Cir. 2011), to assert that time spent on claims "not subject to fee-shifting must be excluded to reflect the default rule that 'each party must pay its own attorney's fees and expenses.'" *Id.* at 11–12. Thus, Mr. Thomas believes, "for the 20.7 hours billed of all unsuccessful and successful aspects of the Motion for Sanctions, 5.91 hours were spent on the successful part of that Motion that is reimbursable under the 'issue-by-issue analysis' required by *Sierra Club v. E.P.A.*, 769 F.2d 796, 801 (D.C. Cir. 1985)." *Id.* at 12.

Neither argument is persuasive. Ms. Hrom's claimed 20.7 hours spent drafting the motion for sanctions and reply thereto are reasonable. Ms. Hrom's declaration provides detailed descriptions of her work on the motion for sanctions, *see* Hrom Decl., Ex. A, which satisfy this circuit's logging requirements. *See Dorsey*, 851 F. Supp. 2d at 18. The 20.7 hours are comparable to the time courts have deemed reasonable when awarding fees for drafting motions. *See Guantanamera Cigar Co. v. Corpracion Habanos, S.A.*, 263 F.R.D. 1, 11 (D.D.C. 2009); *Malede v. D.C. Jail Facility*, 252 F.R.D. 63, 65–66) (D.D.C. 2008).

The Court's decision not to impose a sanction of dismissal also does not require any reduction in the number of compensable hours. As Ms. Moreland notes, she prevailed on her Rule 37 motion. *See* Mot. at 3; *see also* April 16, 2021 Min. Order (granting the motion for sanctions). Thus, this case is distinguishable from *Sierra Club* and *Millea*, which involved fee awards for prevailing parties and addressed discounts for fees attributable to work on *claims* on which a party did not succeed. *Sierra Club*, 769 F.2d at 801 (expressing concern about parties obtaining attorney's fees for unsuccessful claims at the end of litigation); *Millea*, 658 F.3d at 168 ("Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar."). Ms. Moreland seeks attorney's fees due to Mr. Thomas's refusal to answer

16

questions he was ordered to respond to during his second deposition, which constituted a Rule 37 violation. Rule 37 requires only that the fees and expenses sought arise out of the violation—it does not state one must obtain all relief requested in the Rule 37 motion. Therefore, the undersigned recommends that the Court find Ms. Hrom's 20.7 hours spent preparing the motion for sanctions, on which she prevailed, was reasonable.

### 2. Ms. Hrom Was Not Obliged To Delegate Tasks To Paralegals.

Mr. Thomas next argues that the "*pro bono* research, drafting, and/or clerical work could 'easily have been conducted in whole or in part by paralegals instead of Attorney Hrom." Response at 13. He notes that Ms. Hrom "did [not] address or provide any justification for why she worked on this matter for so many hours and why she did not bill even 0.1 hours to any paralegals despite their ready availability to her at her firm." *Id*. However, attorneys are not required to delegate research to paralegals. To the extent that Mr. Thomas believes *Salazar v. Dist. of Columbia*, 991 F. Supp. 2d 39 (D.D.C. 2014), requires otherwise, he is mistaken. In *Salazar*, the Court found that there was "over-lawyering in th[e] case," as evidenced by attempts to bill time for two outside counsel who conducted research that could have been done by local firm attorneys or paralegals. *Id.* at 57. Billing Ms. Hrom's research time does not present similar problems, as she is the principal attorney litigating these issues and legal research is a typical attorney task during litigation. The undersigned recommends that the Court reject Mr. Thomas's challenge to the reasonableness of the hours Ms. Hrom spent on research.

### 3. Lodestar Calculation

Having confirmed the reasonable rate of $465 per hour and 28.6 total hours, the undersigned recommends that the Court award Ms. Moreland $13,299.00 in attorney's fees. Mr. Thomas requests a fee reduction because he claims to have unintentionally disobeyed the Court's

Order.  However, the Court has already determined that Mr. Thomas's conduct warrants sanctions, and his professed lack of bad intentions does not present rare or exceptional circumstances meriting a reduction of the lodestar calculation.  Accordingly, the undersigned recommends that the Court reject Mr. Thomas's request to reduce the fee award.

## II. Reasonable Costs and Expenses

In addition to attorney's fees, a Rule 37 sanctions order must provide for the movant's "reasonable expenses."  Fed. R. Civ. P. 37(b)(2)(C).  The parties disagree whether Ms. Hrom's claimed costs and expenses were reasonable or necessary.  Citing Ms. Hrom's declaration, Ms. Moreland simply states that "[t]he claimed expenses were directly incurred in relation to Plaintiff's second deposition and are supported with detailed invoices from the vendor."  Mot. at 6.  Mr. Thomas challenges the proposed costs and asserts that the expenses should be reduced because the deposition bill includes (1) costs for items that were not related to or used in the deposition, and (2) costs for videotaping and expedited transcripts that were not "reasonably necessary."  *See* Response at 13–14.  In particular, Mr. Thomas argues that the deposition bill from Veritext "includes two line items that Defendant charged for but which were not used in the hearing."  *Id.* at 13.  Specifically, Mr. Thomas asserts that Ms. Hrom did not use exhibit services and that she "was well aware that there were no Exhibits that she would use in this second deposition yet signed up and paid for these services."  *Id.*

The undersigned is not convinced.  First, Mr. Thomas cites caselaw interpreting 28 U.S.C. § 1920(2), which governs costs that may be taxed by judges or clerks of court.  *See* Response at 14.  The Federal Civil Rule that discusses expense awards in terms of "tax[ed] costs" is Rule 54, concerning Judgments, not Rule 37, which covers sanctions.  Section 1920, and so Rule 54, appears to limit fees recoverable for deposition transcripts to those "necessarily

18

obtained for use in the case." 28 U.S.C. § 1920(2). Rule 37, by contrast, permits recovery for "reasonable" expenses. Fed. R. Civ. P. 37(a)(5)(A). Ms. Moreland need not show that her expenses were "necessary," therefore, only that they were "reasonable." And even if Ms. Hrom did not use exhibit services during the second deposition, she could have reasonably believed they would have been used when the expense was incurred. Thus, although Ms. Moreland's motion and Ms. Hrom's declaration do not include reasons for the exhibit services, the undersigned recommends that the $345.00 billed for the exhibit services be included in the costs associated with the second deposition.

Mr. Thomas also argues that the stenographic transcription and video services ordered by Ms. Moreland were duplicative and not necessarily obtained. *See* Response at 14. But as explained, necessity is not the order of the day. Thus although Ms. Moreland does not address why both stenographic transcription and video services were *required*, attorneys commonly obtain video recordings of depositions to observe a witness's demeanor, and transcripts are a reasonable expense related to motion practice.

Mr. Thomas further argues that Ms. Moreland "double-dipped" by ordering the original transcript and an expedited version, questioning the "need for expedited transcription service." *Id.* Ms. Moreland does not explain why she expedited the transcript, but the fact that she filed the Motion for Sanctions less than two weeks after the deposition occurred demonstrates the time-sensitive nature of her request. The undersigned thus recommends that the Court find that Ms. Moreland is entitled to the costs associated with the stenographic transcription and video services.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT-IN-PART Ms. Moreland's Supplemental Motion for Attorney's Fees. The undersigned recommends awarding $13,299.00 for attorney's fees and $1,530.20 in expenses, for a total of $14,829.20.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: March 4, 2022

                                                          ROBIN M. MERIWEATHER
                                                          UNITED STATES MAGISTRATE JUDGE