UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY THOMAS,

    *Plaintiff*,

v.

CRYSTAL MORELAND,

    *Defendant*.

Civil Action No. 18-800 (TJK)

## MEMORANDUM OPINION AND ORDER

In this defamation case, Plaintiff Jeffrey Thomas has filed a Motion for "Terminating Sanctions," asking the Court to sanction Defendant Crystal Moreland and Non-Party Respondents Humane Society of the United States and Humane Society Legislative Fund for their purported misconduct. Moreland and Non-Party Respondents each oppose the Motion and request instead that the Court sanction Thomas for filing it. For the following reasons, the Court will deny Thomas's Motion and deny Moreland's and Non-Party Respondents' requests for sanctions.

**I.   Relevant Background**

The Court assumes familiarity with the general background of this case. *See* ECF No. 156 at 2–4. For the most part, discovery closed in early November 2020, though the Court permitted additional limited discovery until March 11, 2021. *See* ECF No. 25 ¶ 6; Minute Order of February 2, 2021. Shortly before that second deadline, Thomas, who had been represented by retained counsel until then, decided to proceed pro se. *See* ECF No. 75; ECF No. 76; Minute Order of March 8, 2021. Thomas has since moved for sanctions and docketed a multitude of other filings. *See generally* ECF No. 110; ECF No. 116; ECF No. 117; ECF No. 119; ECF No. 128; ECF No.

129; ECF No. 130; ECF No. 131; ECF No. 132; ECF No. 133; ECF No. 134; ECF No. 138; ECF No. 139; ECF No. 140; ECF No. 145; ECF No. 149; ECF No. 150; ECF No. 153; ECF No. 155.

Before the Court now is Thomas's Motion for "Terminating Sanctions," in which he alleges that Moreland and Non-Party Respondents have engaged in various types of litigation misconduct and asks the Court to sanction them by—among other things—entering default judgment in his favor, referring Moreland for criminal prosecution (unless she pays "damages" and attorneys' fees), and holding them all in contempt. *See* ECF No. 117; ECF No. 117-1. Moreland and Non-Party Respondents each oppose the Motion and request that, instead, the Court sanction Thomas for filing it. *See* ECF No. 120; ECF No. 121.

## II. Legal Standard

Generally, the party seeking sanctions has the burden to show that they are warranted. *See United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-798 (PLF/GMH), 2019 WL 6970727, at *8 (D.D.C. Sept. 5, 2019); *Clarke v. WMATA*, 904 F. Supp. 2d 11, 20–21 (D.D.C. 2012). When deciding whether to impose sanctions, the Court must consider whether the behavior in question "is sanctionable under a rule or statute." *See United States v. Honeywell Int'l Inc.*, 281 F.R.D. 27, 30–31 (D.D.C. 2012). If a statute or rule is "up to the task," then the Court "ordinarily should rely" on those sources of authority to impose sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). If one is not, however, then the Court may "rely on its inherent power" to impose sanctions. *See id.*

## III. Analysis

The Court first addresses the allegations in Thomas's Motion. Then it considers Moreland's and Non-Party Respondents' requests for sanctions.

### A.      Thomas's Motion for "Terminating Sanctions"

Thomas raises several instances of alleged misconduct by both Moreland and Non-Party Respondents that he argues warrant sanctions. These allegations fall into four categories: (1) misrepresentations to the Court; (2) perjury during discovery; (3) other discovery-related misconduct; and (4) violations of the protective order in this case. None warrant sanctions.

### 1.      Alleged Misrepresentations to the Court

Thomas first claims that Moreland and Non-Party Respondents perpetrated a "fraud upon the Court," committed "evidence tampering," and engaged in "obstruction of justice" by "deliberately deceiv[ing]" him and the Court as to the nature of Moreland's complaints about him that purportedly contributed to his firing. Thomas asserts that Non-Party Respondents informed him of some "relatively tame allegations" Moreland made about him (the allegations prompting Thomas's defamation claims in this case) and that Moreland reinforced the impression that these were all her allegations by adopting that position in her motion to dismiss. But in reality, Thomas claims, Moreland had made other "egregious" allegations that Thomas did not learn about until discovery. *Compare* ECF No. 17-2, *with* ECF No. 36-1. Thomas says that Moreland and Non-Party Respondents did all this to cover up a retaliation scheme they waged against him because of his complaints about Moreland's "inappropriate relationship" with the then-CEO of at least one of the Non-Party Respondents.

Thomas does not specify whether he seeks sanctions on this basis under a statute, a rule, or the Court's inherent authority. The Court presumes that he asks it to exercise its inherent authority, by which it may sanction parties (and, possibly, nonparties involved in the litigation as well) for conduct that threatens the Court's integrity and abuses the judicial process. *See Shepherd*

3

*v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995).[1] Under the Court's inherent authority, it may impose issue-related sanctions (such as precluding evidence) if "a preponderance of the evidence" establishes the predicate misconduct. *See id.* at 1478. But it may impose "fundamentally penal" sanctions (such as a default judgment, fines, and attorneys' fees) only if it finds "clear and convincing evidence of the predicate misconduct." *Id.*

No sanctions are warranted related to this claim. To begin with, Thomas's overall premise—that a nefarious cover up motivated this "misconduct"—is undercut by the Non-Party Respondents' production of the document containing the "egregious" allegations relatively early in discovery and Moreland's filing of that document on the docket well before the close of discovery. *See* ECF No. 25; ECF No. 36 at 5; ECF No. 36-1; ECF No. 121-4 at 2. A cover-up this is not.

In any event, the "tame" allegations that Non-Party Respondents first shared with Thomas are a subset of the "egregious" allegations. *Compare* ECF No. 5-2, *with* ECF No. 36-1. And the Court finds nothing improper or nefarious about Non-Party Respondents' decision, before this case was even filed, to share with Thomas only the "tame" allegations, as they were the allegations that the record shows informed the decision to fire him. *See* ECF No. 142-6 at 11–14; ECF No. 142-20 at 2. Finally, Thomas's claim that Moreland misrepresented to the Court the nature of her complaints about Thomas in her motion to dismiss overlooks that, in that motion, Moreland needed to "demonstrate that the facts alleged in the complaint, accepted as true, do not warrant relief." *See Achagzai v. Broad. Bd. of Govs.*, No. 17-cv-612 (RDM), 2018 WL 4705799, at *2 (D.D.C. Sept. 30, 2018). That Moreland failed to raise the more "egregious" allegations in her motion to

---

[1] Federal courts are divided over how much the inherent power "extends, if at all, to abuses committed by nonparties." 6 *Bus. & Commercial Litig. in Fed. Cts.* § 68:42 (Robert L. Haig, ed., 5th ed. Dec. 2021 update) (collecting authorities). Solely for the purpose of resolving Thomas's Motion, the Court assumes that it has inherent authority to sanction Non-Party Respondents.

4

dismiss in some way is simply no basis for sanctions.

### 2. Alleged Perjury

Thomas next argues that Moreland committed perjury during discovery (to "cover up" her real allegations and retaliation scheme) by providing "contradictory answers to the same questions" in her initial and amended responses to Thomas's first and second interrogatories. Thomas's first interrogatory asked Moreland to disclose everyone she was aware of who "likely" had discoverable information, and Thomas's second interrogatory asked Moreland to describe all pre-litigation communications she had about the allegations that supported her "Harassment Complaint" (the allegations at issue in Thomas's operative complaint) *See* ECF No. 133-3 at 5–7. Initially, Moreland disclosed nine people in response to the first interrogatory and referenced communications with six people in response to the second interrogatory. *See* ECF No. 133-3 at 5–9. Less than seven weeks later, with discovery still ongoing, she amended her responses to disclose five more people in response to the first interrogatory and referenced communications with four more people in response to the second interrogatory. *See* ECF No. 25 ¶ 6; ECF No. 133-3 at 21; ECF No. 133-4 at 5–10, 22.

The Court again presumes that Thomas asks the Court to exercise its inherent authority, by which it may sanction perjury during discovery.[2] *See, e.g.*, *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043–46 (10th Cir. 2005). Generally, to prove perjury, the party so alleging must establish that the alleged perjurer (1) made a false statement (2) that she did not believe to be true when she made it and (3) that is material to an issue to be determined by the Court. *See In re Grand Jury Proceedings*, 117 F. Supp. 2d 6, 27–28 (D.D.C. 2000). Perjury is not proven merely

---

[2] In one of his replies, Thomas also argues that Moreland should have provided this information in her initial disclosures and should be sanctioned under Rule 37(c)(1) for not doing so. This argument is untimely. *See, e.g.*, *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008).

5

by the fact that a person made an earlier inconsistent statement, particularly when that statement is readily explainable by "confusion, mistake, or faulty memory." *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Dean*, 55 F.3d 640, 659 (D.C. Cir. 1995).

If for no other reason, Thomas's argument fails because he has not shown that Moreland believed her initial interrogatory responses were false when she provided them. He glosses over that Moreland provided her initial interrogatory responses about three years after the events in question occurred. *See* ECF No. 22 ¶ 5; ECF No. 133-3 at 21. And, as Thomas knows, until discovery, Moreland did not possess almost all the documents relevant to the case. *See* ECF No. 117 at 8; ECF No. 121-2 ¶ 3; ECF No. 121-3; ECF No. 121-4; ECF No. 121-5. Thus, her initial responses are easily explainable by mistake or faulty memory. That Moreland amended her interrogatory responses weeks later, and with nearly three months remaining before the first discovery deadline, strongly supports this explanation. *See United States v. Norris*, 300 U.S. 564, 576 (1937). And it undermines the notion that she knowingly lied by omission in her initial responses as part of a "cover up."

### 3. Other Alleged Discovery-Related Misconduct

Thomas next raises an array of alleged discovery-related misconduct, including that (1) Moreland failed to provide documents she used to prepare for her deposition testimony despite being issued a subpoena for all such documents; (2) Moreland violated this Court's Order, ECF No. 68, granting in part one of Thomas's motions to compel; (3) Non-Party Respondents employed a "Highly Confidential" designation under the Protective Order, ECF No. 37, for part of their Rule 30(b)(6) witness's deposition to prevent Thomas from identifying and deposing witnesses that would reveal the "retaliation scheme" against him; (4) Moreland did not produce to Thomas the complete set of documents she received from Non-Party Respondents during discovery; (5) Non-

Party Respondents selected a "newly-hired witness" as one of its Rule 30(b)(6) witnesses rather than designating one of the attorneys involved in Thomas's firing; and (6) Non-Party Respondents did not provide the complete set of documents used to prepare one of their Rule 30(b)(6) deponents despite being issued a subpoena for all such documents.[3]

The first four allegations border on frivolous. The Court has already adjudicated the issue on which the first allegation is based and gave Thomas the opportunity until March 11, 2021, to "lay the foundation" to justify ordering Moreland to provide the documents at issue. *See* ECF No. 45 at 2; ECF No. 68 at 1; Minute Order of February 2, 2021. Thomas did not pursue that opportunity. The second allegation is conclusory and with no explanatory detail, but it appears to relate to the first allegation, so it is meritless for the same reasons. As for the third allegation, the Court has already denied Thomas's request for this discovery, and in any event the allegation is based on Thomas's "cover up" theory that the Court does not find credible. *See* ECF No. 52; ECF No. 68. The fourth allegation complains about something Moreland had every right to do—review documents she received from Non-Party Respondents and then turn over to Thomas only those that were relevant and responsive to his discovery requests. *See* Fed. R. Civ. P. 34(a)–(b); Wright & Miller, 8B *Fed. Prac. & Proc. Civ.* §§ 2206–07 (3d ed. Apr. 2021 update). None of these allegations come close to providing a basis for sanctions.

The fifth allegation has several facets to it, all related to a Rule 30(b)(6) deposition. But again, none warrant sanctions. Thomas complains that Non-Party Respondents selected as one of their Rule 30(b)(6) deponents someone who "never witnessed" the events at issue in the case. But

---

[3] Thomas also asserts cursorily that "critical evidence" of the scheme against him "was withheld" from him until two days before the close of discovery. The Court need not address this argument. *See, e.g.*, *Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 202 (D.D.C. 2016).

that is precisely what the rules allow. *See* Fed. R. Civ. P. 30(b)(6); *Dickerson v. District of Columbia*, No. 09-cv-2213 (PLF), 2021 WL 1840396, at *4 (D.D.C. May 7, 2021); *Fashion Exchange LLC v. Hybrid Promotions, LLC*, No. 14-cv-1254 (SHS) (OTW), 2019 WL 1533212, at *2 n.2 (S.D.N.Y. Apr. 9, 2019). Thomas also asserts that this Rule 30(b)(6) deponent was not properly prepared, meaning that Non-Party Respondents effectively failed to appear under Rule 37(d)(1)(A)(i) for part of the Rule 30(b)(6) deposition. *See, e.g.*, *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 24–25 (D.D.C. 2010). But Thomas inexplicably waited nearly a year to press this issue despite being aware of it since the deposition. *Cf.* ECF No. 52 at 5 (hinting obliquely about, but not arguing, this issue). This "unreasonable delay" renders Thomas's argument untimely as a basis for Rule 37(d) sanctions. *See Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008). Thomas also asserts that Non-Party Respondents suborned perjury from this deponent as shown by "irreconcilably contradictory" answers she gave to the same question before she conferred with counsel for Non-Party Respondents and then afterward. But as far as the Court can tell, the deponent was answering two different questions—one about whether Thomas expressed certain concerns *to* another person, the other about whether he expressed similar concerns *about* ("in connection with") that other person. And even assuming the same question was posed, the Court could hardly conclude that the witness likely committed perjury just because she corrected her answer after consulting with counsel.[4]

Finally, whatever the merits of the sixth allegation, it does not warrant sanctions. True, the Court in its discretion "may" hold in contempt a "person" who is served with a subpoena for doc-

---

[4] Thomas also argues in passing that this Rule 30(b)(6) deponent testified "misleadingly" and made "statements of highly dubious veracity." The Court need not address this cursory and conclusory claim. *See, e.g.*, *Davidson*, 206 F. Supp. 3d at 202.

uments but "fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(g); *Springfield Terminal Ry. Co. v. United Transp. Union*, No. 89-mc-73 (HHG), 1989 WL 225031, at *1 (D.D.C. May 18, 1989). But it is "rare for a court to use contempt sanctions without first ordering compliance with [the] subpoena." *See* Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment; *see also* Wright & Miller, 9A *Fed. Prac. & Proc. Civ.* § 2465, text accompanying note 3.50 (3d ed. Apr. 2021 update). Here, there is "no predicate court order commanding compliance with the subpoena." *See HT S.R.L. v. Velasco*, No. 15-mc-664 (RBW), 2015 WL 13759884, at *6 (D.D.C. Nov. 13, 2015).[5] And again, Thomas waited until discovery was long closed to raise the issue. Thus, even assuming this underlying allegation has some merit, the Court will exercise its discretion under Rule 45(g) not to impose contempt sanctions on Non-Party Respondents. *See, e.g.*, *id.*

### 4.     Alleged Violations of the Protective Order

Finally, Thomas argues that Moreland and Non-Party Respondents violated the Protective Order in this case in several ways: (1) both violated the Protective Order's provision prohibiting a "party" from "routinely" designating material as confidential by marking effectively everything produced or prepared in discovery as confidential or highly confidential; (2) Non-Party Respondents violated the Protective Order by not redacting certain information that should have been redacted in documents they produced; and (3) Non-Party Respondents violated the Protective Order

---

[5] To the extent that Thomas now seeks such an order, his request is untimely because discovery closed more than nine months before he filed his Motion and because he failed to explain his delay in seeking such an order. *Cf. Klugel v. Clough*, 252 F.R.D. 53, 55–56 (D.D.C. 2008) (denying as untimely a motion to compel because it was filed two months after the discovery deadline even though the delay was attributable to the movant's "effort to resolve the dispute without the need for the intervention of the court").

by redacting certain information that they had no prior authorization to redact in documents they produced.

The Court again presumes that Thomas asks the Court to exercise its inherent authority, by which it may impose civil-contempt sanctions for violating a court-issued protective order. *See, e.g.*, *Pigford v. Veneman*, 307 F. Supp. 2d 51, 55–56 (D.D.C. 2004). Such sanctions may be imposed when a party (and, presumably, a non-party involved in the litigation) "violates a definite and specific court order" of which the party is aware. *See id.* These sanctions are discretionary, and the Court can decline to impose sanctions even if a court order is violated where "no harm resulted" from that violation. *See id.* at 60.

As for the routine-designations claim, the Court declines to consider sanctions based on it because Thomas did not follow the Court's instructions on how to narrow it and present any remaining disputes to the Court for resolution. Thomas previously raised this issue with the Court. *See* ECF No. 111 at 12–14. At that time, the Court instructed him to confer with Moreland and Non-Party Respondents on a document-by-document basis about this issue, and to then raise any remaining disputes with the Court, to present his claim with "specificity." *See id.* at 27. The Court also warned Thomas that it would not consider a later-filed motion taking a "scattershot" approach to challenging Moreland's and Non-Party Respondents' designations. *See id.* at 29–30, 32–33, 35–36. Yet Thomas decided to stick with a blunderbuss strategy both in conferring about and now arguing this issue. *See* ECF No. 117 at 9–16; ECF No. 117-10; ECF No. 117-11.[6]

---

[6] Thomas contends that it would have been "impossible" for him to confer on a document-by-document basis with the other parties. But, simply put, that was his responsibility as instructed by the Court, at least until he sought and received relief from it. In any event, nothing in the record suggests to the Court that the documents produced in this case were too numerous for the parties to confer about or that Thomas lacked the time or ability to do so, given his many filings.

As for Non-Party Respondents' failure to redact certain information, this argument for sanctions fails because the Protective Order was not "definite and specific" as to Non-Party Respondents' redaction obligations. The Protective Order specifies only that Thomas could make certain redactions and is silent on redactions any other party (or non-party) had to make. *See* ECF No. 37 ¶ 6. Thomas tacitly concedes this point in arguing that it was "safe to assume" that the "Court's intent" was to require "all parties" to redact the information in question. And he is right that, if this issue had been raised earlier, the Court might well have revised the Protective Order's language along these lines. But given what the Protective Order actually says, it is not a basis for sanctions now.

As for Non-Party Respondents' redaction of certain information that should *not* have been redacted, whatever the merits of this allegation, the Court will not impose sanctions based on it. Thomas complains that, before producing certain documents to him, Non-Party Respondents redacted donor and politician names from the documents. The Court fails to see how these redactions harmed Thomas, and his vague contention that the redactions harmed his ability to obtain relevant discovery is unconvincing—particularly given that Thomas's then-counsel apparently consented to them. *See* ECF No. 117-8; ECF No. 120 at 6. That is sufficient reason to refuse his request for sanctions as to this issue. *See, e.g.*, *Pigford*, 307 F. Supp. 2d at 60.

*       *       *

For all these reasons, the Court will deny Thomas's Motion for "Terminating Sanctions."

**B.      Moreland's and Non-Party Respondents' Requests for Sanctions**

Moreland and Non-Party Respondents each ask the Court to sanction Thomas for filing the Motion. Non-Party Respondents ask for both attorneys' fees and costs, and Moreland asks for costs.

11

Non-Party Respondents do not identify the procedural basis for their request, while Moreland identifies Rule 37(a)(5)(B). But Rule 37(a)(5)(B) does not apply here because "on its face" that provision "applies only to the denial of a motion to compel discovery." *See Miller v. Rodriguez*, No. 3:16-cv-2744 PGS-DEA, 2018 WL 6416928, at *8 (D.N.J. Dec. 6, 2018); *see also* Fed. R. Civ. P. 37(a)(1), (a)(5)(A)–(B). Thomas's Motion for "Terminating Sanctions" is not such a motion. *See also* ECF No. 111 at 27–29.

Perhaps 28 U.S.C. § 1927 authorizes the Court to award Moreland and Non-Party Respondents the "costs, expenses, and attorneys' fees" incurred in responding to the Motion. But it is unclear whether § 1927 applies against non-attorney pro se litigants such as Thomas, and no court in this circuit seems to have addressed this question. *See* 27A *Fed. Proc., L. Ed.* § 62:795 (Mar. 2022 update). With no briefing on the point, this Court will not be the first.

Rule 11 could apply here, as it permits the Court to impose sanctions when a pro se litigant files a frivolous motion. *See* Fed. R. Civ. P. 11(b)–(c); *Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 97–98 (D.D.C. 2016). But neither Moreland nor Non-Party Respondents even claim to have fulfilled the procedural prerequisites to obtain Rule 11 sanctions. *See* Fed. R. Civ. P. 11(c)(2); *Phillips v. Mabus*, 319 F.R.D. 36, 40 (D.D.C. 2016). Thus, the Court will not proceed under Rule 11.

Of course, the Court's inherent authority allows it to impose sanctions in the form of attorneys' fees, costs, and expenses against a pro se party losing a motion if it finds that he filed the motion "in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975); *Healey v. Labgold*, No. 00-cv-465 (JMF), 2002 WL 32901631, at *2 (D.D.C. Apr. 4, 2002); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Veterans Affairs*, 134 F. Supp. 3d 63, 66 (D.D.C. 2015). But the Court should "ex-

ercise caution in invoking its inherent power," *Chambers*, 501 U.S. at 50, and it has "wide discretion" whether to do so, 27A *Fed. Proc., L. Ed.* § 62:800, text accompanying note 2.

As the Court has noted, several of Thomas's arguments in his Motion border on the frivolous. But on this record as a whole and considering Thomas's pro se status, the Court declines to exercise its inherent authority to assess attorneys' fees and costs against Thomas as a sanction for filing the Motion. *See Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4–7 (D.D.C. 2013). Thus, the Court will deny Moreland's and Non-Party Respondents' requests for sanctions.

## IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Thomas's Motion for "Terminating Sanctions," ECF No. 117, is **DENIED**. It is further **ORDERED** that Moreland's and Non-Party Respondents' requests for sanctions, ECF No. 120; ECF No. 121; are **DENIED** as well.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 23, 2022