UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY THOMAS,<br><br>   *Plaintiff*,<br><br> v.<br><br>CRYSTAL MORELAND,<br><br>   *Defendant*. | Civil Action No. 18-800 (TJK)<br>**UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**

In this defamation case, Plaintiff Jeffrey Thomas moves for a default judgment against Defendant Crystal Moreland as a sanction for several instances of purported litigation misconduct. He also seeks sanctions against Non-Party Respondents the Humane Society of the United States and the Humane Society Legislative Fund for several instances of their purported case-related misconduct. Both Moreland and Non-Party Respondents oppose the motion and seek sanctions in return. For the following reasons, the Court will deny Thomas's motion for a default judgment, and it will deny in part and deny without prejudice in part Moreland's and Non-Party Respondents' requests for sanctions.

**I. Relevant Background**

The Court assumes familiarity with the general background of this case. *See* ECF No. 156 at 2–4. Discovery closed in early November 2020, though the Court permitted additional limited discovery until March 11, 2021. *See* ECF No. 25 ¶ 6; Minute Order of February 2, 2021. Shortly before that second deadline, Thomas, who had been represented by retained counsel until then, decided to proceed pro se. *See* ECF No. 75; ECF No. 76; Minute Order of March 8, 2021. Since then, he has docketed a multitude of filings, including several motions for sanctions because of

alleged litigation misconduct. *See, e.g.*, ECF No. 117; ECF No. 119; ECF No. 138; *see also* ECF No. 110; ECF No. 116; ECF No. 128; ECF No. 129; ECF No. 130; ECF No. 131; ECF No. 132; ECF No. 133; ECF No. 134; ECF No. 139; ECF No. 140; ECF No. 145; ECF No. 149; ECF No. 150; ECF No. 153; ECF No. 155.

Before the Court now is Thomas's Cross-Motion for Default Judgment, yet another motion for sanctions. *See* ECF No. 145-2.[1] In it, he alleges that Moreland perjured herself and spoliated evidence. *See id.* at 4–32, 36–37. He asks the Court to sanction Moreland by entering default judgment in his favor and referring her for criminal prosecution. *See* ECF No. 145-5. He also alleges that Non-Party Respondents committed case-related misconduct. *See* ECF No. 145-2 at 32–34, 38, 42–45. And he asks the Court to sanction them by holding them and their counsel in contempt and by ordering them to return his charitable donations plus interest. *See* ECF No. 145-5. Moreland and Non-Party Respondents each oppose Thomas's motion and request that the Court sanction him for filing it. *See* ECF No. 146; ECF No. 152.

## II.     Legal Standard

Generally, the party seeking sanctions has the burden to show that they are warranted. *See United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-798 (PLF/GMH), 2019 WL 6970727, at *8 (D.D.C. Sept. 5, 2019); *Clarke v. WMATA*, 904 F. Supp. 2d 11, 20–21 (D.D.C. 2012). When deciding whether to impose sanctions, the Court must consider if the alleged conduct "is sanctionable under a rule or statute." *See United States v. Honeywell Int'l Inc.*, 281 F.R.D. 27, 31 (D.D.C. 2012). If a statute or rule is "up to the task," then the Court "ordinarily should rely"

---

[1] After the Court ruled on a similar motion for sanctions that Thomas filed, *see* ECF No. 161, he withdrew several issues raised in the Cross-Motion. *See* ECF No. 166. In this Memorandum Opinion and Order, the Court addresses only those that Thomas did not withdraw.

2

on those sources of authority to impose sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). If one is not, then the Court may "rely on its inherent power" to impose sanctions. *See id.*

## III. Analysis

### A. The Court Will Deny Thomas's Cross-Motion for Default Judgment

Thomas raises several instances of alleged misconduct by both Moreland and Non-Party Respondents that he argues warrant sanctions. These allegations fall into three categories: (1) perjury by Moreland; (2) spoliation of evidence by Moreland; and (3) case-related misconduct by Non-Party Respondents. None warrant sanctions.

#### 1. Moreland's Alleged Perjury

Thomas first argues that sanctions against Moreland are warranted because she allegedly perjured herself in several ways. But he has not shown that such sanctions are warranted.

The Court has the inherent power to sanction parties for conduct that threatens the Court's integrity and abuses the judicial process, such as perjury. *See Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474–75 (D.C. Cir. 1995); *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043–46 (10th Cir. 2005). Under this inherent power, the Court may impose "fundamentally penal" sanctions (such as a default judgment) only if it finds "clear and convincing evidence of the predicate misconduct." *Shepherd*, 62 F.3d at 1478. Thomas seeks such sanctions, so he must show by clear and convincing evidence that Moreland committed perjury. To do so, he must establish that Moreland made a false statement while under oath; that she intended to make the false statement— that is, she did not believe it to be true but made it anyway; and that the statement is material to an issue to be determined by the Court. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *In re Grand Jury Proc.*, 117 F. Supp. 2d 6, 28 (D.D.C. 2000). Merely showing that Moreland made an incorrect statement under oath is not enough, particularly when the statement is readily explainable

3

by "confusion, mistake, or faulty memory." *See Dunnigan*, 507 U.S. at 94; *United States v. Dean*, 55 F.3d 640, 659 (D.C. Cir. 1995).

First, Thomas asserts that Moreland perjured herself because Thomas's Interrogatory No. 3 asked her to "[d]escribe in detail all statements" she had "made regarding Plaintiff that are, in full or in part, untruthful or false," and her sworn answer to that interrogatory in June 2020 and again in August 2020 was that "there are no such statements." *See* ECF No. 145-2 at 4; ECF No. 145–12 at 9, 21; ECF No. 145-13 at 10, 22. Yet, according to Thomas, she made "numerous" such statements before that time. *See* ECF No. 145-2 at 4–28. But none of these show by clear and convincing evidence that Moreland committed perjury in her interrogatory responses. The Court will walk through all of them.

Thomas begins by arguing that Moreland represented (through a denial in her March 2020 answer) that Thomas had sent her offensive text messages. *See* ECF No. 145-2 at 5–10. And he asserts that this denial was false because discovery revealed that those text messages did not exist and that Moreland knew as much back in October 2017. Even assuming so, to establish perjury Thomas must show that Moreland had all this in mind when she responded to Interrogatory No. 3. Thomas has not provided clear and convincing evidence that Moreland did, given the nonspecific and open-ended question that she was asked to answer in interrogatories several months later.

Thomas next argues that, as her own forensic analyst's affidavit ostensibly shows, Moreland testified falsely in her October 2020 deposition about technical problems she had with her work cell phone on which Thomas's text messages to her would be. *See* ECF No. 145-2 at 10–13; *see also* ECF No. 142-5 at 2; ECF No. 145-6. Of course, even if Thomas is correct about this, this testimony *post-dates* Moreland's interrogatory responses and does not consist of statements "regarding" Thomas—except perhaps in the most attenuated sense of the word—so it cannot show

4

that Moreland's interrogatory response was deliberately false. In any event, the case that the statement was false is a weak one, at least as far as the Court can tell from the deposition testimony he references. Thomas claims that Moreland testified that the phone "had 'a dead battery' and was 'not turning back on.'" *See* ECF No. 145-2 at 11. And he asserts that this is false because her forensic analyst's affidavit shows that, although the phone has a software issue that requires reinstalling the operating system, wiping the data from the phone in the process, it can be turned back on. *See id.* Thomas mischaracterizes Moreland's testimony. In her deposition, she explained that, while she was using the phone for a call, she was kicked off the call, which she assumed was because of a "dead battery." *See id.* She then plugged the phone in, but even after doing so she was unable to "log into the phone." *See id.* It is in that context that she stated that the phone would not "turn on." *See id.* In context, then, it is apparent that she used "turn on" as a shorthand for describing software-type issues with the phone that prevented her from accessing it—she did not literally mean that the phone was completely unresponsive. *See id.* at 10–11. And that is what her forensic analyst explained in her affidavit.

Next, Thomas asserts that Moreland reported concerns to their employer's human resources department about Thomas being a corporate "mole" and wiretapping or otherwise monitoring her, that their employer investigated these accusations and found no evidence of them, and that Moreland knew this as of September 2017. *See* ECF No. 145-2 at 13–18, 20–22, 26. But the investigation's results do not mean that Moreland's reported concerns were false or untruthful, just that no evidence was found to back them up. And again, Thomas must show by clear and convincing evidence that Moreland had all this in mind when she gave her June 2020 and August 2020 interrogatory responses but deliberately concealed it. He hasn't. To the contrary, mistake or faulty memory is a more likely explanation for any discrepancies. After all, these accusations were not

5

referenced in the operative complaint. *See* ECF No. 22. And they first came to the Court's attention when *Moreland* filed an exhibit containing them in September 2020—about one month after she purportedly lied about making them. *See* ECF No. 36-1. This is hardly the conduct of a person who "perjured herself to cover up" these allegations. *See* ECF No. 145-2 at 15.[2]

Thomas next relies on an allegedly false statement Moreland apparently gave to their employer's human resources department in September 2017. *See* ECF No. 145-2 at 18–20. He says that Moreland said something to the effect that she met with Thomas shortly after he had told her that his mother had passed away to find out if his mother had "actually passed." Even assuming this was false, Thomas has to show that Moreland had this statement in mind when she gave her June 2020 and August 2020 interrogatory responses, but deliberately concealed it. Again, he hasn't. And given the nearly three-year gap between this statement and Moreland's interrogatory responses to a nonspecific and open-ended question, common sense suggests that mistake or faulty memory is to blame rather than willful deception.

Continuing on, Thomas references yet another allegedly false statement Moreland apparently gave to their employer's human resources department in September 2017 to the effect that one of their mutual colleagues thought that Thomas "has a form of Asper[g]ers." ECF No. 145-2 at 22–23. Again, he marshals no evidence to show that Moreland even recalled this statement when she provided her interrogatory responses in June 2020 and August 2020, or that she even thought that this statement was "untruthful or false" such that she lied in those responses.

---

[2] Thomas also asserts that Moreland "invented" a "story" about a workplace incident that she relayed to her employer to support these allegations. *See* ECF No. 145-2 at 16–18. But Thomas points out that she still believes this "story" to be true. *See id.* This belief, not perjury, explains why Moreland did not disclose this "story" as an "untruthful or false" statement in her interrogatory responses.

Finally, Thomas also asserts that Moreland falsely told their employer's human resources department in September 2017 that Thomas had asked her if she was sleeping with her supervisor. *See* ECF No. 145-2 at 23–24. Thomas denies ever asking her this, but he does not provide any evidence to show that *Moreland* now agrees this is untrue. To the contrary, as he points out, she has maintained that Thomas *did* ask her this question. *See id.* Such a "he said/she said" dispute cannot be the basis for a perjury finding. And the same is the case with Thomas's claim that Moreland falsely told her supervisor sometime in 2017 that Thomas had surreptitiously learned of a medical incident she had that year. *See* ECF No. 145-2 at 24–26.

Second, Thomas asserts that Moreland perjured herself because his Interrogatory No. 12 asked her to "[d]escribe in detail all communications" she had with others employed by Non-Party Respondents "in connection with" her September 2017 human-resources complaint about Thomas. *See* ECF No. 145-2 at 27–28; *see also* ECF No. 145–12 at 14–15, 21; ECF No. 145-13 at 15–16, 22. Yet, he says, in Moreland's sworn answers to that interrogatory she omitted an individual that she later testified she had spoken with about Thomas.[3] However, that she volunteered the name of this other individual in her deposition testimony suggests that she did *not* commit perjury in her interrogatory responses. *See United States v. Norris*, 300 U.S. 564, 576 (1937).

Third, Thomas argues that Moreland perjured herself in connection with his Interrogatory No. 10. *See* ECF No. 145-2 at 36–37; *see also* ECF No. 145–12 at 13, 21; ECF No. 145-13 at 14, 22. That interrogatory asked her to "[d]escribe in detail" her communications about Thomas with other colleagues who also complained to their employer about Thomas. Moreland responded that

---

[3] Thomas also seems to accuse Moreland of perjury for omitting from this answer seven other individuals that Moreland listed in another interrogatory response as individuals to whom she had "complained" about Thomas. That she provided these names elsewhere in her responses belies the notion that she lied by failing to mention them in response to Interrogatory No. 12.

7

she was unaware of any other person who had done so, even though discovery revealed that, in fact, she had such communications. But Thomas also asserts that Moreland filed some of this discovery as an exhibit to an earlier motion of hers. *See* ECF No. 142 at 36. This is not the conduct of a perjurer. *See Norris*, 300 U.S. at 576.[4]

Fourth, Thomas makes basically the same argument about Moreland's responses to Interrogatory No. 13 as the argument he makes about her responses to Interrogatory No. 10. *See* ECF No. 145-2 at 36–37. It fails for the same reasons.

### 2. Moreland's Alleged Spoliation

Thomas next alleges that Moreland spoliated evidence from her cell phones and from her work email. *See* ECF No. 145-2 at 12–13, 29–32; *see also* ECF No. 138-2 at 2–5; Minute Order of March 9, 2022. Sanctions are not warranted on this basis either.

Federal Rule of Civil Procedure 37(e) applies when a party fails to take "reasonable steps" to preserve electronically stored information ("ESI") "in the anticipation or conduct of litigation" and that information is "lost" such that it "cannot be restored or replaced through additional discovery." *See* Fed. R. Civ. P. 37(e); *see also Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 44 (D.D.C. 2019). In other words, Rule 37(e) applies when "(1) ESI, (2) should have been preserved in the anticipation or conduct of litigation, (3) the party that should have preserved the ESI failed to take reasonable steps to preserve it, and (4) the ESI is irremediably lost." *Borum*, 332 F.R.D. at 45. To obtain a default-judgment sanction under this rule, the movant must show the foregoing

---

[4] The portions of Thomas's Cross-Motion devoted to allegations of perjury contain several more perfunctory assertions about other ostensible inconsistencies in Moreland's deposition testimony, discovery responses, and the like. *See* ECF No. 145-2 at 4–29, 36–37. As with all his other allegations of perjury, these too do not show perjury by clear and convincing evidence. *See also Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 202 (D.D.C. 2016).

elements and demonstrate that the party "acted with the intent to deprive another party of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(2); *Borum*, 332 F.R.D. at 43.[5]

First, Thomas argues that Moreland spoliated evidence by deleting "non-personal stuff" from her personal cell phone. *See* ECF No. 138-2 at 2; ECF No. 138-6; *see also* ECF No. 145-2 at 30. This argument fails under the second element of Rule 37(e)—that the purported evidence "should have been preserved in the anticipation or conduct of litigation." *See Borum*, 332 F.R.D. at 45.

This element requires the movant to establish that the alleged spoliator had a duty to preserve the evidence when it was lost. *See Borum*, 332 F.R.D. at 45. This duty arises "when litigation is reasonably foreseeable." *See* Fed. R. Civ. P. 37 advisory committee notes to 2015 amendment; *see also Gerlich v. U.S. Dep't of Justice*, 711 F.3d 161, 170–71 (D.C. Cir. 2013). This "reasonably foreseeable" standard turns on "the extent to which a party was on notice that litigation was likely and that the information would be relevant" when it was lost. *See* Fed. R. Civ. P. 37 advisory committee notes to 2015 amendment.

Thomas does not clearly state when he claims Moreland's duty to preserve arose, though he suggests either October 13 or 15, 2017—when he told their employer that he planned to hire an attorney and when he did so. *See* ECF No. 138-2 at 2; ECF No. 116-2 at 2. But even assuming Moreland's duty to preserve arose on October 13, 2017, Thomas has not shown that Moreland deleted information from her personal cell phone at or after that time.

---

[5] "[I]t is unsettled whether a preponderance-of-the-evidence or higher standard applies" to the factual findings required under Rule 37(e). *See Ball v. George Wash. Univ.*, No. 17-cv-507 (DLF), 2018 WL 4637008, at *1 n.1 (D.D.C. Sept. 27, 2018). Even assuming the lower preponderance-of-the-evidence standard applies here, Thomas does not meet it.

This accusation of Thomas's is based on a handwritten note made by one of their employer's human resources representatives during a meeting with Moreland on October 30, 2017. *See* ECF No. 138-6; *see also* ECF No. 114-5 at 3–8. That note recounts that Moreland had both a work phone and a personal phone, that after she got the personal phone she "merge[d]" her work and personal phones and then "delet[ed] non-personal stuff from personal phone," and that Verizon did this for her. ECF No. 138-6; *see also* ECF No. 114-5 at 3–8. The problem for Thomas is that the record suggests that all this happened in July 2017, when Moreland bought the phone in Las Vegas, months before the duty to preserve arose. *See* ECF No. 116-3 at 10–11; ECF No. 138-6. Thomas's only argument otherwise is his conclusory suggestion that, because the note is from October 30, 2017, the "deleting" must have happened right before then. *See* ECF No. 116-2 at 2–3, 2 n.5. This is far too "speculative and inconclusive," particularly in the face of contrary evidence, to support Rule 37(e) sanctions. *See Ball*, 2018 WL 4637008, at *3.

Second, Thomas argues that Moreland spoliated evidence by "wiping" her work cell phone sometime in 2019 or 2020. *See* ECF No. 138-2 at 4–5; *see also* ECF No. 145-2 at 30. This argument fails under the third element of Rule 37(e)—that Moreland failed to take reasonable steps to preserve any evidence on this phone. *See Borum*, 332 F.R.D. at 45.[6]

Rule 37(e)'s "reasonable steps" requirement "does not call for perfection," especially from an individual litigant. *See* Fed. R. Civ. P. 37 advisory committee notes to 2015 amendment. Thus, this element is not violated just because a party "*could have* done more" to ensure that no relevant ESI was lost from a device. *See Burns v. Medtronic, Inc.*, No. 8:15-cv-2330-T-17TBM, 2017 WL 11633269, at *4 (M.D. Fla. Aug. 9, 2017). And it is not violated when "information the party has

---

Thomas also suggests that this evidence was discoverable through other means. *See* ECF No. 145-2 at 12 n.5. If true, then this evidence is not "irremediably lost" under Rule 37(e).

10

preserved" is "destroyed by events outside the party's control," such as software issues. *See* Fed. R. Civ. P. 37 advisory committee notes to 2015 amendment.

Thomas's accusation here is that Moreland had in her possession since 2017 the work cell phone she used to communicate with him and other colleagues—but that in late 2019 she lost all the data on it after allegedly encountering a software issue that could not be fixed without wiping it. *See* ECF No. 138-6; ECF No. 138-7 ¶¶ 5–12. But this phone was "imaged" in September 2017 to capture the data on it at that time, covering much of the relevant period. *See* ECF No. 138-5; ECF No. 138-9 at 12–13. Granted, Moreland continued using the phone into October 2017, but she stopped using it at that time and left it unused for several years. *See* ECF No. 114-9 at 6–7, 10–12.[7] She then briefly used the phone again in late 2019 for work-related reasons, which is when she experienced the aforementioned "software error." *See id.* at 14–15. Later, she testified that she did "absolutely everything" to fix the error and regain access to the phone, but it was futile, as her forensic analyst's affidavit confirmed. *See id.*; ECF No. 138-7 ¶¶ 3–5, 9–12; ECF No. 114-9 at 13–14. Considering all this, the Court cannot find that Moreland failed to take "reasonable steps" to preserve any post-imaging ESI relevant to this case. Thus, Rule 37(e) sanctions are not warranted based on this alleged spoliation.

Third, Thomas argues that Moreland spoliated evidence by failing to preserve her work emails from 2017 at some point before she lost access to them in 2020. *See* ECF No. 138-2 at 5; ECF No. 145-2 at 30–31. This argument fails under the fourth element of Rule 37(e)—that the emails are "irremediably lost." *See Borum*, 332 F.R.D. at 45.

---

[7] In any event, the record suggests that no relevant ESI would have been created on the phone after the imaging. Shortly before the phone was imaged, Moreland texted a colleague to say that she had to be "careful writing . . . anything" about Thomas. *See* ECF No. 138-5.

Information is irremediably lost under Rule 37(e) if it "cannot be restored or replaced through additional discovery." *See* Fed. R. Civ. P. 37(e). Thomas basically concedes that this is not the case here because he repeatedly asserts that their employer "can freely access [Moreland's] old email." *See* ECF No. 138-2 at 5; ECF No. 116-2 at 1 n.1; ECF No. 145-2 at 30–31. In fact, during discovery their employer apparently produced to Thomas several of Moreland's emails from the relevant time. *See* ECF No. 114-2 at 5 n.2; ECF No. 117-8. In the face of his own assertions and the evidence suggesting that the emails are retrievable, Thomas has not shown that Moreland violated Rule 37(e) by failing to preserve her work emails.

### 3. Non-Party Respondents' Alleged Case-Related Misconduct

Thomas alleges several instances of purported case-related misconduct by Non-Party Respondents that he argues warrant sanctions. Even assuming sanctions are available here, *see* 6 *Bus. & Commercial Litig. in Fed. Cts.* § 68:42 (Robert L. Haig, ed., 5th ed. updated Dec. 2021), the Court finds no reason to impose them.

First, Thomas asserts that both before and during this case Non-Party Respondents "falsely represented" to Thomas the scope of Moreland's complaints about him. *See* ECF No. 145-2 at 32–34. The Court has already rejected this argument and does so once more for the same reasons. *See* ECF No. 161 at 3–5.

Second, Thomas complains about Non-Party Respondents' failure to produce certain documents in response to a subpoena. *See* ECF No. 145-2 at 38. This argument, too, the Court has already considered and rejected. *See* ECF No. 161 at 7–9.

Third, he asserts that Non-Party Respondents' Rule 30(b)(6) witness failed to testify about topics included in Thomas's deposition subpoena. ECF No. 145-2 at 42–43. Once again, the Court has already considered and rejected this argument. *See* ECF No. 161 at 8–9.

Fourth, Thomas contends that Non-Party Respondents misrepresented to the Court that a certain document he sought from them in discovery was attorney-client and work-product privileged even though it had been leaked to a prominent newspaper and shared with several dozen board members.  ECF No. 145-2 at 43–44.  Even if such dissemination would eliminate these privileges in the document, the Court will not now consider this discovery-based request for sanctions that, as Thomas's argument shows, he could have raised much earlier.  *See Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008).

Fifth and finally, Thomas alleges that Non-Party Respondents lied to the media about this case and refused to retract those statements.  *See* ECF No. 145-2 at 45 (citing ECF No. 119-2).  Once more, the Court has already rejected this argument.  *See* Minute Order of May 25, 2022.

**B.    The Court Will Deny in Part and Deny Without Prejudice in Part Moreland's and Non-Party Respondents' Requests for Sanctions**

In response to Thomas's Cross-Motion for Default Judgment, Moreland moves for sanctions under Rule 37(a)(5).  *See* ECF No. 146 at 1, 7.  And she requests that the Court prohibit Thomas from filing additional motions without first obtaining consent or leave to do so.  *See id.* at 7.  Non-Party Respondents request similar relief.  *See* ECF No. 152.  The Court will deny both requests for now, though it will not close the door on the second one.

The Court will deny the request for sanctions.  "Rule 37 on its face applies only to the denial of a motion to compel discovery," which Thomas's Cross-Motion for Default Judgment plainly is not.  *See Miller v. Rodriguez*, No. 3:16-cv-2744 PGS-DEA, 2018 WL 6416928, at *8 (D.N.J. Dec. 6, 2018); *see also* Fed. R. Civ. P. 37(a)(1), (a)(5)(A)–(B).  Granted, some courts have

13

applied Rule 37(a)(5) to motions similar to a motion to compel discovery. *See Miller*, 2018 WL 6416928, at *8. But Thomas's Cross-Motion for Default Judgment still does not fit the bill.

The Court will also deny, though without prejudice, the request for a filing injunction of some kind. This Court has the inherent power to issue pre-filing injunctions against litigants who abuse the judicial process with "frivolous, duplicative, and harassing" filings. *See Crumpacker v. Ciraolo-Klepper*, 288 F. Supp. 3d 201, 204 (D.D.C. 2018) (cleaned up); *Hall v. McAleenan*, No. 18-cv-461 (JEB), 2019 WL 2569914, at *2–3 (D.D.C. June 21, 2019). Thomas has littered the docket with filings, several of which were duplicative and at times verged on frivolous. *See supra*; *see also* ECF No. 161 at 13. And his vexatious conduct suggests an intent to harass. But the Court will not yet impose such an injunction. If this pattern continues, the Court will reconsider.[8]

## IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Thomas's Cross-Motion for Default Judgment, *see* ECF No. 145-2, is **DENIED**. It is further **ORDERED** that Moreland's Motion for Rule 37 Expenses and Other Relief, *see* ECF No. 146; ECF No. 151, and Non-Party Respondents' request for sanctions, *see* ECF No. 152 at 3, are **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 30, 2022

---

[8] Along with this Memorandum Opinion and Order, the Court will enter two orders granting motions to seal ECF No. 145-2 and its attachments as well as ECF No. 150-2 and its attachments. Because this Memorandum Opinion and Order extensively references information discussed in those filings, the Court is filing it under seal.