UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY THOMAS, JR.,

          *Plaintiff*,

  v.

CRYSTAL MORELAND,

          *Defendant*.

Civil Action No. 18-800 (TJK)

## MEMORANDUM ORDER

The Court granted summary judgment for Defendant Crystal Moreland in this defamation case. Still remaining is whether to sanction Plaintiff Jeffrey Thomas, Jr., for filing a complaint against Moreland in the Superior Court of the District of Columbia that appears to reference material designated confidential under the Protective Order governing discovery in this case. After carefully considering the parties' submissions, the Court holds Thomas in civil contempt because the record shows, by clear and convincing evidence, that he violated a clear and unambiguous provision of the Protective Order.

**I.    Background**

The full history of this case is described in the Court's Memorandum Opinion, ECF No. 217, so the Court only recounts what it must to address the matter at hand. Thomas is a former Humane Society of the United States ("HSUS") employee who sued Moreland—a fellow HSUS employee—for defamation. In September 2020, the Court entered a Protective Order to govern discovery. ECF No. 37. The Order states that "[i]nformation or documents designated as confidential under this Order shall not be used or disclosed by the parties . . . for any purposes whatsoever other than preparing for" and litigating this case. ECF No. 37 ¶ (1)(c). A few weeks later, after receiving subpoenas from Thomas, HSUS entered a third-party appearance. ECF Nos. 38,

39.

In mid-October 2020, after two confidential documents HSUS had produced to Thomas appeared in a public blog post by HumaneWatch—a non-party organization—the Court ordered Thomas to show cause "why the Court should not hold him in civil contempt for violating this Court's Protective Order" in connection with this potential leak. Minute Order of January 21, 2021. The Court held two hearings on the matter. During the first, Thomas stated that he provided those documents to the organization before they were designated confidential. ECF No. 92 at 26. And, in response to the Court's order that the parties file supplements to their show-cause filings, Thomas filed an affidavit reaffirming, in more detail, that his disclosures to the organization were made before the documents were marked "confidential." *See* ECF No. 111 at 8; ECF No. 95-6. Based on those representations, the Court declined to hold Thomas in contempt for the disclosure, explaining that the Protective Order did not "clearly and specifically obligate a party to . . . to claw back . . . a document that was disclosed to a third party" before it was designated confidential. ECF No. 111 at 9–10. But the Court did clarify that the Protective Order prevented the future disclosure of all confidential documents and information, even if the documents were first produced before the entry of the Protective Order and then later so designated. ECF No. 92 at 12.

Later, in July 2021, Thomas filed a complaint in the Superior Court of the District of Columbia asserting various tort claims against eight former and current HSUS employees. *See* ECF No. 117-2. The Court noted that the complaint "appear[ed] to use and disclose documents or information" that Thomas knew "were designated confidential under the Protective Order before July 2021." Minute Order of June 14, 2022. As a result, the Court again ordered Thomas to "show cause in writing why the Court should not sanction him . . . for violating the Protective Order in filing his Superior Court complaint." *Id.* After the parties responded, the Court ordered Thomas

2

to supplement his response and address the allegations in his Superior Court complaint in paragraphs 3, 6, 78–80, 82, 84, 88–89, 92–101, 106–07, 111, 115, 120, 122, 129, 130, 133, 158, and 198. Minute Order of July 11, 2022.

## II. Legal Standard

A court may hold a party in civil contempt for "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401. "Courts may impose civil sanctions either to coerce the contemnor into compliance with the court's order or 'to compensate the complainant for losses sustained' from the contempt." *United States v. Two Gen. Elec. Aircraft Engines*, 317 F. Supp. 3d 516, 520 (D.D.C. 2018) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "Two elements must be established before a party may be held in civil contempt. First, the Court must have issued an order that is clear and reasonably specific. Second, the putative contemnor must have violated the Court's Order." *Stewart v. O'Neill*, 225 F. Supp. 2d 6, 10 (D.D.C. 2002) (internal citations omitted). The "violation must be proved by clear and convincing evidence." *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (quoting *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)). Yet even once these two elements are met, a putative contemnor can still defend himself on the ground of "good faith substantial compliance" by showing "that [he] took all reasonable steps within [his] power to comply with the court's order." *Stewart*, 225 F. Supp. 2d at 10 (quoting *Food Lion, Inc. v. United Food and Com. Workers Int'l Union*, 103 F.3d 1007, 1017 (D.C. Cir. 1997)). The decision to issue sanctions "is left to the sound discretion of the district court judge." *Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 213 (D.D.C. 2011), *aff'd*, 476 F. App'x 861 (D.C. Cir. 2012).

**III.   Analysis**

   **A.   HSUS and Moreland Bear the Burden of Proof**

To start, the parties disagree over the initial question the Court should address and which of them has the burden of proof. Thomas maintains that HSUS and Moreland have the burden to show that he violated a clear and reasonably specific court order. ECF No. 179 at 1–2. HSUS, on the other hand, argues that, once the Court issued its show-cause order, the burden shifted to Thomas to show that he did "all within [his] power to comply with the [Protective Order]." ECF No. 177 at 7 (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010)). To be sure, when a court issues an order to show cause in response to a party's motion seeking such an order, the burden is on the non-movant to justify his non-compliance. But that is because, in granting the motion, the court has already found by "clear and convincing evidence that the defendant has failed to comply with [a] [prior] order." *Int'l Painters*, 736 F. Supp. 2d at 38. But here, the Court issued the show-cause order on its own, so it never determined that Thomas had violated the Protective Order. Indeed, the Court observed only that it had "reason to believe" that he had done so. Minute Order of June 14, 2022. Thus, the burden has yet to shift to him. *See Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012); *see also Cook v. Am. S.S. Co.*, 134 F.3d 771, 776 (6th Cir. 1998) (explaining that, when a court issues its own show-cause order, it "only acts as notice to the relevant party by informing the party what conduct is alleged to be sanctionable"). As a result, HSUS and Moreland have the initial burden to show, by clear and convincing evidence, that Thomas violated a clear and reasonably specific provision of the Protective Order.

   **B.   HSUS and Moreland Have Shown that Thomas Violated the Protective Order by Using and Disclosing Confidential Material in Drafting and Filing His Superior Court Complaint**

HSUS and Moreland point out that Thomas alleged in his Superior Court complaint that

4

he "first learned of information regarding Defendants' conspiracy and the actions giving rise to the [Superior Court] suit on July 27, 2020 during discovery" in this case. *See* ECF No. 117-2 ¶¶ 3, 5. They also identify 19 paragraphs in Thomas's Superior Court complaint that they contend violate the Protective Order. *See* ECF No. 177 at 7 (paragraphs 92–93, 95–98, 100, 115, 120, 122, 129, 133, and 158); ECF No. 178 at 3–5 (paragraphs 66, 88–89, 92–101, and 115). HSUS and Moreland claim that these paragraphs reveal confidential information and have identified the specific Bates-numbered documents they allege contain that information. ECF No. 177 at 7 n.3 (citing ECF No. 118-1 at 4 n.3).

Thomas does not contest that the information he included in his Superior Court complaint appeared in the confidential documents HSUS and Moreland identify. Instead, he argues that, despite his acknowledgment that he learned of these factual allegations during discovery in this case, he relied only on his own personal knowledge, public sources, and public docket entries—specifically, ECF Nos. 36-1 and 89[1]—in drafting the complaint. ECF No. 180 at 1–2, 21–22. HSUS and Moreland counter by first arguing that the public documents Thomas cites do not contain, and so do not explain, all the information he included in his Superior Court complaint. ECF No. 177 at 6–7. Alternatively, they argue that, even if Thomas's allegations also appear in those materials, Thomas still violated the Protective Order because information contained in them was designated confidential under the Order, despite its appearance in the public domain. ECF No. 178 at 4–5. At least with respect to the four paragraphs of the complaint described below, the Court agrees with HSUS and Moreland. So it will hold Thomas in civil contempt.

---

[1] Although ECF No. 89 is one of Thomas's own filings, in declining to seal it, the Court concluded that it drew "from only publicly available information" as HSUS and Moreland "d[id] not identify any information that is subject to [the] protective order or otherwise confidential" within that document. Minute Order of April 15, 2021. By citing ECF No. 89, therefore, Thomas is effectively citing that public information.

### 1. Thomas Used and Disclosed Confidential Material in Drafting and Filing Paragraphs 122 and 129 of the Superior Court Complaint

The Court need not address all the paragraphs HSUS and Moreland challenge because the allegations in four of them—beginning with paragraphs 122 and 129—are enough to show that Thomas violated the Protective Order by using confidential material in drafting and filing his complaint. In paragraph 122, Thomas alleges that "the Office of General Counsel and/or Defendant reached out to Amanda Hungerford, Rebecca Cary, and Sara Marshman, who also falsely accused Plaintiff of being a 'mole.'" ECF No. 117-2 ¶ 122. And in paragraph 129, he alleges that, "[r]oughly three weeks [after October 7, 2017], Attorneys Hungerford and Cary would maliciously report to the Office of General Counsel a knowingly fabricated complaint that Plaintiff was a 'mole' and a security and/or safety threat." *Id.* ¶ 129.

To repeat, HSUS and Moreland claim, and Thomas does not dispute, that this information was reflected in HSUS documents disclosed in discovery to Thomas and that the documents were designed confidential and subject to the Protective Order.[2] Nor does Thomas recant his own admission in the Superior Court complaint that he "first learned of information regarding Defendants' conspiracy and the actions giving rise to the [Superior Court] suit on July 27, 2020 *during discovery*" in this case. *See* ECF No. 117-2 ¶¶ 3, 5 (emphasis added). In response, Thomas only says that these allegations all stem from information that "has long been . . . in the public domain." ECF No. 180 at 21 (citing ECF Nos. 36-1, 89, 173-1, 173-2, 173-3). Even assuming that the presence of this information in the public domain would absolve Thomas of having to abide by the Protective Order, the problem for Thomas is that the documents he cites do not include key

---

[2] Thomas's claim that "Marshman has not been the subject of any discovery" is not to the contrary. ECF No. 180 at 22. Thomas does not dispute that the information *about* Marshman is contained in the confidential documents cited by HSUS and Moreland.

information included in paragraphs 122 and 129. For example, none of them recount that "the Office of General Counsel and/or Defendant" ever reached out to the three individuals identified. Nor do they say that Cary and Marshman, at least, believed or reported that Thomas was a "mole." And they contain nothing that would support the specific allegation that Hungerford and Cary, on or around October 28, 2017, "report[ed] to the Office of General Counsel" that Thomas was a mole and a safety threat. Though those documents do mention that *Moreland* (and perhaps Hungerford) believed Thomas was a "mole," the additional allegations in paragraphs 122 and 129 are absent from the documents on the docket that Thomas identifies.

Perhaps realizing that these public documents do not exonerate him, at least with respect to paragraphs 122 and 129, Thomas also argues that he "knows all these people and witnessed their changes in behavior at the time they apparently leveled these 'mole' fabrications." ECF No. 180 at 22. But that hardly does the trick. Thomas does not explain how his observations could have led him to infer the detailed allegations in these paragraphs of his Superior Court complaint. Even assuming he recalls a change in behavior by Hungerford, Cary, and Marshman toward him, that does not explain how he concluded that the change was attributable to "mole" allegations, rather than any other reason. Nor does he explain how his knowledge of these coworkers' attitudes led him to infer that the Office of General Counsel contacted them—or that around a specific date, two reported that he was a "mole." In the end, the Court cannot conclude, based only on vague claims that Thomas witnessed the three change their behavior toward him, that he could realistically "surmis[e]" that the Office of General Counsel contacted them and that Hungerford and Cary reported him as a "mole" and a threat on or about October 28, 2017. *See id.*

In sum, Thomas has offered no plausible innocent explanation for how this specific information, which was disclosed to him under the Protective Order, ended up in paragraphs 122 and

7

129 of his Superior Court complaint. Indeed, in that same complaint, Thomas also alleged that he first learned about the actions that form the basis for that suit in discovery in *this* case. Thus, the Court can easily conclude, based on clear and convincing evidence, that he violated a "clear and unambiguous" provision of the Order by improperly using and disclosing confidential information and documents for purposes other than litigating this case when he drafted and filed these paragraphs of his complaint.

### 2. Thomas Used and Disclosed Confidential Material in Drafting and Filing Paragraphs 88 and 89 of the Superior Court Complaint

And there is more. In paragraphs 88 and 89, Thomas quoted text messages between Hungerford and Moreland. ECF No. 117-2 ¶¶ 88, 89. Though those texts were first produced to Thomas without a confidential designation, Moreland retroactively designated them confidential on September 18, 2020, ECF No. 58 at 3; ECF No. 58-2 at 3, and Thomas did not challenge that designation, as provided for in the Protective Order. *See* ECF No. 37 ¶ 4 ("A designation of confidentiality may be challenged upon motion."). On top of that, as the Court clarified at the April 16, 2021, hearing, several months *before* Thomas filed the Superior Court complaint, "to disclose or permit [the disclosure of documents and information produced or disclosed prior to September 10, 2020, that were subsequently designated as 'confidential' or 'highly confidential'] would be a violation of [the Protective Order] and could subject the individual to sanctions." ECF No. 92 at 12. Thus, it was clear that the texts were subject to the Protective Order, and Thomas could not "use[] or disclose[]" them "for any purposes whatsoever other than preparing for and conducting" this litigation. ECF No. 37 ¶ 1(c). He admits he did so when he drafted and then filed the Superior Court complaint in July 2021. On this record, the Court has little trouble concluding that Thomas violated the Protective Order.

Thomas argues that his use and disclosure of these texts in the Superior Court complaint

8

did not violate the Protective Order because he did not rely on any "confidential" documents. ECF No. 180 at 12.  Instead, Thomas says the contents of the texts were "copied directly from publicly available materials pulled from the internet," specifically, a HumaneWatch blog post.[3]  ECF No. 180 at 12 (quotation omitted).  In other words, in Thomas's view, because those texts appeared in public blog posts published by HumaneWatch, they were not "confidential," so he was free to use their content to draft the complaint and further disclose them by filing the complaint in Superior Court.  Thomas's arguments do not withstand the Protective Order's "clear and unambiguous" terms.

First, Thomas appears to distinguish between documents that were produced to him in discovery and the information in those documents.  But that distinction is irrelevant under the Protective Order: it restricts the use of confidential documents as well as "[i]nformation . . . designated as confidential under this Order."  ECF No. 37 ¶ (1)(c).  And it provides that "[t]he designation of confidential *information* shall be made by placing or affixing [the words 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL'] on the document" in which the information appears.  *Id.* ¶ (1)(a) (emphasis added).  Thus, so long as information has been designated confidential by appearing in a document designated as such and that designation has not been successfully challenged, the information is subject to the Protective Order.  That Thomas copied the texts from a blog post (rather than from the produced documents themselves) makes no difference as to whether the material is covered by the Protective Order and as to whether he violated the Order by using the texts for purposes unrelated to this case.

---

[3] The Court notes that this is a different blog post than the one discussed at the Court's show-cause hearings.  Though HSUS and Moreland argue that Thomas violated the Protective Order by leaking the information in this blog post as well, Plaintiff has not conceded that he did and the Court need not determine whether that is so to find him in contempt.  ECF No. 177 at 6.

Second, Thomas argues that the texts are "not confidential" because they appeared in the public domain on HumaneWatch's blog. *See* ECF No. 180 at 12. But that has nothing to do with his obligations under the Protective Order, which governs the use and disclosure of information and documents "*designated* as confidential." ECF No. 137 ¶ 1(c) (emphasis added). Thomas does not dispute that the texts were designated confidential when Thomas filed his Superior Court complaint. If Thomas thought that their appearance in the HumaneWatch blog post rendered them non-confidential and so not appropriately covered by the Order, he could have challenged their designation. But he did not. So his use and further disclosure of the texts violated the Order.

Thus, on these grounds as well, the Court can readily conclude, by clear and convincing evidence, that Thomas violated a "clear and unambiguous" provision of the Protective Order by improperly using and disclosing confidential information for purposes other than litigating this case when he drafted and filed paragraphs 88 and 89 of his Superior Court complaint.

For all these reasons, the Court finds that Thomas violated the Protective Order, so it will hold him in civil contempt.[4]

### C.   Sanctions

"A civil contempt action is . . . remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance." *Unitronics (1989) (R"G) Ltd. v. Gharb*, 85 F. Supp. 3d 118, 125 (D.D.C. 2015) (quoting *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29 (D.D.C. 2014)). Thus, sanctions for civil contempt "may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009).

---

[4] Thomas does not attempt to defend his conduct by arguing "that [he] took all reasonable steps within [his] power to comply with the court's order." *Stewart*, 225 F. Supp. 2d at 10 (quotation omitted).

Because this litigation has concluded, the Court has little reason to impose sanctions designed to ensure future compliance with the Order, and HSUS and Moreland suggest none. Instead, they request that the Court order Thomas to dismiss the Superior Court complaint. But they cite no authority for the Court to do so, and the Court will decline that invitation. *Cf.* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). They may, of course, seek dismissal of that action or other sanctions for Thomas's contemptuous behavior in the Superior Court case. *See, e.g.*, *Kimberlin v. Breitbart Holdings*, No. GJH-16-3588, 2018 WL 10667045, at *1–2. (D. Md. Mar. 13, 2018) (ordering dismissal of a case in which plaintiff's complaint stemmed from violations of a protective order issued in a prior case). That said, in *this* case, the Court will grant HSUS and Moreland leave to file a motion for "reasonable costs (including attorneys' fees) incurred in [litigating] [this] civil contempt proceeding." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 76 (D.D.C. 2003).

### IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that the Court **HOLDS** Plaintiff Jeffrey Thomas, Jr., in **CIVIL CONTEMPT**. It is further **ORDERED** that HSUS and Defendant Moreland may move for reasonable costs associated with litigating Thomas's contemptuous behavior by December 20, 2024.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: November 22, 2024