## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JEFFREY THOMAS, JR.,**

**Plaintiff,**

**v.**

**CRYSTAL MORELAND,**

**Defendant.**

**No. 18-cv-800-TJK-ZMF**

## REPORT AND RECOMMENDATION

Defendant Crystal Moreland and Non-Party Respondent the Humane Society of the United States ("HSUS") seek attorneys' fees from Plaintiff Jeffrey Thomas, Jr. Previously, Judge Kelly held Thomas in civil contempt for violating the Court's protective order. *See* Mem. Order, ECF No. 247. Judge Kelly allowed Moreland and HSUS to move for reasonable costs incurred in litigating the contempt proceeding. *See* Mem. Order at 11; Third Party Mot. for Fees ("HSUS's Mot. for Fees"), ECF No. 248; Def.'s Resp. to Ct. Order ("Def.'s Mot. for Fees"), ECF No. 249. For the reasons set forth herein, the undersigned recommends that the Court DENY WITHOUT PREJUDICE HSUS's motion and GRANT IN PART and DENY IN PART Moreland's motion.

## I.    BACKGROUND

In March 2018, Thomas filed a complaint for defamation against Moreland in the Superior Court for the District of Columbia. *See* Notice of Removal ¶ 1, ECF No. 1. In April 2018, Moreland removed the case to federal court. *See id.* ¶¶ 1–9. In February 2020, Thomas filed an amended complaint, which concerned interactions between Thomas and Moreland when they worked together at HSUS. *See* Am. Compl. & Jury Demand ¶¶ 5–96, ECF No. 22. In September 2020, Judge Kelly entered a protective order governing the disclosure of documents designated as

1

confidential. *See* Protective Order ¶ (1)(c), ECF No. 37. HSUS subsequently entered a third-party appearance. *See* Notice of Appearance, ECF No. 38.

In March 2021, Thomas filed to proceed pro se. *See* Pl.'s Rule 83.6(c) Notice of Intent to Proceed Pro Se, ECF No. 75. Moreland was represented by attorneys at Williams & Connolly. *See* Def.'s Mot. for Fees at 2. HSUS was represented by attorneys at Seyfarth Shaw ("Seyfarth"). *See* HSUS's Mot. for Fees at 2–3.

In July 2021, Thomas filed a complaint in the Superior Court asserting various tort claims against eight former and current HSUS employees, none of whom are Moreland. *See* Compl. and Jury Demand, *Thomas v. Pacelle*, No. 2021-CA-002205-B (D.C. Super. Ct. July 6, 2021). Seyfarth attorneys also represented these HSUS employees. *See* HSUS's Mot. for Fees, Decl. of Karla Grossenbacher ¶ 7, ECF No. 248-1.

On September 9, 2021, HSUS moved for an order to show cause in District Court. *See* HSUS's Mot. for O.S.C., ECF No. 118. HSUS alleged that Thomas's Superior Court complaint disclosed documents that the District Court's protective order designated as confidential. *See* HSUS's Mot. for O.S.C., Mem. of P. & A. in Supp. of HSUS's Mot. for O.S.C. ("HSUS's Mot. for O.S.C. Mem.") 1–2, ECF No. 118-1. On September 21, 2021, Moreland also alleged that Thomas violated the protective order. *See* Def.'s Resp. to HSUS's Mot. for O.S.C., ECF No. 125; Sealed Mot. for Leave to File Confidential Ex. under Seal ("Def.'s Mot. to File under Seal"), ECF No. 126.

On June 14, 2022, Judge Kelly ordered Thomas to show cause why he should not be sanctioned for violating the protective order. *See* Min. Order (June 14, 2022). On June 20, 2022, Thomas filed a response. *See* Pl.'s Resp. to O.S.C., ECF No. 173. On June 29, 2022, HSUS and Moreland filed their responses. *See* HSUS's Reply to Pl.'s Resp. to O.S.C. ("HSUS's Show Cause

Reply"), ECF No. 177; Def.'s Resp. to Pl.'s Show-Cause Filing ("Def.'s Show Cause Reply"), ECF No. 178.

Meanwhile, HSUS obtained a stay in the Superior Court proceeding. *See* Def.'s Opposed Mot. to Stay, *Thomas v. Pacelle*, No. 2021-CA-002205-B (D.C. Super. Ct. Sep. 13, 2021); Order Granting Mot. to Stay, *Thomas v. Pacelle*, No. 2021-CA-002205-B (D.C. Super. Ct. Oct. 15, 2021). Subsequently, HSUS filed multiple motions to continue the Superior Court proceeding while awaiting a contempt decision. *See, e.g.*, Def.'s Partially Opposed Mot. to Continue the Feb. 4, 2022 Scheduling Conference, *Thomas v. Pacelle*, No. 2021-CA-002205-B (D.C. Super. Ct. Jan. 31, 2022); Order Granting Mot. to Continue, *Thomas v. Pacelle*, No. 2021-CA-002205-B (D.C. Super. Ct. Feb. 3, 2022). These motions and their related hearings in Superior Court continued as late as September 2024. *See* HSUS's Reply in Further Supp. of Mot. for Fees ("HSUS's Reply") 3, ECF No. 252.

In November 2023, Judge Kelly entered summary judgment for Moreland. *See* Mem. Op., ECF No. 217. In November 2024, Judge Kelly held Thomas in civil contempt for violating the protective order. *See* Mem. Order at 11. Judge Kelly granted HSUS and Moreland leave to file a motion for "reasonable costs [including attorneys' fees] associated with litigating Thomas's contemptuous behavior." *Id.*

On December 20, 2024, HSUS and Moreland each moved for an award of attorneys' fees, HSUS seeking $29,092.00 and Moreland $16,403.60. *See* HSUS's Mot. for Fees at 1; Def.'s Mot. for Fees at 1. On December 26, 2024, Judge Kelly referred the case to the undersigned for a report and recommendation on the fee requests. *See* Min. Order (Dec. 26, 2024). On December 26, 2024, Thomas filed an opposition to both fee requests. *See* Pl.'s Opp'n to Def.'s and HSUS's Mots. for

Fees ("Pl.'s Opp'n"), ECF No. 250. On January 2, 2025, Moreland and HSUS filed their replies. *See* Def.'s Reply to Pl.'s Opp'n Regarding Fees ("Def.'s Reply"), ECF No. 251; HSUS's Reply.

## II.    LEGAL STANDARD

"This Court has the inherent power to protect its integrity and to prevent abuses of the judicial process by holding those who violate its orders in contempt and ordering sanctions for such violations." *Landmark Legal Found. v. Env't Prot. Agency*, 272 F. Supp. 2d 70, 75 (D.D.C. 2003) (citing *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999)). These sanctions can include an award of attorneys' fees. *Id.* at 86 (citing *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017 n.14 (D.C. Cir. 1997)).

When determining the appropriate award for attorneys' fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees bears the burden of proving the reasonableness of both the hours requested and the appropriate hourly rate. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970–71 (D.C. Cir. 2004). Overall, the district court possesses broad "'discretion to adjust the [fee] amount based on other relevant factors.'" *Am. Oversight v. Dep't of Just.*, 375 F. Supp. 3d 50, 69 (D.D.C. 2019) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 47 (D.D.C. 2016)).

## III.   DISCUSSION

### A.    HSUS's Motion for Fees

#### 1.    *HSUS Has Failed Its Burden to Provide Documentation of Hours*

The fee applicant bears the burden of "documenting the appropriate hours." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The fee application must contain

"sufficiently detailed information about the hours logged and the work done" as this documentation is "essential" for the court to determine the fee award. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

Here, HSUS seeks $29,092.00 for two broad categories of work: (1) litigation in the District Court related to its 2021 Motion for Order to Show Cause and 2022 Show Cause Order, and (2) litigation in the Superior Court related to staying and continuing the Superior Court action pending the District Court's resolution of contempt proceedings. *See* HSUS's Reply at 3. HSUS did not submit timesheets or records. *See id.* at 6–7. Rather, HSUS points to the Superior Court case's docket and the declaration of Karla Grossenbacher, counsel of record for HSUS in the District Court, as evidence for the fees incurred. *See id.* at 3, 7. In addition, HSUS maintains that it would only provide Seyfarth's invoices for *in camera* review. *See id.* at 6–7; HSUS's Mot. for Fees at 2.

Without any record of the hours expended by Seyfarth attorneys, HSUS has failed to meet its burden to provide evidence that would allow the court to determine "with a high degree of certainty" the reasonableness of its fee request. *Role Models*, 353 F.3d at 971. The Superior Court's docket and Ms. Grossenbacher's declaration are insufficient. They do not "specify the hours spent on a particular task or who performed that task." *Serv. Emps. Int'l Union Nat'l. Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 80 (D.D.C. 2017) (finding that a two-page affidavit with a list of the fee applicants' attorneys, their total hours spent on the case, a one-sentence summary of all the work performed, and the billing rates of the attorneys and paralegals was not sufficient support for the fee application). "Absent such details, the court cannot determine at this time whether the charges are reasonable." *Id.*

HSUS's offer to provide Seyfarth's invoices for *in camera* review similarly fails to carry their burden.[1] Thomas must have the opportunity "to scrutinize the reasonableness of the fee requested and to present any legitimate objections." *Concerned Veterans*, 675 F.2d at 1324. "[T]he Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016). Withholding detailed billing records deprives Thomas of his right to "utilize all reasonable means to resolve any significant factual dispute that would substantially affect the size of the award." *Concerned Veterans*, 675 F.2d at 1324. HSUS does not cite any precedent establishing an exception to this rule.[2]

When a fee applicant fails to provide sufficient billing documentation, a court *may* allow the applicant to submit additional documentation. *See Serv. Emps. Int'l Union*, 232 F. Supp. 3d at

---

[1] Understandably, HSUS has concerns about Thomas's actions. However, it is unclear what harm he could do with access to billing records. Moreover, the Court retains the power to further sanction Thomas if he inappropriately uses such information.

[2] Courts have allowed *in camera* review of billing records where they contain privileged attorney-client information. *See, e.g.*, *Serv. Emps. Int'l Union*, 232 F. Supp. 3d at 81 ("Any privileged portion of the monthly invoices may be redacted, with the unredacted invoice provided to the court in camera."); *Team Sys. Int'l, LLC v. Haozous*, 706 Fed. Appx. 463, 464–67 (10th Cir. 2017) (affirming a district court's *in camera* review of unredacted billing records while the fee opponent only had access to redacted versions). However, this exception is inapplicable here. HSUS does not claim that Seyfarth's invoices contain privileged information. Nor has HSUS offered redacted versions of its billing records, which HSUS would need to do with an *in camera* request. *See Serv. Emps. Int'l Union*, 232 F. Supp. 3d at 81.

The Court is aware of one instance in this circuit when a court permitted *in camera* review of billing records for reasons unrelated to attorney-client privilege. *See Am. Soc'y For The Prevention Of Cruelty To Animals v. Ringling Bros. Barnum & Bailey Circus* (*Ringling Brothers*), No. 03-cv-2006, 2007 WL 625937, at *4 (D.D.C. Feb. 26, 2007). There, Judge Sullivan allowed plaintiffs to submit billing records *in camera* if necessary "[b]ecause the litigation [was] still ongoing." *Id.* It is unclear why *in camera* review might have been necessary there. Regardless, *Ringling Brothers* does not apply here because this litigation is not ongoing. *See* Mem. Op. (granting summary judgment in favor of Moreland).

80–81 (ordering plaintiffs to submit more documentation after finding that their "bare bones" affidavit was insufficient); *Muskelly v. District of Columbia*, No. 18-cv-740, 2019 WL 451519, at *5 (D.D.C. Feb. 5, 2019) (ordering fee applicant to supplement her request for expert fees after she failed to provide any documentation regarding what services the expert witness performed). For example, in *Ringling Brothers*, Judge Sullivan found that the one-paragraph summary provided by the moving party was insufficient. *See* 2007 WL 625937, at *4. This summary "lump[ed] all work on the motion to compel together" and failed to "indicate which charges were incurred in connection with which filings." *Id.* Judge Sullivan ordered the plaintiffs to submit billing records and a more detailed breakdown of costs if they wanted a fee award. *See id.*

HSUS's motion for fees should be denied without prejudice.[3] Should HSUS move for a fee award again, it must produce "detailed summaries" of the work performed by Seyfarth "based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought."[4] *Concerned Veterans*, 675 F.2d at 1327.

    2.    *The Court Should Rule on the Scope of Recoverable Fees After HSUS Submits More Detailed Time Records*

When awarding attorneys' fees, "[c]ompensable time should not be limited to hours expended within the four corners of the litigation." *Id.* at 1335. But "there must be a clear showing

---

[3] Thomas argues that HSUS's lack of documentation "is a reason to deny reimbursement without further ado." Pl.'s Opp'n at 5. In support of this, Thomas claims that courts have "rejected fee applications that contain far more detail than HSUS's." *Id.* This is incorrect. The cases Thomas cited involve a reduction—rather than a complete rejection—of the fee award due to deficiencies in documentation. *See Role Models*, 353 F.3d at 971–73 (decreasing fee award by 50% due to records with deficiencies such as inadequate detail and excessive hours); *Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 3 (D.D.C. 2005) (excluding duplicative and unnecessary hours from the final award calculation).

[4] By providing detailed records of which attorney performed which tasks, HSUS would also address Thomas's claim that HSUS cannot recover fees paid to attorney "Edward V. North" because Thomas does not know who Edward V. North is. *See* Pl.'s Opp'n at 13.

that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed." *Id.* (asking the District Court to reconsider allowing the fee applicant to be reimbursed for time spent preparing an amicus brief in another case).

HSUS seeks reimbursement for its attorneys' work in the Superior Court matter. *See* HSUS's Mot. for Fees at 1–2. Thomas objects. He argues that HSUS's attorneys' work in the Superior Court had "no bearing on the proceedings in this Court." Pl.'s Opp'n at 7–9 (citing *Concerned Veterans*, 675 F.2d at 1335).

Thomas's reliance on *Concerned Veterans* is misplaced. 675 F.2d at 1335. Courts have interpreted the D.C. Circuit's holding in *Concerned Veterans* to broadly allow for reimbursement of attorneys' fees for work that "a reasonable and prudent lawyer" would have taken "to advance or protect his client's interest in [a] case," even if the work took place in a different case. *Boehner v. McDermott*, 541 F. Supp. 2d 310, 319 (D.D.C. 2008) (quoting *Arizona v. Maricopa Cnty. Med. Soc'y*, 578 F. Supp. 1262, 1268 (D. Ariz. 1984)) (permitting reimbursement for an amicus brief filed in a different case whose outcome could support the fee applicant's argument in the case in which it was claiming fees) (internal quotation marks omitted); *see also Adusumelli v. Steiner*, No. 08-cv-6932, 2013 WL 1285260, at *6–7 (S.D.N.Y. Mar. 28, 2013) (same). Other circuits have adopted similar standards in determining whether to award attorneys' fees for work done in different cases. *See, e.g.*, *Pérez-Sosa v. Garland*, 22 F.4th 312, 324 (1st Cir. 2022) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)) (holding that "a court should award fees for all hours logged in connection with work that is useful and of a type ordinarily necessary to secure the final result obtained from the litigation" even when that work "implicates some other case") (internal quotation marks omitted).

Thus, in a new motion, HSUS may recover fees for its attorneys' work in the Superior Court action. But to do so, it must first provide detailed timesheets. *See supra*. Second, it must demonstrate that its actions in Superior Court were taken "in pursuit of a successful resolution in this matter and a reasonably prudent attorney would have done the same." *Boehner*, 541 F. Supp. 2d at 320.

### 3.  *Other Arguments by Thomas*

Thomas advances various other arguments. *See* Pl.'s Opp'n at 6–13. The Court can summarily dismiss four of these arguments.

First, Thomas makes an "unclean hands" argument, alleging that HSUS violated the protective order that Thomas violated. *See* Pl.'s Opp'n at 12. Assuming that this allegation was true, this would be a basis for Thomas to seek contempt against HSUS and a related fees award. *See Landmark Legal*, 272 F. Supp. 2d at 86. However, it would not bar HSUS from recovering attorneys' fees for the separate contempt finding Judge Kelly already entered against Thomas. *See, e.g.*, *Martinez v. Asian 328, LLC*, No. 15-cv-1071, 2016 WL 1698261, at *5–6 (D.D.C. Apr. 27, 2016) (awarding plaintiffs attorneys' fees for defendants' discovery violations and rejecting defendants' "unclean hands" argument as a "finger-pointing defense" that "does nothing to show the Court why Defendants were unable to comply with the Court's order").

Second, Thomas takes issue with HSUS's citation to *Prunty v. Vivendi*, 195 F. Supp. 3d 107, 111 (D.D.C. 2016). *See* Pl.'s Opp'n at 12–13. *Prunty* involved reimbursement of attorneys' fees under the Copyright Act. *See* 195 F. Supp. 3d at 111–12. However, simply citing the incorrect standard does not nullify a party's request for fees. *See, e.g.*, *Switch Commc'ns Grp. LLC v. Ballard*, No. 11-cv-285, 2011 WL 5041231, at *1 (D. Nev. Oct. 24, 2011) (granting a motion for

fees under Rule 37(a)(5)(C) despite the fee applicant's mistaken citation to Rule 37(a)(5)(A) because the analysis would be the same under either subsection).

Third, Thomas asserts that HSUS has not demonstrated any harm. *See* Pl.'s Opp'n at 6–7. Citing to *Landmark Legal*, Thomas argues this should bar HSUS from reimbursement. *See id.* However, Thomas misunderstands *Landmark Legal*. *Landmark Legal* affirms the principle that courts have broad discretion to "award attorneys' fees and expenses in conjunction with a civil contempt proceeding." 272 F. Supp. 2d at 86. The *Landmark Legal* court acknowledged that "[t]he frequency and severity of abuses [of the contemptuous behavior] can be relevant to the extent of attorney's fees that may be awarded." *Id.* at 87. Specifically, the *Landmark Legal* court considered actions by the contemptuous party that "may have" destroyed important material, but it did not require the applicant to prove they were harmed by the destruction of evidence. *Id.* at 85.

Fourth, Thomas asserts that HSUS cannot recover fees because Seyfarth is billing HSUS's insurer rather than HSUS itself and thus HSUS has not been harmed. *See* Pl.'s Opp'n at 6–7. HSUS responds that Thomas has misconstrued HSUS's representations regarding its insurance plan and that HSUS has paid Seyfarth the $29,092.00 for which HSUS seeks reimbursement. *See* HSUS's Reply at 4–6. First, Thomas's argument is repackaging his lack of harm argument. It fails here as well. *See supra*. Second, HSUS has been harmed to the tune of $29,092.00. *See* HSUS's Reply at 4–6. The Court has no reason to doubt the veracity of HSUS's statement. Finally, whether a fee applicant is insured does not affect its eligibility for reimbursement. The Court is unaware of, nor does Thomas cite, any precedent to the contrary.

A fifth argument need not be addressed now: Thomas asserts that because HSUS is not a party in the Superior Court case, HSUS cannot as a tax-exempt nonprofit organization be compensated for the private legal expenses incurred by its current and former employees in the

Superior Court case. *See* Pl.'s Opp'n at 9–12 (alleging violations of federal and D.C. private inurement laws under 26 U.S.C. § 501(c)(3) and D.C. Code § 29-404.40). Thomas also alleges that HSUS has committed tax fraud in violation of 26 U.S.C. § 4958 because it has not filed Schedule L of IRS Form 990 to disclose financial transactions with its employees who are defendants in the Superior Court action. *See id.* Thomas's allegations might not be entirely meritless, but they are not within the bounds of an attorneys' fees dispute. The Court is unaware of, nor does Thomas cite, any case in which a court denied a fee award because the fee applicant violated a law or regulation. Regardless, courts decline to address new allegations raised in an opposition brief, and so should this Court here. *See, e.g.*, *Munyaneza v. Blinken*, No. 21-cv-2778, 2022 WL 4598629, at *3 (D.D.C. Sep. 30, 2022) (declining to consider new allegations raised in plaintiff's opposition to a motion to dismiss).

    B.    <u>Moreland's Motion for Fees</u>

    1.    *Reasonable Hourly Rate*

When determining the reasonableness of the hourly rates requested, courts look to "(1) the attorneys' billing practices; (2) the attorneys' skills, experience, and reputation; and (3) the prevailing market rates in the relevant community." *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015) (quoting *Covington*, 57 F.3d at 1107) (internal quotation marks omitted).

The parties' dispute regarding reasonable hourly rates centers on (1) whether the Fitzpatrick Matrix is an appropriate representation of the prevailing rates in this case, and (2) whether Moreland's attorneys' experience justifies their respective requested hourly rates on the Fitzpatrick Matrix.

    a.    Use of Fitzpatrick Matrix Rates is Appropriate

The fee applicant has the "preliminary burden" to "justify[] the reasonableness of the rates," and if they meet that burden, "those rates are presumed to be . . . reasonable unless and until the [fee opponent] offers equally specific countervailing evidence supporting another rate." *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 27 (D.D.C. 2023) (quoting *DL v. District of Columbia*, 924 F.3d 585, 591 (D.C. Cir. 2019)) (internal quotation marks omitted).

Moreland requests $16,403.60 for work done by two Williams & Connolly attorneys—Anna J. Hrom and Katelyn Adams—calculated at Fitzpatrick Matrix rates.[5] *See* Def.'s Mot. for Fees at 2, Decl. of Anna J. Hrom ("Hrom Decl."), ECF No. 249-1.

Fee matrices are evidence of prevailing market rates. *See Salazar ex rel. Salazar*, 809 F.3d at 62. The Fitzpatrick Matrix "offers a superior measure of the prevailing market rate for complex federal litigation in the District as compared to the LSI *Laffey* Matrix." *J.T.*, 652 F. Supp. 3d at 32. Multiple judges in this Circuit have applied the Fitzpatrick Matrix in assessing attorneys' fees in complex federal litigation. *See, e.g.*, *Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, No. 20-cv-1128, 2023 WL 3478479, at *4 (D.D.C. May 16, 2023) (noting that "Fitzpatrick Matrix rates presumptively apply" in complex federal litigation); *Alavi v. Bennett*, No. 15-cv-2146, 2024 WL 5056204, at *13 (D.D.C. Dec. 10, 2024) (applying the Fitzpatrick Matrix to an award of attorneys' fees in a Title VII action).

---

[5] The Fitzpatrick Matrix is promulgated by the D.C. United States Attorney's Office (USAO). It establishes hourly rates for attorneys of varying experience levels in complex federal litigation in the District of Columbia. *See J.T.*, 652 F. Supp. 3d at 26–27; U.S. Att'y's Off. for D.C., *The Fitzpatrick Matrix*, https://www.justice.gov/usao-dc/media/1353286/dl?inline. The matrix is based on 675 data points form lawyers litigating in the United States District Court for the District of Columbia, as recorded in motions for attorneys' fees brought between May 31, 2013, and May 31, 2020. *See J.T.*, 652 F. Supp. 3d at 26–27. The USAO promulgated the Fitzpatrick Matrix to address the flaws in previously used matrices. *See id.* at 25–27.

Thomas objects on multiple fronts to the use of Fitzpatrick Matrix rates, but he is plainly incorrect. First, Thomas incorrectly claims that HSUS conceded that the market rate is lower than Fitzpatrick Matrix rates. *See* Pl.'s Opp'n at 23, 25. But HSUS merely stated that Seyfarth's hourly rates were lower than the Fitzpatrick Matrix rates. *See* HSUS's Mot. for Fees at ¶ 4. HSUS did not claim that Seyfarth's rates represented the market rate. *See id.* Second, Thomas's objection regarding Hrom's declaration is irrelevant. Judge Kelly has already ruled that this case qualifies as "complex federal litigation."[6] *See* Mem. Op. on Att'ys' Fees at 8–9. Therefore, Moreland need not provide any further evidence that Fitzpatrick Matrix rates are reasonable.[7]

Moreland has satisfied her burden of establishing a reasonable rate. As such, it then falls to Thomas to provide sufficient countervailing evidence to warrant usage of a different rate. *See*

---

[6] Thomas argues that courts make the complexity finding based on "the simplicity or complexity of the particular work for which Defendant seeks reimbursement." Pl.'s Opp'n at 25–27. Not so. Courts applying fee matrices examine the complexity of the case as a whole. *See, e.g.*, *Feld v. Fireman's Fund Ins. Co.*, No. 12-cv-1789, 2020 WL 1140673, at *6 (D.D.C. Mar. 9, 2020) (discussing elements that make a case, rather a proceeding, complex). Accordingly, in the prior attorneys' fees determination, Judge Kelly did not examine the complexity of litigating Thomas's Rule 37 violation but rather looked at the case as a whole. *See* Mem. Op. ("Mem. Op. on Att'ys' Fees") 8–9, ECF No. 171. That led Judge Kelly to qualify the *case* as complex. *See id.* That finding controls.

Thomas responds by citing to *Griffin*. *See* Pl.'s Opp'n at 26–27. Thomas claims that the judge in *Griffin* calculated reimbursement at lower rates for a once-complex case that "became 'simple.'" *Id.* at 26 (quoting *Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 202 (D.D.C. 2001)). However, this is an oversimplification of *Griffin*. The judge there calculated a lower rate for a variety of reasons, including that the fee applicant had a contingent contract with her counsel. *See Griffin*, 172 F. Supp. 2d at 198–208. Regardless, this Court will not revisit this issue because this case has not markedly changed since Judge Kelly's prior ruling.

[7] Thomas primarily relies on *Flood* and *Cox* to claim that attorney affidavits, such as the one provided by Hrom, are insufficient evidence of the prevailing market rate. *See* Pl.'s Opp'n at 24 (citing *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 212–13 (D.D.C. 2016); *Cox v. District of Columbia*, 264 F. Supp. 3d 131, 140 (D.D.C. 2017)). However, *Flood* and *Cox* concern litigation brought under the Individuals with Disabilities Education Act, which is presumptively *not* complex. *See DL*, 924 F.3d at 594. Those cases are not relevant here.

13

*J.T.*, 652 F. Supp. 3d at 27. Thomas does not. Thomas suggests that Moreland's attorneys should be compensated at the same rate that Thomas's attorney billed Thomas in November 2020 ($300 per hour). *See* Pl.'s Opp'n at 24–25. But Thomas provides no evidence why this rate is "prevailing in the community." *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C. Cir. 1980). "Merely alleging the fees charged by other practitioners does not provide convincing evidence of the prevailing market rate." *Cox*, 264 F. Supp. 3d at 140. Thus, Fitzpatrick Matrix rates apply.

> b.      Years of Experience of Moreland's Attorneys

Next, this Court must assess Hrom's and Adams's years of legal experience to determine which category of the Fitzpatrick Matrix applies. *See, e.g.*, *J.T.*, 652 F. Supp. 3d at 34.

> i.      Hrom's Experience

Hrom graduated law school in 2015. *See* Hrom Decl. at 1. As such, after subtracting one year of experience for completion of a PhD dissertation after law school graduation, Hrom had five years of experience in 2021 and six in 2022.[8] *See id.* at 4–5. Moreland seeks reimbursement for Hrom at $504 per hour for her work in 2021, and $535 per hour for her work in 2022. *See id.*

In response, Thomas argues that Hrom only had one year of experience in 2021 and two in 2022. *See* Pl.'s Opp'n at 27–28. First, Thomas claims that Judge Kelly has already ruled that Hrom's two years of clerkships do not count towards her years of experience. *See* Pl.'s Opp'n at 27. However, Judge Kelly did not explicitly adopt Judge Meriweather's recommendation that clerkships do not count towards years of experience for the LSI *Laffey* Matrix. *See* Mem. Op. on Att'ys' Fees at 9–10. Discounting a judicial clerkship is illogical. Judges know better than anyone

---

[8] Moreland and her counsel voluntarily subtracted Hrom's one year of post-law school doctoral work. *See* Hrom Decl. at 4. The Court otherwise does not take a position on whether such work counts towards an attorney's years of experience for the Fitzpatrick Matrix.

how difficult and demanding the legal work of a judicial law clerk is.[9] *See* Jeremy D. Fogel, Mary S. Hoopes & Goodwin Liu, *Law Clerk Selection and Diversity: Insights from Fifty Sitting Judges of the Federal Courts of Appeals*, 137 Harv. L. Rev. 588, 590 (2023). It would be absurd for drone-like document review at a law firm to count more than work in chambers. Other judges applying the Fitzpatrick Matrix agree. *See, e.g.*, *J.T.F. v. District of Columbia*, No. 21-cv-1453, 2025 WL 843281, at *7 (D.D.C. Mar. 18, 2025) (finding that an attorney who graduated law school in 1999 and clerked for one year from 1999 to 2000 had 25 years of experience in 2023 for Fitzpatrick Matrix purposes); Def.'s Mot. for Att'y's Fees, Decl. of Assistant Att'y Gen. Tasha Hardy ¶ 2, *J.T.F. v. District of Columbia*, No. 1:21-cv-1453 (D.D.C. July 8, 2024), ECF No. 71–1.[10]

Second, Thomas points out that Hrom passed the D.C. bar in 2020. *See* Pl.'s Opp'n at 27–28. However, Thomas misapplies the Fitzpatrick Matrix. For one, years of experience for the matrix are calculated "based on the number of years since an attorney graduated from law school[,]" and the year of bar passage is used if the year of law school graduation is unavailable. *The Fitzpatrick Matrix*. In addition, neither graduation date nor bar exam passage are tethered to Washington, D.C. *See, e.g.*, *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 369–70 (D.D.C. 2025) (finding that an attorney who graduated law school and passed the Colorado

---

[9] Thomas points to the distinction between paralegals/law clerks and attorneys in the Fitzpatrick Matrix. *See The Fitzpatrick Matrix*. However, "law clerks" in this context does not refer to judicial law clerks, whose work cannot be equated with that of paralegals. Indeed, courts often consider judicial clerkships—but not paralegal experience—in evaluating an attorney's reasonable hourly rate. *See, e.g.*, *Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A.*, No. 18-cv-80311, 2021 WL 4973586, at *3 (S.D. Fla. June 24, 2021) (noting that an attorney "brings prior judicial clerkship experience" to his current practice in assessing his hourly rate).

[10] There was a minor miscalculation in this case. According to the USAO, "an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience." *The Fitzpatrick Matrix*. Thus, if we count 1999 as year 0, that attorney had 24 years of experience in 2023, rather than 25. However, this mistake does not impact the conclusion that judicial clerkships count towards years of experience.

bar in 1996 had 26 years of experience in 2022 for Fitzpatrick Matrix purposes); Pl.'s Mot. for Award of Statutory Att'ys' Fees, Decl. of Travis Stills ¶ 5, *Los Padres ForestWatch v. U.S. Forest Serv.*, No. 1:22-cv-3702 (D.D.C. Jan. 31, 2024), ECF No. 20–4. Here, Hrom passed the North Carolina bar in 2016. *See* Def.'s Reply at 1–2. In fact, Judge Kelly previously calculated—over Thomas's objections—that Hrom's reasonable rate in 2021 was that of an attorney with four to seven years of experience. *See* Mem. Op. on Att'ys' Fees at 9–10.

ii.    Adams's Experience

Adams graduated law school in 2018 and clerked for one year from 2020 to 2021. *See* Hrom Decl. at 4; Pl.'s Opp'n at 28–29. Thomas also seeks to discount Adams's clerkship from her years of experience. However, the Court again rejects his argument. *See supra*. Thus, Adams had four years of experience in 2022. *See* Hrom Decl. at 4.

2.    *Reasonable Hours*

In determining the reasonableness of an hours request, "the court may consider other cases as a guide, reduce or eliminate excessive, redundant, or otherwise unnecessary billing entries, including vague time entries, and delete entries that represent preliminary, administrative matters." *Bond ex rel. K.M. v. Friendship Pub. Charter Sch. Bd. of Trs.*, No. 23-cv-367, 2023 WL 8710370, at *2 (D.D.C. Dec. 18, 2023) (quoting *Salmeron v. District of Columbia*, 195 F. Supp. 3d 153, 171 (D.D.C. 2016)) (internal quotation marks omitted).

For 2021, Moreland requests reimbursement for 8.4 hours of Hrom's work related to filing Def.'s Resp. to HSUS's Mot. for O.S.C. (ECF No. 125) and Def.'s Mot. to File under Seal (ECF No. 126). *See* Def.'s Mot. for Fees at 1. For 2022, Moreland requests reimbursement for 21.5 hours of Hrom's and Adams's work related to Def.'s Show Cause Reply (ECF No. 178). *See id.* Thomas raises numerous objections to Moreland's requests. First, Thomas argues that none of Moreland's

attorneys' work is reimbursable because Moreland's filings are unnecessary. *See* Pl.'s Opp'n at 13–17, 19. The Court can summarily dismiss these arguments.[11] The Court will next examine Thomas's specific objections to the number of hours claimed.

        a.    Post-filing Review

---

[11] First, Moreland's filings are not unnecessary such that she is wholly barred from recovering fees. Judge Kelly directly referenced Def.'s Resp. to HSUS's Mot. for O.S.C. (ECF No. 125) and Def.'s Show Cause Reply (ECF No. 178) in his orders. *See* Min. Order (June 14, 2022); Mem. Order at 5, 8–10. Judge Kelly also granted Def.'s Mot. to File under Seal (ECF No. 126). *See* Min. Order (Sep. 30, 2022). Thus, these filings are not "unsuccessful" or "plainly deficient" such that the Court would entirely deduct Moreland's attorneys' time. *Sanchez v. Ultimo, LLC*, No. 19-cv-3188, 2025 WL 1024970, at *6 (D.D.C. Apr. 7, 2025); *cf. Bond ex rel. K.M.*, 2023 WL 8710370, at *3 (deducting time spent on a supplemental expert report deemed by an administrative officer to be neither helpful nor what the officer had asked for).

Second, this Court disregards Thomas's assertion that Moreland is controlling HSUS's legal team. *See* Pl.'s Opp'n at 14–15. Thomas does not develop this argument "in any meaningful way," let alone provide evidence of it. *Sanchez*, 2025 WL 1024970, at *6 (rejecting defendants' argument that certain time entries in a fee application are "unreasonable" or "duplicative" because the argument does not go "beyond those buzzwords" and the court's independent review of the time entries shows otherwise). Furthermore, even if Thomas was right that HSUS and Moreland could have filed jointly, the Court "will not play Monday-morning quarterback, especially where the team in question won the game." *K.P. v. District of Columbia*, No. 15-cv-1365, 2018 WL 6181737, at *3 (D.D.C. Nov. 27, 2018) (declining to second-guess the fee applicant's litigation strategy in considering the fee award, even if their strategy might have led to a lengthier action).

Third, Thomas is incorrect that Judge Kelly disagreed with Moreland's arguments in ECF No. 125. *See* Mem. Order at 6 (finding that an examination of only four paragraphs in Thomas's Superior Court complaint, not including those Moreland mentions in ECF No. 125, was enough to hold Thomas in contempt). Moreover, even if Judge Kelly disagreed with Moreland, that still would not preclude Moreland from recovering for ECF No. 125. *See, e.g.*, *Sanchez*, 2025 WL 1024970, at *6 (declining to deduct time for plaintiff's motion for summary judgment even though plaintiff did not prevail at summary judgment on a core issue, given that plaintiff's arguments "were a long way from frivolous or facially unsupported" and plaintiff "prevailed across the board at trial").

Fourth, Thomas is incorrect that ECF No. 126 is not reimbursable because Moreland later moved to unseal the very document that she moved to seal with this filing. *See, e.g.*, *Sanchez*, 2025 WL 1024970, at *6 (declining to deduct time that plaintiff's counsel spent preparing for a jury trial, even when said counsel ultimately opted for a bench trial, because it was a "strategic decision" and "there [was] no suggestion that [plaintiff] made that decision in bad faith").

Courts will not reimburse "work performed on claims that bore no relation to the grant of relief." *Fox v. Vice*, 563 U.S. 826, 834 (2011). For example, time spent "reviewing summary of argument" or "reviewing cases" after the fee applicant's attorney has already finished oral arguments is not reimbursable unless the fee applicant has "explained how these tasks helped it prevail." *Role Models*, 353 F.3d at 973 (internal quotation marks and brackets omitted).

The Court will not reimburse the 5.4 hours (detailed below) that Hrom and Adams spent reviewing materials after they had already filed ECF Nos. 125 and 126 (on September 21, 2021) and ECF No. 178 (on June 29, 2022). Moreland does not "adequately explain how [this work] advanced the litigation." *Env't Def. Fund v. U.S. Env't Prot. Agency*, No. 17-cv-2220, 2022 WL 136792, at *9 (D.D.C. Jan. 13, 2022). In fact, Moreland did not file substantive pleadings regarding Thomas's contemptuous behavior after these filings.

| **Date** | **Person** | **Hours** | **Narrative** |
|---|---|---|---|
| **09/21/21** | **Moreland's attorneys file ECF Nos. 125 and 126** | | |
| 09/23/21 | Hrom | 0.4 | Review plaintiff's response to HSUS motion for order to show cause |
| 09/28/21 | Hrom | 1.1 | Evaluate plaintiff's filings and correspondence with team about same |
| 09/29/21 | Hrom | 0.5 | Review plaintiff filings and communicate with case team about anticipated responses |
| **06/29/22** | **Moreland's attorneys file ECF No. 178** | | |
| 07/06/22 | Adams | 1.3 | Review Thomas order to show cause response filing |
| 07/15/22 | Hrom | 1 | Analyze plaintiff's additional response to order to show cause |
| 07/15/22 | Adams | 1.1 | Reviewed Thomas additional response to order to show cause |

b.  Excessive and Block-billed Time Entries

"Hours expended may be 'unreasonable' if they are excessive for the type of task performed, [] reflect redundant or overstaffed efforts, or [] are 'otherwise unnecessary.'" *Wilhite v. District of Columbia*, 110 F. Supp. 3d 77, 88 (D.D.C. 2015) (quoting *Hensley*, 461 U.S. at 434).

The Court can make an "independent determination whether or not the hours claimed are justified." *Concerned Veterans*, 675 F.2d at 1327. Where the hours claimed are excessive or unreasonable, the court can apply an overall reduction to the fee award. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, No. 08-cv-2133, 2009 WL 1743757, at *9 (D.D.C. June 15, 2009) (reducing the overall award by 20% because the hours claimed are excessive "given that the disputed matters in this litigation were not complex and the requested records were released early in the litigation"); *Inova Health Care Servs. v. Omni Shoreham Corp.*, No. 20-cv-784, 2025 WL 1684132, at *13 (D.D.C. June 15, 2025) (reducing the overall award by 50% due to numerous deficiencies in time entries such as "block billing, excessive hours, and mis-staffing").

Moreland's attorneys' claimed hours are excessive. First, for 2021, Moreland seeks reimbursement for 6.4 hours of attorney Hrom's work related to drafting Def.'s Resp. to HSUS's Mot. for O.S.C. (ECF No. 125) and Def.'s Mot. to File under Seal (ECF No. 126). Moreland's filings are short, each consisting of roughly one page of content. *See* Def.'s Resp. to HSUS's Mot. for O.S.C.; Def.'s Mot. to File under Seal. And these filings largely built upon HSUS's Mot. for O.S.C. (ECF No. 118). For example, HSUS's motion pointed to multiple paragraphs in Thomas's Superior Court complaint containing information that the District Court has designated confidential in this case. *See* HSUS's Mot. for O.S.C. Mem. at 2–7. Meanwhile, Moreland's response merely pointed to one of these paragraphs and explained what the information in the paragraph was referring to. *See* Def.'s Resp. to HSUS's Mot. for O.S.C. at 1. A reduction is appropriate where "the heavy and persuasive analytical lifting on the matter" has already occurred. *Lloyd ex rel. M.L. v. Ingenuity Prep Pub. Charter Sch.*, No. 18-cv-801, 2020 WL 6822681, at *7 (D.D.C. Nov. 20, 2020) (finding that 20 hours for a three-and-a-half-page motion to dismiss were excessive because the magistrate judge's prior report and recommendation detailed the same

points); *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 238 (D.D.C. 2011) (finding that 20 hours for drafting two complaints were excessive because they consisted "largely of boilerplate language and an uncomplicated factual history").

Similarly, Moreland's claimed hours for work in 2022 are excessive. Adams *and* Hrom spent 18.1 hours on work related to the Court's 2022 Show Cause Order (excluding the above-mentioned post-filing review). *See* Hrom Decl. at 4–5. "While some general oversight, collaboration and communication among attorneys" is appropriate, duplicity of work such as "multiple attorneys attending hearings and conferences" or "working on the same legal issue" is not. *Blackman v. District of Columbia*, 56 F. Supp. 3d 19, 29 (D.D.C. 2014). Courts may make a percentage deduction to the overall fee award "as a commensurate counterweight to the surplus of attorneys." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 411 (D.D.C. 2015) (reducing the fee award by 25% due to overstaffing).

Moreland's attorneys failed to justify why their six-page response required such extensive reviewing and revising between two attorneys, totaling approximately 18.1 hours of work over the span of 2 weeks. *See* Hrom Decl. at 4–5; *cf. Petties v. District of Columbia*, No. 95-cv-148, 2009 WL 8663462, at *9 (D.D.C. Oct. 20, 2009) (finding no overstaffing where plaintiffs' counsel submitted declarations outlining how the firm divided tasks to avoid duplicative work). In fact, a substantial portion of ECF No. 178 simply reexplains how Thomas used confidential information in his Superior Court complaint, which HSUS's and Moreland's prior filings already detailed. *Compare* Def.'s Show Cause Reply at 1–3 *with* HSUS's Mot. for O.S.C. Mem. at 3–4; *see Bond ex rel. K.M.*, 2023 WL 8710370, at *3 (finding that 28.9 hours spent drafting a 30-page due process complaint were excessive because counsel copied many portions directly from the record). The repeated, vague time entries here further contribute to a finding that the hours claimed were not

reasonable. *See* Hrom Decl. at 4–5 (stating that multiple entries reflect time "revis[ing]," "review[ing]", and "edit[ing]" ECF No. 178); *Bond ex rel. K.M.*, 2023 WL 8710370, at \*2 (finding that time entries such as "[r]eview[ing] law to prepare for hearing" and "[r]esearch[ing] and review[ing] law" were deficient as they did not explain what was done and why it was needed).

Block billing is the practice of "lumping multiple tasks into a single time entry." *Tridico v. District of Columbia*, 235 F. Supp. 3d 100, 109 (D.D.C. 2017). Although it is not prohibited, courts often reduce fee awards because of it. *See id.* Such reductions are appropriate because "there is simply no way for the Court to assess whether the time spent on each of those tasks was reasonable when they are lumped together." *Id.* The Court has identified several instances of "block billing":

-   September 16, 2021 by Hrom: "Review plaintiff filings and other correspondence to prepare briefing strategy; call with G. Maier re brief; draft response in support of HSUS motion for order to show cause; revise." Hrom Decl. at 4;

-   September 20, 2021 by Hrom: "Confer with plaintiff and case team on sealing motions; revise response in support of HSUS's motion for order to show cause and related filings." *Id.*;

-   June 14, 2022 by Adams: "Review court order to show cause, previous filings on show-cause filings, and send calendar invites regarding same." *Id.*;

-   June 22, 2022 by Adams: "Review show-cause filings and draft response, communicate with A. Hrom and G. Maier regarding same." *Id.* at 5;

-   June 29, 2022 by Hrom: "Revise draft response re OSC; draft emails to case team and client; review HSUS filing; correspondence with case team re HSUS filing." *Id.*

Relatedly, on at least two instances, Adams billed for clerical tasks: sending calendar invites on June 14, 2022, and filing ECF No. 178 on June 29, 2022. *See* Hrom Decl. at 4–5. "Tasks

that are clerical in nature cannot be included in attorneys' fees awards." *Beckwith v. District of Columbia*, 254 F. Supp. 3d 1, 5 (D.D.C. 2017) (citing *Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 98 (D.D.C. 2009), *amended in part by*, 696 F. Supp. 2d 97 (D.D.C. 2010)); *see also Bond ex rel. K.M.*, 2023 WL 8710370, at *4 (deducting time entries reflecting clerical word such as "[p]repar[ing] [t]rial [n]otebooks for [w]itnesses" and "[e]mail[ing] copies"). The Court will account for this deficiency through a percentage reduction. *See, e.g.*, *Segar v. Garland*, No. 77-cv-81, 2024 WL 4332615, at *12 (D.D.C. Sep. 27, 2024) (noting that "clerical tasks amounting to only some of the time" in block-billed entries are already accounted for by the plaintiffs' voluntary 10% reduction of block-billed time).

Based on the above findings, the Court concludes that a 30% reduction of the fee award after deducting time spent on post-filing review and clerical work is appropriate.[12] *See Bethel ex rel. C.B. v. Saul*, No. 18-cv-247, 2021 WL 1290215, at *6 (D.D.C. Feb. 28, 2021), *report and recommendation adopted*, No. 18-cv-247, 2021 WL 1751155 (D.D.C. May 4, 2021) (applying a 30% reduction to the overall fee award due to "failure to justify the extreme departure from the guideline fee range and inadequate billing entries"); *cf. Am. Immigr. Council*, 82 F. Supp. 3d at 411 (reducing the fee award by 25% due to overstaffing); *Role Models*, 353 F.3d at 973 (applying a 50% reduction to the overall fee award "given the large number of entries that suffer from one or more [deficiencies]" such as "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries").

---

[12] Thomas also argues that Moreland is barred from recovering attorneys' fees due to lack of harm and unclean hands. *See* Pl.'s Opp'n at 15–16, 29–31. Thomas's recycled arguments fail for the same reasons as stated above. *See supra*.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends[13] that:

1.  HSUS's motion for attorneys' fees be **DENIED WITHOUT PREJUDICE.**

2.  Moreland's motion for attorneys' fees be **GRANTED IN PART** and **DENIED IN PART**. Thomas shall reimburse Moreland a total of **$8,767.57** in attorneys' fees.[14]

Date: July 31, 2025

                                         _____

                                         ZIA M. FARUQUI
                                         UNITED STATES MAGISTRATE JUDGE

---

[13] The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

[14] The Court's calculation leading to the total fees owed is set forth in Appendix A.

APPENDIX A

| **Attorneys' Fees for Moreland in 2021** ||
|---|---|
| Hrom's hours | 6.4 |
| Hrom's years of experience in 2021 | 5 |
| Fitzpatrick rate in 2021 for Hrom | $504 |
| *Fees for 2021 before total reduction*: 6.4 x $504 = $3,225.60 ||
| **Attorneys' Fees for Moreland in 2022** ||
| Hrom's hours | 5.3 |
| Hrom's years of experience in 2022 | 6 |
| Fitzpatrick rate in 2022 for Hrom | $535 |
| Adams's hours | 12.8 |
| Adams's years of experience in 2022 | 4 |
| Fitzpatrick rate in 2022 for Adams | $505 |
| *Fees for 2022 before total reduction*: 5.3 x $535 + 12.8 x $505 = $9,299.50 ||
| **Total Attorneys' Fees for Moreland** ||
| *Fees for 2021 and 2022 before total reduction*: $3,225.60 + $9,299.50 = $12,525.10 ||
| ***Total Fees to be Reimbursed to Moreland:*** $12,525.10 x 70% = **$8,767.57** ||

*See* Hrom Decl. at 4–5.