UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY THOMAS, JR.,

    *Plaintiff*,

v.

CRYSTAL MORELAND,

    *Defendant*.

Civil Action No. 18-800 (TJK)

**MEMORANDUM**

This matter is before the Court on the Report and Recommendation filed by Magistrate Judge Zia M. Faruqui on July 31, 2025. *See* ECF No. 253 ("R&R"). On November 22, 2024, the Court held Plaintiff Jeffrey Thomas, Jr., in civil contempt for violating the protective order the Court had entered to govern discovery by including confidential information in a complaint he filed in the Superior Court of the District of Columbia. *See generally* ECF No. 247. As a sanction, the Court permitted Defendant Crystal Moreland and Non-Party Respondent the Humane Society of the United States ("HSUS") to move "for reasonable costs (including attorneys' fees) incurred in litigating this civil contempt proceeding." *Id.* at 11 (cleaned up). They have done so, and the Court referred the motions to a Magistrate Judge for a report and recommendation. ECF Nos. 248, 249; Min. Order of Dec. 26, 2024.

Magistrate Judge Faruqui, in a 24-page opinion, first found that HSUS's motion should be denied without prejudice. R&R at 23. He determined that its motion was insufficiently detailed, meaning he could not "determine 'with a high degree of certainty' the reasonableness of its fee request." *Id.* at 5 (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004)). He wrote that, "[s]hould HSUS move for a fee award again, it must produce detailed summaries

of the work performed by" its attorneys "based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought." *Id*. at 7 (cleaned up). Magistrate Judge Faruqui next determined that Moreland's motion should be granted in part and that she should be awarded $8,767.57. *Id.* at 23. For both of Moreland's attorneys—Anna J. Hrom and Katelyn Adams—he considered their experience, then used the Fitzpatrick Matrix to determine their "prevailing market rates," and then parsed their submission of hours to determine how much of their claimed time was reasonable.[1] *Id*. at 11–22. He then "deduct[ed] time spent on post-filing review and clerical work" and further reduced the fee award by 30% to account for excessive block billing. *Id*. at 21–22. This resulted in a sum of $8,767.57. *Id*. at 23.

Thomas partially objected to the R&R, moved to compel Attorney Hrom to produce a copy of her resume, and moved to stay consideration of the R&R until HSUS submits "relevant evidence" "of the reasonable hourly rate for Defendant Moreland's *pro bono* counsel." ECF Nos. 254–56. Moreland opposes the motions and argues that the R&R should be adopted in full. ECF No. 258. HSUS did not object to the R&R or respond to Thomas's objections. The Court agrees with Moreland and will adopt Magistrate Judge Faruqui's R&R in full and deny Thomas's motions.

A party may file "specific written objections" to a magistrate judge's R&R. Fed. R. Civ. P. 72(b)(2); LCvR 72.3(b). The Court "must determine de novo any part of the magistrate judge's" R&R to which a proper objection is made. Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c). The Court reviews only for clear error any part of the magistrate judge's R&R that is not objected to, that is

---

[1] The Fitzpatrick Matrix "is promulgated by the D.C. United States Attorney's Office" and "establishes hourly rates for attorneys of varying experience levels in complex federal litigation in the District of Columbia." R&R at 12 n.5; *see also* U.S. Att'y's Off. for D.C., *The Fitzpatrick Matrix*, https://www.justice.gov/usao-dc/media/1395096/dl?inline.

2

objected to merely in a "general" and "conclusory" fashion, or that is objected to in a manner that simply rehashes the party's "original arguments." *IMAPizza, LLC v. At Pizza Ltd.*, No. 17-cv-2327, 2021 WL 3168132, at *2 (D.D.C. July 27, 2021); *Wu Xiaofeng v. Pompeo*, No. 15-cv-1040, 2019 WL 1697868, at *5 (D.D.C. Apr. 17, 2019). "Clear error exists only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Momoh v. Osayande*, 564 B.R. 1, 3 (D.D.C. 2017) (internal quotation marks omitted). Also, when objecting to an R&R, "the parties may not present new issues or arguments to the district judge." *IMAPizza, LLC*, 2021 WL 3168132, at *2 (internal quotation marks omitted); *see also Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997). The Court "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

Thomas launches five objections to the R&R. First, he claims the Fitzpatrick Matrix does not reflect a reasonable hourly rate. ECF No. 255. Second, he says Magistrate Judge Faruqui erred in calculating Moreland's attorneys' years of experience. ECF No. 254 at 1–3, 7; ECF No. 256. Third, he argues that the Court should deduct half an hour from Magistrate Judge Faruqui's calculation of reimbursable time because the work done during that time—a discussion between Attorney Hrom and others regarding a motion to seal a filing that was later unsealed—was unnecessary. ECF No. 254 at 3–5. Fourth, he asserts that the recommended award amount should be reduced to reflect that, notwithstanding the Court's prior finding of contempt, he did not violate the protective order. *Id.* at 5. And fifth, he says the R&R improperly "recommend[s] that the Court compel [Thomas] to facilitate, subsidize, reimburse, or otherwise participate in [HSUS]'s illegal actions." *Id.* at 5–7. The Court will overrule all of Thomas's objections.

First, the Court will overrule Thomas's objection to using the Fitzpatrick Matrix to establish the proper hourly rates for Moreland's counsel. "The most useful starting point for

3

determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of proving the reasonableness of "the hours worked and rates claimed." *Id.* at 433–34. For complex federal civil cases like this one, however, the Fitzpatrick Matrix "presumptively" establishes the applicable fee rates. *Louise Trauma Ctr. LLC v. DHS*, No. 20-cv-01128, 2023 WL 3478479, at *4 (D.D.C. May 16, 2023). So in such cases, "the burden shifts to the opposing party to 'provide specific contrary evidence tending to show that a lower rate would be appropriate.'" *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 20 (D.D.C. 2023) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995)).

The Court has already concluded that this case involves "complex federal litigation," and Thomas has given the Court no reason to reconsider that holding now. ECF No. 171 at 8–9. And in his stay motion—which the Court construes as objecting to the R&R's application of the Fitzpatrick Matrix—Thomas provides no "specific contrary evidence" suggesting that Fitzpatrick Matrix rates are inappropriate for Moreland's counsel. He claims only that *he* paid *his* former attorney at lower rates and that HSUS paid its counsel at below-Matrix rates. ECF No. 255 at 1–2. So what? A reasonable hourly rate generally reflects the rate "prevailing in the community for similar work," *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C. Cir. 1980), or the requesting attorney's "usual billing rate," at least so long as that rate is "in line with those prevailing in the community," *Thomas ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993), *as amended* (June 30, 1993). Thus, whatever he and HSUS paid their attorneys is largely irrelevant.[2] Thomas asks the Court to stay resolution of the R&R until HSUS's attorneys present "further evidence of

---

[2] Thomas has not alleged, much less shown, that the rates charged by his former attorney or HSUS's attorneys either reflect those charged by Moreland's attorneys or are the prevailing rates in the community.

4

*their* rates." ECF No. 255 at 2 (emphasis added). But there is no reason to do so. The Court will overrule Thomas's first objection and deny his Motion to Stay Hourly Rate Calculation. ECF No. 255.

Second, the Court will overrule Thomas's objection to Magistrate Judge Faruqui's calculation of Attorney Hrom's and Attorney Adams's experience under the Fitzpatrick Matrix. As a default, years of experience under that Matrix are "based on the number of years since an attorney graduated from law school." *The Fitzpatrick Matrix*, *supra*, at 2 n.4. Attorney Hrom graduated in 2015, and Attorney Adams graduated in 2018. ECF No. 249-1 ¶¶ 4–5. For their work done in 2021 and 2022, therefore, they would have had six and seven and three and four years of experience, respectively. However, Moreland voluntarily subtracted one year from Attorney Hrom's experience to reflect the time she spent completing a PhD dissertation after law school, leaving her with five and six years of experience over the relevant time frame. *Id.* at 4–5.

Thomas first objects to the R&R's calculation since Attorney Hrom spent two years and Attorney Adams spent one year after graduating as federal judicial law clerks. ECF No. 254 at 1. Thomas argues that the Court should discount those years because, in his view, time spent as a judicial law clerk should not count in calculating an attorney's experience. The Court disagrees.

To begin, the Fitzpatrick Matrix itself does not require the Court to discount time spent as a judicial law clerk. True, the Matrix notes that downward "[a]djustments" to an attorney's years of experience "may be necessary if an attorney did not follow a typical career progression *or was effectively performing law clerk work*." *The Fitzpatrick Matrix*, *supra*, at 2 n.4 (emphasis added). But read in context, the phrase "law clerk" does not encompass *judicial* law clerks. Instead, it covers positions such as "legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk." *Id.* at 3 n.9. As Judge Faruqui explained, the duties of those positions are not

5

comparable to the duties of a judicial law clerk. R&R at 14–15. Indeed, a judicial clerkship is one of the best ways for a young attorney to gain practical legal experience. It would make no sense to treat the experience of a first-year associate at a large law firm, sometimes involving "drone-like document review," better than the experience of a federal judicial law clerk for reimbursement purposes. *Id.* at 15. The Court thus agrees that "[d]iscounting a judicial clerkship is illogical." *Id.* at 14.

Neither the Supreme Court's nor this Court's prior decisions compel a different conclusion. Thomas suggests that "settled Supreme Court case law" requires that courts "not count time spent as a judicial law clerk for fee reimbursement purposes." ECF No. 254 at 1, 3. Not so. In fact, in the very case he cites, the Supreme Court suggested the opposite.[3] And despite Thomas's protestations, this Court has never held to the contrary, either. Instead, in its opinion on a prior fee dispute, the Court *assumed* that Thomas was correct that Attorney Hrom's prior experience should not be counted under the then-relevant *Laffey* Matrix. ECF No. 171 at 9–10. But even so, it concluded that Attorney Hrom should still be compensated at rates reflecting that experience. *Id.*[4]

---

[3] In *Blum v. Stenson*, the Supreme Court considered a fee application by three attorneys, each with 1.5 "years of experience as a practicing attorney." 465 U.S. 886, 890 n.4 (1984). The first had never clerked, the second had clerked for one year, and the third had clerked for two. *Id.* If clerkships had no impact on reimbursement rates, their applicable rates might be expected to be the same. *Id.* But instead, the attorney with no clerkships billed at $95 an hour, the attorney with a one-year clerkship billed at $100 an hour, and the attorney with a two-year clerkship billed at $105 an hour. *Id.* Though the Supreme Court was not directly asked to review the propriety of those differences, it apparently had no qualms that these attorneys billed at rates directly correlated to their time spent as judicial law clerks.

[4] Thomas also points out that the Administrative Office of the United States Courts uses the terms "law clerks," "judicial law clerks," and "federal judicial law clerks" interchangeably. ECF No. 254 at 2. That may be true, but it has no bearing on whether an attorney's time as a judicial law clerk should count towards her years of experience in awarding fees.

6

For similar reasons, the Court will deny Thomas's motion to compel Attorney Hrom "to produce a full and complete copy of her professional experience practicing law from" 2016 to 2020 and overrule his related objection.  ECF No. 254 at 7; ECF No. 256 at 2.  According to Thomas, in applying the Fitzpatrick Matrix, Magistrate Judge Faruqui should have credited Attorney Hrom with only one and two years of experience in 2021 and 2022, respectively—and thus lowered the applicable rate—because "[t]he evidence demonstrates" that she began practicing law in 2020.  *Id.*  The Court has previously addressed and rejected a similar argument, finding that the details he seeks are not necessary to conclude that the relevant Fitzpatrick Matrix rates are reasonable.  In its prior fee order, the Court noted that, even if Attorney Hrom had fewer years of experience than asserted, "[a]n attorney's 'usual billing rate' . . . is very persuasive evidence of what is a reasonable rate."  ECF No. 171 at 10 (quoting *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 282 F. Supp. 3d 203, 210 (D.D.C. 2017)).  And because Attorney Hrom's customary rates "are higher than those reflected in the Fitzpatrick Matrix" for an attorney with five and six years of experience, ECF No. 249-1 ¶¶ 10–11, the Court again has no trouble concluding that the R&R's recommended Fitzpatrick Matrix rates are reasonable, *see* ECF No. 171 at 10.

Third, the Court will overrule Thomas's objection to Magistrate Judge Faruqui's recommendation that the Court require that he reimburse Moreland for the half hour Attorney Hrom spent "[c]onfer[ring] with plaintiff and [the] case team on" whether to seal ECF No. 126.  ECF No. 254 at 4.  Thomas argues that this half hour should be excluded as "unnecessary" because, following the Court's summary-judgment decision, Moreland moved to unseal that document.  ECF No. 254 at 3–5.  But Moreland's change in position on whether to seal ECF No. 126 does not mean her initial motion to seal was unnecessary.  When an attorney makes a good-faith change of position in light of changed circumstances or strategy, it is not unreasonable to request

7

reimbursement for the time she spent pursuing the initial position. *See, e.g.*, *Sanchez v. Ultimo, LLC*, No. 19-cv-3188, 2025 WL 1024970, at *6 (D.D.C. Apr. 7, 2025) (refusing to exclude time an attorney spent preparing for a jury trial, even though the attorney ultimately opted for a bench trial based on "various pretrial rulings"). Here, Moreland explains that she initially moved to seal ECF No. 126 because, "at the time of filing," it included "confidential information which required protection pursuant to the Court's Protective Order." ECF No. 258 at 4. And she only moved to unseal the document after the Court entered summary judgment in her favor and "required the parties to renew their sealing motions in light of the materials cited in" that opinion. *Id.*; *see also* ECF No. 216. So instead of being an unjustifiable about-face, Moreland's good-faith change in position stemmed directly from these changed circumstances, including the Court's order. "The Court will not play Monday-morning quarterback" and find that Moreland's "chosen path"—or the work Attorney Hrom spent in pursuing that path—"was unreasonable." *K.P. v. District of Columbia*, No. 15-cv-1365, 2018 WL 6181737, at *3 (D.D.C. Nov. 27, 2018).

Fourth, the Court will not revisit its prior holding that Thomas violated the Court's protective order. Thomas appears to argue that the reimbursement award should be reduced by some unspecified amount because the information he included in paragraphs 88 and 89 of his Superior Court complaint "ha[s] never been confidential." ECF No. 254 at 5. But the Court has already concluded otherwise, ECF No. 247 at 8–10, and Thomas may not relitigate that finding in these fee proceedings.

Fifth, Thomas's objection that the R&R would require him to "subsidize" what he alleges to be HSUS's illegal conduct is not well taken. ECF No. 254 at 6. Indeed, the R&R—unobjected to by HSUS—recommends that the Court *deny* HSUS's motion for fees. R&R at 4–7. And

8

because the R&R recommends that Thomas not reimburse HSUS at all, the Court will overrule this objection.

For these reasons, the Court will overrule Thomas's objections and deny his motions. And as for the unobjected-to portions of the R&R, upon independent consideration of the entire record and the applicable law, the Court finds no clear error. Accordingly, it will adopt the R&R in full.

A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 17, 2025